**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 3:21-CV-00884-D |
| D ZINE PARTNERS, LLC and MARWA ZAATARI | |
| | JURY TRIAL DEMANDED |
| *Defendants.* | |

## FIRST AMENDED COMPLAINT

Plaintiff Global Plasma Solutions, Inc. ("GPS"), by and through its undersigned attorneys, brings this First Amended Complaint[1] against Defendants D Zine Partners, LLC ("D Zine") and Marwa Zaatari ("Zaatari") (collectively, "Defendants"), and alleges as follows:

### INTRODUCTION

1.      This case involves a reckless campaign by industry competitors of GPS to spread false and misleading statements in an effort to advance the false narrative that GPS's technology is not safe. Defendants have relentlessly pursued this campaign for one purpose—to make money. Zaatari has used her perceived status in the industry to boost her name recognition while advancing this false narrative, in order to gain an unfair economic advantage for her company D Zine, for enVerid Systems, Inc. ("enVerid"), and for their respective corporate partners. Indeed, Zaatari is

---

[1] GPS files this First Amended Complaint in lieu of responding to Defendants' Motion to Dismiss (Dkt. No. 14) in accordance with Fed. R. Civ. P. 15(a)(1)(B). *See DeVore v. Lyons*, 2016 U.S. Dist. LEXIS 147306 at *15-16, 2016 WL 6277810 (N.D. Tex. 2016) ("...a party may amend its pleading once as a matter of course...21 days after service of a responsive pleading or 21 days after service of a motion under 12(b)..."). Accordingly, the Motion to Dismiss [Dkt. No. 14] is moot. *See Stredwick v. Dall. Margarita Soc'y, Inc.*, 2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430 at *1 (N.D. Tex. 2012) ("The filing of an amended complaint generally renders pending motions moot.").

best known not for contributions to the industry, but rather for her relentless, unfounded criticisms of GPS and its products.

2.      GPS is an innovative company focused on providing consumers with safe and effective air purification products, as it has done since it was founded in 2008.

3.      As the inventor and owner of the revolutionary Needlepoint Bipolar Ionization (NPBI$^{TM}$) air purification technology, GPS has worked assiduously since 2008 to build its well-earned reputation for excellence and develop trust among consumers in the United States and abroad.

4.      Recognizing GPS's contributions to the field, the United States Patent and Trademark Office has issued numerous patents to GPS for its advances in air purification systems and devices, including the technology underlying GPS's NPBI$^{TM}$.

5.      As a testament to its safety, GPS's NPBI$^{TM}$ product has also earned the seal of approval of the UL, CE, RTCA, OSHPD, CARB, and other standard-setting bodies.

6.      Nevertheless, for nearly six months, Zaatari has engaged in a systematic campaign designed to smear GPS and its technology through multiple channels, including through Zaatari's Twitter account, local and national news outlets, and online academic and other literature, as well as via The American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE) and other industry organizations (including their webinars and online events), by making false and outrageously misleading statements about GPS and its products.

7.      While Zaatari has attempted to disguise her false and misleading statements as the unbiased criticism of an academic who is simply trying to promote public well-being, in reality, Zaatari's motive has been to gain an unfair economic advantage for her company D Zine—which she joined at the beginning of the global COVID-19 pandemic—and for the company for which

she was a former vice president and is a current member of the board of advisors, enVerid, a company that offers, among other things, air purification systems, in direct competition with GPS.

8.      Zaatari is a partner of and, on information and belief, an owner of D Zine, a firm that offers indoor air filtration consulting and design services, and a competitor to GPS.

9.      On information and belief, Zaatari also serves as a paid consultant for enVerid. Prior to joining D Zine, Zaatari was the vice president of building solutions for enVerid.

10.     While GPS encourages independent scientific research into the safety and efficacy of air purification systems—including its own technology—GPS cannot sit idly while a competitor spreads false, misleading, disparaging, and defamatory information about GPS and its products.

11.     GPS therefore brings this lawsuit to protect itself from Defendants' unlawful actions and to obtain relief for the irreparable harm Defendants have caused GPS and its business.

## THE PARTIES

12.     GPS is a corporation organized under the laws of the State of Delaware with a principal place of business at 3101 Yorkmont Road, Suite 400, Charlotte, North Carolina 28208.

13.     Upon information and belief, Defendant D Zine Partners, LLC ("D Zine") is an entity formed under the laws of the State of Texas with a principal place of business at 3811 Turtle Creek Boulevard, Suite 560, Dallas, Texas 75219.  D Zine has been served and filed a responsive pleading.

14.     Defendant Marwa Zaatari is an individual and, upon information and belief, is a partner of D Zine and member of the board of advisors for enVerid who, upon information and belief, is a resident of Austin, Texas and may be served with process at 3000 South 5th Street, Austin, Texas 78704.  Zaatari has been served and filed a responsive pleading.

## JURISDICTION AND VENUE

15.    This is a civil action for false advertising, product disparagement, and unfair competition under the Lanham Act; defamation, business disparagement, and tortious interference with existing and prospective business relationships under Texas law; and common law unfair competition.

16.    This Court has original subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over GPS's state and common law claims under 28 U.S.C. § 1367(a) because they are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy.

17.    This Court also has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of costs and interests, and is between citizens of different states.

18.    This Court has personal jurisdiction over D Zine because it is organized in the State of Texas and maintains a principal place of business in Dallas, Texas.

19.    This Court has personal jurisdiction over Zaatari because she is an individual who resides in the State of Texas.

20.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) and (b)(2) because two of the Defendants reside in the State of Texas and D Zine resides within this judicial district, and because a substantial part of the events giving rise to the claims asserted in this Complaint against all Defendants occurred within this judicial district.

## FACTUAL BACKGROUND

**A.      GPS and GPS's Products**

21.      GPS is well-known in the air purification and quality industry for providing customers with accurate recommendations and products that meet each individual customer's air quality and purification needs.

22.      GPS's products are based on its revolutionary NPBI™ technology.

23.      NPBI™ is a patented technology that cleans the air by introducing ions in the space via the airflow in the ventilation system.

24.      GPS seeks to develop products that meet and exceed industry standards, as evidenced by the approvals of GPS's products, including the NPBI^{TM} product, by independent certifying agencies such as UL, CE, RTCA, OSHPD, CARB, and other standard-setting bodies. GPS's products also comply with all applicable Environmental Protection Agency regulatory requirements.

25.      GPS's NPBI^{TM} product has achieved the UL 2998 zero ozone emissions certification. This stringent certification requires that products demonstrate that they emit less than 0.005 parts per million (ppm), which is below the quantifiable level for ozone testing. Notably, certification under UL 2998 requires demonstration of ozone emissions at least ten times lower than what is permitted under the standard UL 867 test and by the United States Food and Drug Administration (FDA) for medical devices.

26.      Consistent with GPS's commitment to transparency with its customers and potential customers, GPS prominently displays the results of tests by independents labs of its NPBI^{TM} technology on its website, including sensitivity testing, simulation testing, specialty testing, and field testing. A true and correct copy of the independent testing section of GPS's website is attached as **Exhibit A**.

27.     GPS also works directly with customers—prior to any purchase—to conduct site-specific studies that assess the performance and appropriateness of GPS's products for their unique needs.

28.     As a result of these efforts, along with the time and resources GPS invests in its products and GPS's consistent dedication to excellence, GPS has earned a reputation as a leader in the air quality/purification industry.

29.     In fact, approximately 250,000 GPS NPBI™ air purification systems have been installed worldwide, including in federal government buildings, hospitals, corporate facilities, universities, and in hundreds of primary and secondary schools.

30.     GPS's technology is also trusted by some of the world's leading companies involved in aviation manufacturing, aerospace technology, and performance equipment.

31.     GPS is a prominent member in good standing of The American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE), and GPS's employees regularly lead lectures and speak at ASHRAE meetings.

32.     GPS also has an active membership with the American Society for Health Care Engineering (ASHE), and its aviation products have passed the stringent RTCA DO-160 tests.

33.     GPS's products are routinely evaluated by leading experts, including those within the Environment, Health, and Safety (EHS) departments representing major institutions, such as the types of institutions identified in Paragraphs 29 and 30 above.

34.     GPS's reputation for excellence and dedication to offering safe, high-quality products is embodied within its GLOBAL PLASMA SOLUTIONS logo, the GPS name, and its NPBI™ brand, all of which are readily associated with GPS and its products when encountered by the public and entities or individuals within the industry.

**B.      Zaatari's False, Misleading, Disparaging, and Defamatory Publications**

35.      Despite the substantial resources and effort invested by GPS to build its reputation and to ensure that its products are safe and effective, Zaatari has embarked on a meritless campaign to damage GPS's reputation and goodwill by spreading false, misleading, disparaging, and defamatory information about GPS and its products.

36.      Zaatari has engaged, and continues to engage, in this conduct in order to raise her profile in the industry, and by inciting panic, to encourage the public, the industry, and GPS's current and prospective customers to not use technology utilized by GPS products, and instead hire D Zine to perform consulting services that, among other things, assess, design, and implement indoor air quality solutions that compete with GPS and GPS's products and services.  This effort is aimed to drive GPS's current and prospective customers away from GPS to purchase products from enVerid and utilize the services of D Zine and other competing companies with which Zaatari is involved or has pecuniary interests.

37.      One medium through which Zaatari publishes inaccurate, misleading, disparaging, and defamatory information about GPS and GPS's products is Twitter.

38.      Beginning at least as early as January 2021, Zaatari has engaged in a public smear campaign via Twitter designed to damage GPS's reputation and drive GPS's customers and potential customers away from GPS to D Zine and its corporate partners.

39.      The timing of Zaatari's smear campaign is no coincidence. Zaatari announced her joining D Zine as a partner in December 2020. Prior to joining D Zine, Zaatari was vice president of building solutions (and remains a member of the board of advisors) for enVerid – a direct competitor of GPS.  After becoming partner of D Zine, Zaatari continued as part of enVerid's paid leadership team and continued to promote enVerid's products.  Almost immediately after joining D Zine, Zaatari's barrage of false, misleading, disparaging, and defamatory statements began. A

true and correct copy of a LinkedIn post published by Zaatari in December 2020 announcing her arrival as a partner of D Zine is attached as **Exhibit B** and reproduced below.



40.     Indeed, from January 2021 to present, Zaatari's tweets have become increasingly inflammatory and misleading, including two tweets in April 2021 falsely and recklessly analogizing ionizers—like GPS's NPBI$^{TM}$ air purification system—to cigarettes and hand grenades.

41.     Specifically, Zaatari's April 7, 2021 tweet analogized "ionisers" with cigarettes, falsely stating that "there is no safe [ioniser]" and products like GPS's NPBI™ air purification systems "may cause serious diseases." A true and correct copy of the tweet is attached as **Exhibit C** and reproduced below.



42.     On April 15, 2021, Zaatari published a tweet analogizing "ionizers" to "using a hand grenade to remove cars" from a full parking lot, falsely suggesting that products like GPS's NPBI$^{TM}$ air purification systems are deadly and destructive. In the same tweet, Zaatari advertised and included a link to the "Healthy Indoors Live Show," with the caption "How to Prevent 'Snake Oil' Sales from the IAQ Industry," thereby falsely suggesting that ionizers—including GPS's NPBI$^{TM}$ air purification systems—are dangerous, and that companies offering such products, including GPS, engage in deceptive marking. A true and correct copy of the tweet is attached as **Exhibit D** and reproduced below.



43.    Zaatari's tweets are the equivalent of falsely yelling "fire" in a crowded theatre. They are designed and intended to scare the public and cause GPS's customers and potential customers to hire Zaatari and companies competing with GPS, including those in which she has an interest.

44.    It is well engrained in the public's consciousness that cigarettes are in fact dangerous and can be deadly, and that tobacco companies lied about this fact. Zaatari's April 7, 2021 tweet equates ionizers with cigarettes and suggests that ionizers have all of the harmful effects of cigarettes. Zaatari doubles down on this outrageously false statement by attaching a

picture of tobacco executives testifying before Congress, thereby equating GPS's owners and executives with tobacco executives, and their criminal and deceptive conduct.

45.     GPS's products are safe, and Zaatari knows this fact. GPS's employees have worked hard to provide a safe and reliable technology. Zaatari should not be allowed to spread false and reckless statements about GPS, its hard-working employees, and its products for personal financial gain or the benefit of enVerid.

46.     Prior to the reckless and inflammatory cigarette and grenade posts, Zaatari had been steadily escalating her smear campaign. On January 18, 2021, Zaatari published a tweet warning readers to "stay away" from, among other things, "ionic purifier + composite catalyst" and "bi-polar" air purification systems—such as GPS's NPBI™ air purification system. A true and correct copy of the tweet is attached as **Exhibit E** and reproduced below.



47.     On February 7, 2021, Zaatari published a tweet falsely accusing companies that offer ionizing air purification systems—such as GPS—of "cheating...when reporting test results." A true and correct copy of the tweet is attached as **Exhibit F** and reproduced below.



48.     On March 9, 2021, Zaatari published a Twitter thread dedicated specifically to spreading inaccurate, misleading, disparaging, and defamatory information about GPS. In the first tweet of the thread, Zaatari called for the "defeat of ions," and made clear that the thread is specifically directed to "Needle Point Bi-polar Ionization"—GPS's NPBI™ air purification system. A true and correct copy of the entire Twitter thread is attached as **Exhibit G**, and the initial tweet is reproduced below.



49.     Zaatari then proceeded to publish links to and commentary on several "independent studies," in each instance representing that the "device tested is produced by [Plaintiff] GPS."

50.    One of the tweets, citing a study from Science Direct, falsely stated: "Claim of reduction of particulate matter concentration: False." But in truth, the cited study makes clear that this test was not about "reduction of particulate matter"; rather, the study states that "[w]e also observed similar ozone concentrations upstream and downstream of the ionizer, implying the system is not generating ozone." (emphasis added). True and correct copies of the tweet and the cited article are attached as **Exhibits G** and **H**. Zaatari's tweet is reproduced below.



51.     More recently, in addition to publishing false, misleading, disparaging, and defamatory statements about GPS, GPS's products, and ionizing air purifiers generally, Zaatari has begun falsely stating that ionizers, including the GPS NPBI$^{TM}$ product, are harmful to school children. Zaatari's alarmist propaganda is a thinly veiled attempt to disguise her financial and business motives by pandering to anxious parents and leveraging the heightened sensitivity to air quality among the general public. Zaatari's publication of false and misleading information is not based in virtuosity; rather, Zaatari is attempting to boost her status in the indoor air quality community by spreading baseless criticisms of competitors in order to damage GPS and divert customers to D Zine and enVerid.

52.     For example, on April 18, 2021, Zaatari published a poem via Twitter falsely suggesting that bipolar ionizers—like GPS's NPBI$^{TM}$ air purification system—lead to "cancer, asthma, and [a]sphyxiation" in children and are marketed by "snake-oil" salespeople. A true and correct copy of the tweet is attached as **Exhibit I** and reproduced below.



**Marwa Zaatari**
@marwa_zaatari
...

Replying to @marwa_zaatari

Here is the entire poem. Thanks to my hubby, the wordsmith:

**Ion Justification**
By M & A Zaatari
4/18/2021

A preposterous proposition,
Presented in opposition,
To expert recommendation
An inherent contradiction,
To Chemical composition
Subtraction equals addition?

The claim is the rationalization,
Of snake-oil presentation,
Shoe-box experimentation,
To "damper-off" ventilation,
Shun mechanical filtration,
Just to sell ionization…

What is your current position?
On childhood appropriation,
Cancer, asthma 'sphyxiation…
What majesty I petition?
To get some sort of remission…
Time to break down inhibition.

No to Ozone generation
No to Bipolar ionization
No to PC oxidation
No to Radicals formation
No to Magic disinfection
Chemical vaporization…

My advice?
Don't fall for the cheap temptation
The incessant provocation,
Stick with the prime presentation
Of science origination
Richard Corsi education
Jose Jimenez inspiration
Eric Feigl-Ding position
Linsey Marr explanation
Shelly Miller persuasion
Kim Prather action
Brent Stephens publication
Jeffrey Siegel direction
William Bahnfleth vision
Joseph Allen mission

5:21 PM · Apr 18, 2021 · Twitter Web App

53.     In an effort to broaden the audience for these false, misleading, disparaging, and defamatory statements, the D Zine website homepage prominently displays at least two links to Zaatari's Twitter account. Further, the link contained in the D Zine website header, reproduced below (annotated), suggests that the Twitter account is the official account of D Zine. A true and correct copy of the D Zine website homepage is attached as **Exhibit J**.



54.     This smear campaign is not limited to Zaatari's Twitter page. Zaatari also publishes articles promoting false, misleading, disparaging, and defamatory information about GPS.

55.     For example, Zaatari published an article entitled *Open Letter to Address the Use of Electronic Air Cleaning Equipment in Buildings* (the "Open Letter") on or about April 12, 2021. A true and correct copy of the Open Letter is attached as **Exhibit K**.

56.     In the Open Letter, Zaatari falsely claims that "one recent independent test (ref:2) of [Plaintiff GPS's] needlepoint bipolar ionization (NPBI) technology found that the strength of the ions produced appears insufficient to effectively clean the air." In fact, the cited "independent

test" states the opposite: that "NPBI demonstrated efficacy for in-air pathogens like MS2 (virus) and Staphylococcus Aureus (bacteria)." A true and correct copy of the "independent test" is attached as **Exhibit L**.

57.     To advance her false and misleading claims, Zaatari referenced an ASHRAE article that was removed from circulation in May 2019—nearly two years before Zaatari published the Open Letter. Zaatari makes no mention of the fact that the article was removed from circulation by ASHRAE. This is another example of Zaatari's attempt to disguise her biased and misleading statements as credible, academic analysis.

58.     Notably absent from Zaatari's Twitter page and from the Open Letter is any disclosure of Zaatari's obvious conflict of interest. In fact, while the Open Letter indicates Zaatari is affiliated with D Zine, it also states that there were "[n]o reported conflicts of interest" from the authors and wholly ignores Zaatari's engagement with enVerid. *See* **Exhibit K**.

59.     Upon information and belief, Zaatari has also failed to disclose to publishers, such as CNN, Kaiser Health News, Mother Jones, NBC, WIRED, and Yahoo News, her conflicts of interest and has made further efforts to disguise the false and misleading nature of her statements.

60.     Upon information and belief, Zaatari also spreads inaccurate, misleading, disparaging, and defamatory statements about GPS and GPS's products through her involvement in and presentations to members of the ASHRAE, the U.S. Green Building Council, the academic community, and other industry organizations.

61.     Upon information and belief, Zaatari also has directly contacted GPS's existing and potential customers in an effort to interfere with those relationships and to gain an unfair economic advantage for herself, D Zine, and enVerid.

**C.**     **Zaatari's Publication of False, Misleading, Disparaging, and Defamatory Information Increases After GPS's Original Complaint**

62.     Since GPS filed its Original Complaint (Dkt. No. 1), Zaatari's publication of false, misleading, disparaging, and defamatory information about GPS and its products has only increased.

63.     First, as detailed above, Zaatari continues to publish false, misleading, disparaging, and defamatory information about GPS and GPS's product via Twitter, Facebook, and LinkedIn.

64.     In addition, as a direct result of Zaatari's relentless, unfounded criticisms of GPS and GPS's products—including Zaatari's recent attempts to frame her activity as advocacy for children in schools rather than a clear ploy to drive business to D Zine and enVerid by smearing the reputation and goodwill of their competitors—local and national news organizations have begun publishing stories based upon the false and misleading information originally published by Zaatari.

65.     On April 30, 2021, Zaatari published a tweet encouraging readers to, among other things, "stop the ionization," inaccurately suggesting that technologies such as GPS's NPBI$^{TM}$ is equivalent to "fogging," "spraying," and "oxidation," and that the technology is not "proven." The tweet also links to a story published by KCUR.org that extensively quotes Zaatari, including the false and misleading blanket statement that electronic air cleaners—such as GPS's NPBI$^{TM}$—"do little more than generate ozone, formaldehyde, ultrafine particles, or other substances that cause cancer or other conditions." Also, in the article, despite independent test results to the contrary, Zaatari falsely claims that products such as GPS's NPBI$^{TM}$ "do nothing." A true and correct copy of the Twitter post and the KCUR.org article are attached as **Exhibits M** and **N**, respectively.

66.     On May 3, 2021, Zaatari published a tweet claiming an "investigative article by CNN/KHN" allegedly "shows how the claims by manufacturers are overblown," that companies

are "making the $$$$$ by riding on the back of our children," and that the products could cause "serious public health problem[s] in our schools." The tweet includes a link to an article originally published by Kaiser Health News, and later re-published by numerous prominent, national news organizations, including CNN. The article repeats many of the false and misleading statements made by Zaatari over the past several months, and specifically names GPS in the first sentence of the article. The article relies heavily on Zaatari, quoting Zaatari for numerous false and misleading statements about ionizing air purifiers—including those of GPS—asserting the claim that they can "exacerbate asthma and harm developing lungs," and that the products are "a high cost for nothing." The article even quotes Zaatari on the instant lawsuit, in which she claims it is merely a "David-versus-Goliath situation." Notably absent from the article, however, is any disclosure of Zaatari's obvious conflicts of interest via D Zine and enVerid or her acknowledgment of scientific studies refuting her affirmative statements. A true and correct copy of the Twitter post and the CNN republication of the Kaiser Health News article are attached as **Exhibits O** and **P**, respectively.

67.     The May 3, 2021, CNN article is entitled *Schools Spending Millions on Air Purifiers Often Sold Using Overblown Claims*. Despite its efforts to ensure its products are safe and effective, GPS is named in the first sentence of the article. Zaatari is repeatedly quoted in the article, making false and misleading statements, including that GPS's products "emit ozone" and "exacerbate asthma and harm developing lungs." *See* **Exhibit P**.

68.     Also on May 3, 2021, Zaatari reiterated her false and unquestionably inflammatory statement comparing GPS to cigarette manufacturers by publishing a tweet stating that "[t]aking the word from manufacturers and ignoring the science 'is like only listening to advice from Philip Morris as to whether smoking is safe or not.'" Like Zaatari's other May 3 tweet, this too includes

a link to the CNN article that contains false and misleading statements by Zaatari. A true and correct copy of the Twitter post is attached as **Exhibit Q**.

69.     On May 5, 2021, Zaatari published a tweet purporting to present timely test data for the GPS NPBI$^{TM}$ product, claiming the test results demonstrate the "CADR of a needle point bipolar ionization [product that] was tested by ETL lab." The tweet claims the test results show that GPS's product achieves a "smoke CADR [of only] 0.11," and that these results show the product "would be fit for 0.18 ft2 ([shoe box])." The tweet does not include a citation to the underlying test results so that readers can assess the results for themselves. More importantly, the tweet fails to disclose that the test was conducted in January 2012, almost 10 years ago, on a product that GPS has not offered for sale for many years, by a competitor of GPS—AtmosAir Solutions. A true and correct copy of the Twitter post and the AtmosAir Solutions test results are attached as **Exhibits R** and **S**, respectively.

70.     In response to the above tweet, Zaatari contrasted the nearly decade-old test results against HEPA air filters, touting HEPA filters—the very products offered by D Zine and enVerid—as the "effective and cheap" option. A true and correct copy of the Twitter thread including this response is attached as **Exhibit T**.

71.     From May 4 to May 11, 2021, additional news articles, each relying heavily on Zaatari, were published by local and national news organizations. The outlets of these articles include Yahoo News, Mother Jones, Campus Safety, The Defender, Education Week, and Government Technology. Each time, the articles reply upon or reference Zaatari's false and misleading statements about ionizing air purifiers—including the GPS NPBI$^{TM}$ product specifically.

72.     Riding her newfound wave of notoriety, Zaatari published a tweet on May 14, 2021 in which she claimed that "ionizers, ozone generators, and oxidizers" are incapable of solving the "[p]oor ventilation in aging schools" that cause "chronic issue[s]," and—despite knowing the falsity of the statement—even stated these technologies "exacerbate the problem." The tweet also included a link to tweet and article published by NBC, in which Zaatari is extensively quoted. Notably, the NBC article quotes Zaatari stating that products such as GPS's NPBI$^{TM}$ product are merely "gimmicks" that can produce "formaldehyde and ultrafine particles." A true and correct copy of the Twitter post and the NBC article are attached as **Exhibits U** and **V**, respectively.

73.     The May 14, 2021, NBC News article is entitled *Federal Officials Seek Better Rules About Schools' Indoor Air Quality*. The NBC News article cites to and relies upon Zaatari heavily, mentioning Zaatari over 10 times. Quoting Zaatari, the article includes several false, misleading, disparaging, and defamatory statements directed at GPS, including: "using devices that emit any amount of ozone is dangerous because it is 'highly reactive' indoors, forming new pollutants, such as formaldehyde" and "schools are buying devices that could emit ozone at levels above the limit recommended by [ASHRAE]," even referring to products like GPS's NPBI$^{TM}$ as "gimmicks" and their suppliers "almost criminal." The NBC News article also specifically references Zaatari's "Open Letter" and other news articles published in reliance upon the "Open Letter" (such as the Kaiser Health News article). *See* **Exhibit V**.

74.     As discussed above, GPS's NPBI$^{TM}$ product achieved the UL 2998 zero ozone emissions certification. As such, Zaatari's statements regarding ozone emission in the article published by NBC News are demonstrably false, and clearly intended to steer GPS's existing and prospective customers away from GPS, including but not limited to D Zine and enVerid, a company for which Zaatari is on the board of advisors.

75.    There can be no question that the articles discussed above are the direct result of Zaatari's repeated publication of false, misleading, disparaging, and defamatory information about GPS and GPS's products. Not only do these articles specifically cite Zaatari and her false, misleading, disparaging, and defamatory statements, they prominently feature Zaatari and rely upon her perceived status in the industry, claiming Zaatari to be an "air quality expert." Indeed, Zaatari is at the heart of the NBC article:



76.    Notably absent from these articles is any mention of Zaatari's obvious conflict of interest based on her roles with D Zine and enVerid.

77.    As a result of Zaatari's baseless and relentless attacks, GPS is suffering irreparable harm.

78.    Zaatari's false, misleading, disparaging, and defamatory statements have caused substantial damage to GPS and irreparable harm to GPS's reputation.

79.     In fact, multiple of GPS's actual and prospective customers have paused or ceased doing business with GPS as a direct result of Zaatari's baseless smear campaign conducted through her numerous social media postings, speaking engagements, and mainstream media articles.

80.     One such example was reported by The Mercury News on May 20, 2021. As detailed in the article, the Newark, New Jersey Unified School District decided to cease using 556 GPS NPBI$^{TM}$ devices—valued at over $350,000—as a direct result of the false and misleading statements published by Zaatari. The article quotes Zaatari and repeats many of the false and misleading statements described above. A true and correct copy of the article is attached as **Exhibit W**.

81.     Defendants had actual knowledge of GPS's existing and prospective contracts, agreements and business relations with potential customers, and knew and/or intended that their misstatements would interfere with these relationships.

82.     Other existing and prospective customers of GPS, which Defendants had actual knowledge of, have ceased doing business with GPS as a direct result of the false and misleading information spread by Zaatari as detailed in the paragraphs above.

## CAUSES OF ACTION

**Count I: Federal False Advertising, Product Disparagement, and Unfair Competition
(15 U.S.C. § 1125(a))**

83.     GPS incorporates the preceding paragraphs of the Original Complaint by reference as if fully set forth herein.

84.     As described above, Defendants have made false and misleading statements in commercial advertisements, presentations, and publications in violation of the Lanham Act, 15 U.S.C. § 1125 that have deceived existing and potential customers of GPS.

85.     These false and misleading statements were made in an effort to damage GPS's business and reputation and to sell products and services that directly compete with GPS for customers and air purification solutions.

86.     Defendants' statements are false and misleading descriptions of fact that have or are likely to cause confusion, mistake, or deception and misrepresent the nature, characteristics, and qualities of GPS's products.

87.     The statements made by Defendants have or are likely to materially influence purchasing decisions at least in part because the public, those in the air quality industry, and GPS's customers and prospective customers are misled to incorrectly believe that GPS is disreputable and untrustworthy, and that GPS's products are dangerous, ineffective, and/or of inferior quality.

88.     Defendants knew or should have known that their commercial advertisements, presentations, and publications were false and/or misleading, or acted with the intent to deceive or in reckless disregard of the truth of such statements.

89.     Defendants' false and misleading descriptions of fact have caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for Defendants' actions, would begin or continue to do business with GPS.

## Count II: Defamation (Texas Law)

90.     GPS incorporates the preceding paragraphs of the Original Complaint by reference as if fully set forth herein.

91.     Defendants have intentionally published false statements to the public at large through publicly available social media platforms, to actual and prospective customers of GPS, and to members of the industry directly and indirectly by virtue of, among others, the numerous inaccurate, misleading, disparaging, and defamatory statements described and identified in the paragraphs above. Each of these statements are unambiguously defamatory based on the context.

92.     The false statements made by Defendants refer to GPS and, in many instances, specifically purport to convey untrue facts about GPS and/or GPS's NPBI$^{TM}$ air purification system.

93.     These false statements expressly or impliedly asserted facts that are objectively verifiable, such as Defendants' inaccurate, misleading, disparaging, and defamatory statements about the characteristics, efficacy, safety, and quality of GPS's products.

94.     Defendants' written statements are also libel per se as defined by Section 73.001 of the Texas Civil Practice and Remedies Code. In particular, Defendants' numerous statements impeach GPS's honestly, integrity, virtue, and reputation by either directly stating or indirectly implying that GPS's products are not only inadequate for the intended purpose, but also pose significant safety risks to the public. These statements are reasonably calculated to produce such results, and imply that GPS knowingly or intentionally disregards the safety and wellbeing of its customers and the public at large in developing, promoting, and selling its products.

95.     Defendants' written statements are defamatory per se under Texas common law because they have injured GPS in its occupation. Among other things, Defendants have made inaccurate, misleading, disparaging, and defamatory statements to the public, including GPS's customers and prospective customers, regarding the characteristics, efficacy, safety, and quality of GPS's products.

96.     Upon information and belief, Defendants published these statements with actual malice. Defendants knew or reasonably should have known that the statements in question were false. Defendants are aware that omitting certain facts from its statements could leave a reader, including but not limited to GPS's current and prospective customers, with a substantially false impression. Upon information and belief, Defendants purposefully avoid the truth by refusing to

consult sources that can objectively verify the truth (or falsity) of its statements. At the very least, Defendants are negligent in determining whether its statements are true.

97.     Defendants' false statements are defamatory per se, entitling GPS to a presumption of general damages. Additionally, Defendants' false statements directly and proximately injured GPS, and will continue to do so. As a result, GPS has suffered and will continue to suffer general damages, including injury to its character, reputation within the industry, and the goodwill it has developed over many years.

98.     Defendants' false statements directly and proximately injured GPS, and will continue to do so, resulting in special damages, including loss of earning capacity and loss of past and future income.

### Count III: Business Disparagement (Texas Law)

99.     GPS incorporates the preceding paragraphs of the Original Complaint by reference as if fully set forth herein.

100.    As described above, Defendants have published false and disparaging written statements about GPS's products, including the NPBI$^{TM}$ air purification system. Defendants' statements were directed to, among others, GPS's customers, prospective customers, and individuals and businesses throughout the industry.

101.    D Zine's website is integral to its business, and includes—on the website homepage—a link to Zaatari's Twitter page. Each time a customer or prospective customer accesses Zaatari's Twitter page, they are confronted with Zaatari's inaccurate, misleading, disparaging, and defamatory statements about GPS and GPS's products.

102.    Defendants' statements were and continue to be disparaging because they cast doubt on the characteristics, efficacy, safety, and quality of GPS's products, including the NPBI$^{TM}$

air purification system. Defendants accomplish this by making direct statements about GPS and GPS's products, often false even though they are couched as factual statements.

103.    Defendants' statements create a substantially false and disparaging impression by omitting and misrepresenting material facts.

104.    The context of these statements demonstrates that Defendants intend to cast doubt on the characteristics, efficacy, safety, and quality of GPS's products. These statements demonstrate an intent to paint GPS as a producer of dangerous and unhealthy products and a company with whom its existing and prospective retailers and customers should sever ties.

105.    The statements concern GPS's economic interests because the statements go to the heart of GPS's character as a business, its trustworthiness, and the quality of its products. These statements not only directly bear on the core purpose of GPS's products, but also falsely indicate to customers the nature of GPS's products, including without limitation that they "may cause serious diseases," generate "potentially dangerous byproducts," and "add pollutants to the space."

106.    Upon information and belief, Defendants published their statements with malice. Defendants knew the statements in question were false, acted with reckless disregard for whether the statements were true, acted with ill will, and intended to interfere with GPS's economic interests.

107.    Defendants' false and misleading statements have caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for Defendants' actions, would continue to do business with GPS. These direct pecuniary losses are attributable to Defendants' false communications because, on information and belief, those false statements have played a substantial part in causing irreparable harm to GPS's reputation in the industry.

**Count IV: Tortious Interference with Prospective Business (Texas Law)**

108.    GPS incorporates the preceding paragraphs of the Original Complaint by reference as if fully set forth herein.

109.    As described above, Defendants have made inaccurate, misleading, disparaging, and defamatory statements regarding GPS and GPS's products.

110.    Defendants had actual knowledge of GPS's prospective contracts, agreements, and business relations with potential customers.

111.    Upon information and belief, these statements were made willfully and intentionally in order to interfere with GPS's prospective business relationships and have resulted in the loss of prospective contracts and other business with existing and additional prospective customers.

112.    Defendants' intentional interference with GPS's prospective contracts, agreements, and business relations, which was independently tortious and unlawful, proximately caused GPS injury in the form of actual harm, including without limitation, lost revenue, profits and sales, and loss of future income.

**Count V: Common Law Unfair Competition**

113.    GPS incorporates the preceding paragraphs of the Original Complaint by reference as if fully set forth herein.

114.    Defendants' false and misleading descriptions of fact in commercial advertisements, presentations, and promotional materials are likely to cause mistake and deception among consumers as to the characteristics, efficacy, safety, and quality of GPS's products.

115.    Defendants' false and misleading descriptions of fact were made intentionally and willfully, in actual or reckless disregard for GPS.

116.    GPS has been and will continue to be irreparably harmed unless Defendants are enjoined from further false and misleading descriptions of fact about GPS's products and required to retract prior false and misleading statements.

## JURY DEMAND

GPS hereby demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

GPS respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.    a preliminary and permanent injunction restraining Defendants, along with their officers, agents, servants, employees, and attorneys from making, publishing, or otherwise distributing false, misleading, or disparaging statements about GPS or any of GPS's products; and

B.    an award of Defendants' profits and GPS's damages;

C.    an award in an amount that will enable GPS to engage in corrective advertising at a level that will effectively counter Defendants' unlawful activity;

D.    an award of GPS's reasonable attorneys' fees and costs of this action;

E.    exemplary damages in a sum to be determined by the trier of fact;

F.    pre- and post-judgment interest as allowed by law;

G.    an order requiring Defendants to retract their false statements and engage in corrective advertising; and

H.    such other and further relief to which GPS may be entitled.

Dated: <u>May 21, 2021</u>                         Respectfully submitted,

                                                  MCGUIREWOODS LLP

                                                  <u>/s/ Justin Opitz</u>
                                                  Justin Opitz
                                                  Texas State Bar No. 24051140
                                                  Matthew W. Cornelia
                                                  Texas State Bar No. 24097534
                                                  Addison Fontein
                                                  Texas State Bar No. 24109876
                                                  2000 McKinney Avenue, Suite 1400
                                                  Dallas, TX 75201
                                                  Tel:  (214) 932-6400
                                                  Fax:  (214) 932-6499
                                                  jopitz@mcguirewoods.com
                                                  mcornelia@mcguirewoods.com
                                                  afontein@mcguirewoods.com

                                                  Robert A. Muckenfuss (admitted *pro hac vice*)
                                                  North Carolina State Bar No. 28218
                                                  Kelly A. Warlich (admitted *pro hac vice*)
                                                  North Carolina State Bar No. 51053
                                                  201 North Tryon Street, Suite 3000
                                                  Charlotte, NC 28202
                                                  Tel: (704) 343-2000
                                                  Fax: (704) 343-2300
                                                  rmuckenfuss@mcguirewoods.com
                                                  kwarlich@mcguirewoods.com

                                                  Lucy Jewett Wheatley
                                                  (admitted *pro hac vice*)
                                                  Virginia State Bar No. 77459
                                                  800 East Canal Street
                                                  Richmond, VA 23219
                                                  Tel: (804) 775-4320
                                                  Fax: (804) 698-2017
                                                  lwheatley@mcguirewoods.com

                                                  *Counsel for Plaintiff*
                                                  *Global Plasma Solutions, Inc.*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was electronically filed on May 21, 2021, using the Court's CM/ECF system, which will send notice of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Justin Opitz*
Justin Opitz