**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., | |
| *Plaintiff,* | |
| v. | CIVIL ACTION NO. 3:21-CV-884-M |
| D ZINE PARTNERS, LLC and MARWA ZAATARI | JURY TRIAL DEMANDED |
| *Defendants.* | |

**RESPONSE IN OPPOSITION TO DEFENDANTS' APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND INJUNCTIVE RELIEF**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ...................................... 3

III.   ARGUMENT AND AUTHORITY .......................................................... 4

    A.    Legal Standard ........................................................................ 4

    B.    Defendants' Failure to Assert a Cause of Action is Fatal to their
        Application.............................................................................. 5

    C.    Even if Defendants Assert a Cause of Action, Defendants Cannot
        Establish a Substantial Likelihood of Success on the Merits ............... 6

        i.    Defendants Have Made No Showing of Defamation,
            Disparagement, or Tortious Interference by GPS...................... 6

        ii.    Defendants' Purported Defamation Claims Would Be Time-Barred ...... 10

        iii.   Plaintiff's Statements are Privileged and Otherwise True ...................... 11

        iv.   Injunctive Relief Is Not Warranted under Defendants' Theories ............ 12

        v.    Defendants' Purported Tortious Interference Claim Suffers the
            Same Fatal Defects ................................................................ 14

    D.    Defendants Fail to Articulate Any Cognizable Threat of Irreparable Harm ....... 15

    E.    Defendants Have Not Established an Imminent Need for Injunctive Relief ....... 16

    F.    Defendants' Application Lacks the Required Specificity................................... 18

IV.   CONCLUSION AND PRAYER .............................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allstate Ins. Co. v. Plambeck*,
  2012 U.S. Dist. LEXIS 81559, 2012 WL 2130982 (N.D. Tex. Jan. 4, 2012) .......................11

*Anibowei v. Wolf*,
  2020 WL 208818, 2020 U.S. Dist. LEXIS 5779 (N.D. Tex. 2020)............................................4

*Avilez v. Unknown Officer*,
  2003 U.S. Dist. LEXIS 10253, 2003 WL 21436489 (N.D. Tex. 2003) .................................10

*Bar J-B Co. v. Tex. Dot.*,
  No. 3:18-cv-0576, 2018 U.S. Dist. LEXIS 237373 (N.D. Tex. 2018) .....................................4

*Barcenas v. Fed. Home Loan Mortg. Corp.*,
  2013 U.S. Dist. LEXIS 9405, 2013 WL 286250 (S.D. Tex. 2010) ....................................5, 7

*Boire v. Pilot Freight Carriers, Inc.*,
  515 F.2d 1185 (5th Cir. 1975) .................................................................................................17

*Brammer v. KB Home Lone Star, L.P.*,
  114 S.W.3d 101 (Tex. App.—Austin 2003, no pet.) ...............................................................12

*Chacon v. Granata*,
  515 F.2d 922 (5th Cir. 1975) ...................................................................................................16

*Charalambopoulos v. Grammer*,
  2015 U.S. Dist. LEXIS 66961, 2015 WL 2451182 (N.D. Tex. 2015) .............................11, 12

*Cooper v. Bank of N.Y. Mellon*,
  2014 U.S. Dist. LEXIS 13108 (N.D. Tex. 2014).......................................................................5

*Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*,
  284 F. Supp. 3d 985 (D. Neb. 2018).......................................................................................15

*Deerfield Med. Ctr. v. City of Deerfield Beach*,
  661 F.2d 328 (5th Cir. 1981) ...................................................................................................15

*Deutsche Bank Nat. Trust Co. v. Sims*,
  2012 U.S. Dist. LEXIS 181376, 2012 WL 6651123 (N.D. Tex. 2012) ....................................5

*Elite Rodeo Ass'n v. Prof'l Rodeo Cowboys Ass'n*,
  159 F. Supp. 3d 738 (N.D. Tex. 2016) .....................................................................................6

*Fowler v. Capital Cities/ABC, Inc.*,
  2002 U.S. Dist. LEXIS 18484, 2020 WL 31230802 (N.D. Tex. 2002) ...............................14

*GoNannies, Inc. v. GoAuPair.com, Inc.*,
  464 F. Supp. 2d 603 (N.D. Tex. 2009) ...................................................................................17

*GTE Card Services, Inc. v. AT&T Corp.*,
  1997 WL 74712, 1997 U.S. Dist. LEXIS 24768 (N.D. Tex. 1997).........................................17

*Hajek v. Bill Mowbray Motors, Inc.*,
  647 S.W.2d 253 (Tex. 1983)...................................................................................................12

*Heritage Pac. Fin., LLC v. Shelton Investigations*,
  LLC, 2009 U.S. Dist. LEXIS 115887, 2009 WL 4983810 (E.D. Tex. 2009) .......................12

*Hurlbut v. Gulf Atl. Life Ins. Co.*,
  749 S.W.2d 762 (Tex. 1987) ..................................................................................................10

*John Crane Prod. Solutions, Inc. v. R2R & D, LLC*,
  861 F. Supp.2d 792 (N.D. Tex. 2012) .....................................................................................5

*Lazzari v. Cuban*,
  No. 3:14-cv-1926, 2014 U.S. Dist. LEXIS 72899 (N.D. Tex. 2014) .......................................5

*Markel v. World Flight, Inc.*,
  938 S.W.2d 74 (Tex. App.—San Antonio 1996, no writ) ......................................................13

*Marsh v. Wells Fargo Bank, N.A.*,
  760 F. Supp. 2d 701 (N.D. Tex. 2011) .....................................................................................6

*Monroe v. Hous. Indep. Sch. Dist.*,
  794 F. App'x. 381 (5th Cir. Nov. 25, 2019) ..........................................................................18

*Morrison v. Wells Fargo Bank, N.A.*,
  2019 U.S. Dist. LEXIS 28468 (S.D. Tex. 2019) (mem. and rec. adopted, 2019
  U.S. Dist. LEXIS 28550, 2019 WL 859781).........................................................................15

*Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*,
  512 F.3d 137 (5th Cir. 2007) ................................................................................................10

*Oliver v. Skinner*,
  2013 U.S. Dist. LEXIS 24518, 2013 WL 667664 (S.D. Miss. 2013)....................................13

*Pirmantgen v. Feminelli*,
  745 S.W.2d 576 (Tex. App.—Corpus Christi 1988, no writ)................................................13

*Ross v. Arkwright Mut. Ins. Co.*,
  892 S.W.2d 119 (Tex. App—Houston [14th Dist.] 1994, no writ) .......................................10

*Scott v. Schedler*,
    826 F.3d 207 (5th Cir. 2016) ...............................................................................18

*Stredwick v. Dall. Margarita Soc'y, Inc.*,
    2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430 (N.D. Tex. 2012) .................................2

*M. D. ex rel. Stukenberg v. Abbott*,
    907 F.3d 237 (5th Cir. 2018) ...............................................................................5

*Super Future Equities, Inc. v. Wells Fargo Bank, N.A.*,
    553 F. Supp. 2d 680 (N.D. Tex. 2008) ..................................................................14

*Texas v. E.E.O.C.*,
    933 F.3d 433 (5th Cir. 2019) ...............................................................................18

*Thryv, Inc. v. Listing Cent., LLC*,
    2020 U.S. Dist. LEXIS 206799, 2020 WL 6504668 (N.D. Tex. 2020) .................................13

*Thurmond v. Compaq Computer Corp.*,
    2000 U.S. Dist. LEXIS 22720 (E.D. Tex. 2000) ......................................................13

*Villas at Parkside Ptnrs v. City of Farmers Branch*,
    2007 U.S. Dist. LEXIS 36918 (N.D. Tex. 2007) ......................................................16

*Winter v. Natural Resources Defense Council, Inc.*,
    555 U.S. 7 (2008) ............................................................................................15

**Statutes**

Tex. Civ. Prac. & Rem. Code § 16.003(a) ................................................................15

**Other Authorities**

Fed. R. Civ. P. 65 ..........................................................................................5, 17, 18

Plaintiff Global Plasma Solutions, Inc. ("GPS") respectfully submits its Response in Opposition to Defendants D Zine Partners, LLC ("D Zine") and Marwa Zaatari's ("Zaatari") (collectively, "Defendants") Application for Temporary Restraining Order and Injunctive Relief (Dkt. No. 22) (the "Application").

I.   **INTRODUCTION**

Defendants' Application must be denied. Not only have Defendants not asserted any counterclaim against Plaintiff, but out of the 265 pages attached to their Application, Defendants also fail to offer any evidence to establish the required elements to obtain injunctive relief. Defendants' Application makes clear they cannot (1) prevail on the merits of any actionable claim, (2) establish a threat of irreparable harm, (3) prove that the threatened injury outweighs the threatened harm to the non-applicant, or (4) show that the requested injunctive relief will not disserve public interest.

GPS brought the underlying lawsuit as a result of Defendants' escalating scheme of making intentionally defamatory statements about GPS and its products in order to gain an unfair economic advantage for competitors enVerid Systems, Inc. ("enVerid) and D Zine, companies in which Zaatari has an economic interest.  Some of the statements Defendants complain about in their Application involve GPS employees accurately and truthfully raising the issue about Zaatari's economic conflict of interest.  As will be discussed in detail below, none of these statements give rise to any viable claim, even if such a claim were actually asserted against GPS in this case. Moreover, and not surprisingly, Defendants make no mention of enVerid in their Application and never deny or refute that Zaatari has an economic interest in GPS's competitors enVerid and D Zine.  Zaatari's affidavit notably fails to deny or refute that she has a conflict of interest, including with respect to Zaatari's criticisms of GPS and its products in connection with her role as an

1

American Society of Heating, Refrigerating and Air-Conditioning Engineers ("ASHRAE") member.

Not just GPS, but also other third-party individuals and entities unrelated to GPS, have consistently and accurately identified Zaatari's conflict of interest and her failure to acknowledge it when forced to defend the safety of their own products. *See* Ex. 1 (Declaration of Glenn Brinckman) ("Brinckman Decl."), ¶¶ 13-14, 16-17. GPS has communicated these concerns accurately and truthfully to ASHRAE and others, typically in private forums to limited audiences, over a multi-year period. *Id.*, ¶¶ 13-14, 18. Defendants instead sidestep these facts by casting Zaatari as a victim, all the while undercutting the arguments made in their original motion to dismiss (Dkt. No. 14).[1] Yet, as demonstrated in Defendants' Appendix, the challenged statements are either true, not defamatory because they are an expression of opinion, not made by GPS or its representatives, and/or were made over two years ago, well-beyond the statute of limitations for a viable claim.

Defendants also fail to show any harm, much less irreparable harm. Far from being injured by GPS, over the past five months, Zaatari has enjoyed a meteoric rise to prominence as a direct result of her relentless efforts to stifle competition for air purification devices by publicly spreading false and misleading information about GPS and its products. Since the initiation of this action, Zaatari has been prominently featured and quoted in articles published by some of the largest news organizations in the nation—all based on Zaatari's false and misleading claims regarding GPS and its products while also concealing her direct conflict of interest. In fact, and contrary to the claims

---

[1]    Defendants' Motion to Dismiss is moot as a result of GPS filing its First Amended Complaint (Doc. 21). *See Stredwick v. Dall. Margarita Soc'y, Inc.*, 2012 U.S. Dist. LEXIS 193512, 2012 WL 12893430 at *1 (N.D. Tex. 2012) ("The filing of an amended complaint generally renders pending motions moot.").

in the Application, Zaatari's public speaking opportunities continue, as she recently led a presentation at the ASHRAE Philadelphia Chapter's May 27, 2021 session and plans to speak at a June 9, 2021 seminar for the Indian Society of Heating, Refrigerating and Air Conditioning Engineers (ISHRAE). *See* Ex. 1 (Brinckman Decl.), ¶¶ 20- 23.  Defendants' Application neither forms the basis of any actionable wrongdoing by GPS nor demonstrates entitlement to the immediate and extraordinary remedy of injunctive relief to prevent irreparable harm.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

GPS filed its Original Complaint on April 19, 2021. Dkt. No. 1. The Complaint uses Zaatari's own published words to detail her relentless smear campaign against GPS, designed to boost Zaatari's name recognition and drive customers away from GPS in favor of GPS competitor enVerid, in which Zaatari has an economic interest. In lieu of an answer, on April 30, 2021, Defendants filed a motion to dismiss the Original Complaint. Dkt. No. 14. On May 21, 2021, GPS filed its Amended Complaint (Dkt. No. 21), thereby mooting Defendants' Motion to Dismiss (Dkt. No. 14). Nevertheless, on May 26, 2021, Defendants' Application was filed "*subject to and without waiver of* Defendants' previously filed Motion to Dismiss…," and purports to list causes of action for defamation, business disparagement, and tortious interference without any pleading actually asserting such counterclaims. *See* Dkt. No. 22. The Application does not acknowledge, let alone address the merits of, GPS's Amended Complaint (Dkt. No. 21).

As set forth in the declaration provided by GPS's CEO, Glenn Brinckman, Zaatari was first employed by enVerid Systems ("enVerid") in 2015 as its vice president of building solutions. Ex. 1 (Brinckman Decl.), ¶¶ 3, 6-7. enVerid has at all times been a direct competitor of GPS by selling a competing air purifying technology. *Id.*, ¶ 8. Near the end of 2020, Zaatari became a partner with D Zine but remained part of the enVerid leadership team and has served as an "Advisor" and "Co-

3

Chair" as described on enVerid's website. *Id.*, ¶¶ 5-6, 9; *see also* Dkt. No. 21, ¶ 39. During this time, Zaatari ramped up her attacks on GPS and its technology while also promoting enVerid's technology. Ex. 1 (Brinckman Decl.), ¶¶ 8-9; Dkt. No. 21, ¶¶ 39-55, 65-73. enVerid specifically sought to compete with GPS in providing air purifying technology to schools and even began lobbying efforts with the Department of Education. Ex. 1 (Brinckman Decl.), ¶ 10-11. Zaatari, in turn, increased her false and misleading attacks on GPS's business and targeted its school customers. Dkt. No. 21, ¶¶ 41, 51-52, 55-58, 64-73.  In numerous writings and public social media posts, Zaatari has attacked GPS and its technology without disclosing her conflict of interest and, in at least one instance, falsely claimed she had no conflict of interest, even though she was an advisor to enVerid and partner of D Zine. Ex. 1 (Brinckman Decl.), ¶¶ 13-14; Dkt. No. 21, ¶¶ 58-59, 66, 72-76. Zaatari has been aware of GPS's position with regard to her conflict of interest for several years and has never offered any evidence or proof to refute it. The Application is no different.

## III.    ARGUMENT AND AUTHORITY

### A.    Legal Standard

Because it is an "extraordinary remedy," a temporary restraining order or preliminary injunction "is not to be granted routinely" and "is to be treated as the exception rather than the rule." *Anibowei v. Wolf*, 2020 WL 208818 *3, 2020 U.S. Dist. LEXIS 5779 *8-9 (N.D. Tex. 2020) (Fitzwater, J.) (citing *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)); *see also*, *Bar J-B Co. v. Tex. Dot.*, No. 3:18-cv-0576, 2018 U.S. Dist. LEXIS 237373 at *3 (N.D. Tex. 2018) (Lynn, J.) (citing *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (applicant must "by a clear showing, carr[y] the burden of persuasion")). Accordingly, although "[t]he decision whether to grant a preliminary injunction is within the discretion of the

court," it is well-accepted that "it is an extraordinary remedy that should only be granted if the movant has clearly carried its burden." *John Crane Prod. Solutions, Inc. v. R2R & D, LLC*, 861 F. Supp.2d 792, 794 (N.D. Tex. 2012) (Fitzwater, C.J.) (citing *TGI Friday's Inc. v. Great Nw. Rest. Inc.*, 652 F.Supp.2d 792, 794 (N.D. Tex. 2012)).

A court may only grant injunctive relief where the applicant shows: (1) there is a substantial likelihood that the applicant will prevail on the merits; (2) there is a substantial threat that irreparable harm will result if the relief is not granted; (3) the threatened injury outweighs the threatened harm to the non-applicant; and, (4) the granting of relief will not disserve the public interest. *Lazzari v. Cuban*, No. 3:14-cv-1926, 2014 U.S. Dist. LEXIS 72899 at *1 (N.D. Tex. 2014) (Lynn, J.) (mem. op.); *Deutsche Bank Nat. Trust Co. v. Sims*, 2012 U.S. Dist. LEXIS 181376, 2012 WL 6651123 at *2 (N.D. Tex. 2012) (Lynn, J.) (citing *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011)); *see also*, Fed. R. Civ. P. 65.  In the exceptional cases where the applicant satisfies this burden, "[i]njunctions must be narrowly tailored to remedy the specific action which gives rise to the order." *M. D. ex rel. Stukenberg v. Abbott*, 907 F.3d 237, 272 (5th Cir. 2018) (citing *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 586 (5th Cir. 2013)).

### B.     Defendants' Failure to Assert a Cause of Action is Fatal to their Application

A fundamental and necessary prerequisite to obtaining a temporary restraining order or preliminary injunction is the existence of "a facially meritorious underlying cause of action" that would ultimately entitle the applicant to permanent injunctive relief. *Cooper v. Bank of N.Y. Mellon*, 2014 U.S. Dist. LEXIS 13108 at *17 (N.D. Tex. 2014). "A party…can secure an injunction only by showing a likelihood of recovery 'through a claim or cause of action.'" *Id.* (citing *Brown v. KePing Xie*, 260 S.W.3d 118, 122 (Tex. App.—Houston [1st Dist.] 2008, no pet.)). Indeed, "a prayer for injunctive relief, without a cause of action supporting entry of a judgment must be dismissed." *Barcenas v. Fed. Home Loan Mortg. Corp.*, 2013 U.S. Dist. LEXIS 9405 at *31, 2013

WL 286250 at *9 (S.D. Tex. 2010); *see also*, *Marsh v. Wells Fargo Bank, N.A.*, 760 F. Supp. 2d 701, 708 (N.D. Tex. 2011) (Lynn, J.) ("Under Texas law, a request for injunctive relief is not itself a cause of action but depends on an underlying cause of action.") (citing *Cook v. Wells Fargo Bank, N.A.*, 2010 LEXIS 69239, 2010 WL 2772445, at *4 (N.D. Tex. 2010)).

This alone is fatal to Defendants' Application. Defendants have not even answered the complaint (original or amended), let alone asserted any causes of action against GPS. Indeed, Defendants' Application for injunctive relief is *subject to* their (though now moot) Motion to Dismiss. Dkt. No. 14. Without any pleading affirmatively asserting a counterclaim against GPS (and instead seeking dismissal of the suit), Defendants' Application is improper and should be denied.

## C.   Even if Defendants Assert a Cause of Action, Defendants Cannot Establish a Substantial Likelihood of Success on the Merits

Even if the Court were to construe Defendants' Application as pleading counterclaims (which it should not), injunctive relief is inappropriate because Defendants cannot establish a substantial likelihood of success on the merits. *See Elite Rodeo Ass'n v. Prof'l Rodeo Cowboys Ass'n*, 159 F. Supp. 3d 738, 748 (N.D. Tex. 2016) (Lynn, J.) ("A movant must present a prima facie case to show a likelihood of success on the merits.") (citing *Daniels Health Scis., L.L.C.*, 710 F.3d at 582).

### i.   Defendants Have Made No Showing of Defamation, Disparagement, or Tortious Interference by GPS

As part of their Application, Defendants attach 265 pages designated as Appendices A – O.  *See* Dkt. No. 23.  Yet, Defendants only highlight and rely upon a small part of these attachments in making their allegations, and nothing in the Appendix—whether cited by Defendants or

otherwise—is sufficient to support any of Defendants' purported claims. Below is an overview of the documents[2] attached to Defendants' Application:

**Appendix A** is an affidavit of Zaatari. The statements of GPS identified in Appendix A each fall outside of the applicable statutes of limitations as they occurred over two years ago, and therefore are not actionable. The sole exception is the April 21, 2021 letter from counsel for GPS fairly informing ASHRAE of its concerns about the substance of Zaatari's then-upcoming presentation with specific reference to the Original Complaint in the instant lawsuit, therefore rendering the statements privileged and immune.

**Appendix B** is a copy of defendant D Zine's website and does not contain any statements by GPS.

**Appendices C through F** are comments submitted to ASHRAE in relation to proposed ventilation or air quality standards. Appendices C, D, and F do not contain any statements about Zaatari or D Zine, and Defendants do not claim otherwise. Appendix E contains one statement about Zaatari, but the April 2019 statement falls outside of the applicable statutes of limitations of any viable claim, and is a statement of opinion. *See* Dkt. No. 23, App'x E at 33[3] ("...there is extreme bias and ***perceived*** ethical conflicts of interest having someone in a position to approve/disapprove comments with something to gain based on the approval or not.") (emphasis added).

**Appendix G**, as it relates to GPS, contains an incomplete copy of 2019 email communications from GPS representatives to ASHRAE members, and an incomplete copy of a

---

[2]    Several of the documents attached to the Application are incomplete, and Defendants have not provided full copies to GPS. *See, e.g.*, Dkt. No. 23, App'x G at 71 (attaching an incomplete copy of comments to ASHRAE by third-party Larry Sunshine of Plasma Air); *id.* at 74-75 (attaching only pages 1 and 4 of a letter from third-party Robert Miller of Top Product Innovations, Inc.).

[3]    When referencing Appendix page numbers, GPS refers to the pagination added by Defendants and not the page number added by the Court's filing system.

2019 letter attached to the email jointly authored by GPS and non-party Top Product Innovations, Inc. Much like Appendix E, the statements complained of by Defendants are true, fall outside of the applicable statutes of limitations, and at least some are expressly statements of opinion. The only references to Zaatari (directly or indirectly) by GPS employees are at pages 62, 64, and 70:

- On page 62 Mr. Waddell states in a May 12, 2019 email, "This is just plain unethical, ***in my opinion***, having someone with a competitive agenda in a position to control and limit competition based on their actions..." (emphasis added).

- On page 64, the May 14, 2019 joint letter with non-party Top Product Innovations, Inc. discusses how "the person writing for the subcommittee…falsely" stated the ASHRAE standards and raises the issue of the conduct being "unethical" under the ASHRAE process.

- On page 70, Mr. Brinkman states in a May 22, 2019 email, "Coincidentally, Ms. Zaatari motioned for the vote, which was no surprise given her business interests and the fact that she and others were involved in 'responding' to comments that remained unresolved."

Appendix G also includes statements by third parties not affiliated with GPS who also raised concerns about Zaatari's conflict of interest and ethics. On page 71, Defendants attach the ASHRAE comments from a person by the name of Larry Sunshine associated with Plasma Air (no affiliation with GPS). In his reply comments, Mr. Sunshine states, "There is significant and blatant conflict of interest on this committee. The Chair of the Committee stands to gain financially if the changes are approved and implemented. Enverid [sic] will be one of the only technologies that will be able to meet the new performance criteria stated in the changes." Zaatari was fully employed by enVerid in this timeframe.  On page 74 of Appendix G, Defendants attach a letter from Robert E. Miller of Top Product Innovations, Inc. (no affiliation with GPS) to Steve Ferguson of ASHRAE in which Mr. Miller lays out Zaatari's clear conflict of interest by being employed by enVerid. This letter is also not a statement by GPS and, again, Zaatari does not deny this conflict of interest in her affidavit.

**Appendix H** is a letter from counsel for Zaatari to GPS dated July 10, 2019, and therefore does not contain any statements by GPS and references comments beyond the statute of limitations.

**Appendix I** contains communications between Zaatari and others, but does not include any statement by GPS.

**Appendix J** is a copy of private email communications between GPS and Zaatari alone. These emails do not contain any alleged defamatory language, and Defendants do not claim otherwise.

**Appendix K** is the "Open Letter" authored by Zaatari and Dr. Marcel Harmon. It does not contain any statements by GPS.

**Appendix L** is a strictly factual retort to the "Open Letter" that merely seeks to clarify false and misleading statements made by Zaatari and Dr. Harmon about GPS and in scientific defense of its products. Nothing in Appendix L is allegedly defamatory towards Zaatari or D Zine.

**Appendix M** is a letter from GPS's counsel at K&L Gates to ASHRAE dated April 21, 2021, with an attached copy of GPS's Original Complaint and corresponding exhibits. In the letter to ASHRAE, GPS's counsel summarizes the allegations in the Original Complaint and the objections to Zaatari's campaign to spread false and misleading information regarding GPS and its technology. These objections are stated in the Original Complaint and therefore privileged.

**Appendix N** contains communications between Zaatari and others, but does not include any statement by GPS.

**Appendix O** is a letter from counsel for Defendants to counsel for GPS, and therefore does not include any statement by GPS.

Defendants' Appendix makes clear they failed to carry the heavy burden warranting the imposition of injunctive relief.

### ii.      **Defendants' Purported Defamation Claims Would Be Time-Barred**

The majority of the alleged defamatory statements, as discussed above, are barred by the respective statutes of limitations applicable to such claims. *See Avilez v. Unknown Officer*, 2003 U.S. Dist. LEXIS 10253 at *7, 2003 WL 21436489 (N.D. Tex. 2003) ("Texas has a one-year statute of limitations for claims of defamation.") (*citing* Tex. Civ. Prac. & Rem. Code § 16.002); *see also*, *Nationwide Bi-Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 147 (5th Cir. 2007) ("…Texas courts have applied a one-year statute of limitations to business disparagement claims...").[4] Defendants' claims "accrue[] on the date of the publication and not on the date of the consequences..." *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 131 (Tex. App—Houston [14th Dist.] 1994, no writ). Many of Defendants' allegations purporting to support potential defamation and business disparagement claims occurred long before their filing of the Application on May 26, 2021:

| Citation | Statement |
| --- | --- |
| Dkt. No. 22, ¶ 10 | "Although D Zine was founded in November 2, 2020, Zaatari had been on the receiving end of GPS' ire ***long before***." (emphasis added) |
| Dkt. No. 22, ¶¶ 11-14 | Defendants cite to conduct occurring in 2016 whereby "GPS questioned Zaatari's ethics and claimed that she had 'extreme bias.'" |
| Dkt. No. 22, ¶ 15 | "***On May 14, 2019***, Charles Waddell, Founder & CTO at Global Plasma Solutions, further engaged in a campaign of baseless personal attacks against Dr. Zaatari demonstrating a clear intent to damage her professional reputation, including accusing her of 'hijacking' the 62.1 Committee and engaging in 'unethical' and 'deceptive' conduct…" (emphasis added). |

---

[4]      Business disparagement actions are governed by a two-year limitations period only when the injury alleged is direct pecuniary loss rather than a personal loss in reputation. *See Hurlbut v. Gulf Atl. Life Ins. Co.*, 749 S.W.2d 762, 767 (Tex. 1987) (treating business disparagement action as slander action governed by one-year statute of limitations because of lack of pecuniary loss). Regardless of whether the one-year or two-year limitations period, a majority of the alleged conduct is time-barred and thus not actionable.

| Citation | Statement |
|---|---|
| Dkt. No. 22, ¶ 16 | "In ***July of 2019***, Dr. Zattari [sic] was forced to send GPS an immediate cease and desist letter for the continual defamatory statements made about Defendant Zaatari." (emphasis added). |
| Dkt. No. 23, App'x E at 33 | Comment from unknown author within ASHRAE private online  database dated April 19, 2019 |
| Dkt. No. 23, App'x G at 62 | Email from Charles Waddell dated May 2, 2019 |
| Dkt. No. 23, App'x G at 63 | Letter to specific ASHRAE committee members and Board of Directors dated May 14, 2019 |

As a result, these claims are time-barred and cannot form the basis of any of Defendants' purported causes of action.

### iii.     Plaintiff's Statements are Privileged and Otherwise True

Notwithstanding the multiple statements that are time-barred, clear expressions of opinion, or those of unrelated third parties, the remaining statements about which Defendants complain were made in the context of this litigation, specifically in connection with the Original Complaint. *See* Dkt. No. 22, ¶ 21; Dkt. 23 at App'x M. Under Texas law, publications made in the course of judicial and quasi-judicial proceedings are absolutely privileged. *Allstate Ins. Co. v. Plambeck*, 2012 U.S. Dist. LEXIS 81559, 2012 WL 2130982, at *5 (N.D. Tex. Jan. 4, 2012) (Kaplan, J.) ("Even out-of-court statements are privileged if the statements bear some relationship to pending or contemplated litigation." (citations omitted)), *rec. adopted* , 2012 U.S. Dist. LEXIS 81282, 2012 WL 2130912 (N.D. Tex. June 12, 2012) (Lynn, J.); *Charalambopoulos v. Grammer*, 2015 U.S. Dist. LEXIS 66961 at *8-9, 2015 WL 2451182 (N.D. Tex. 2015) (Fitzwater, J.) ("…any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, or any other  action.") (citations omitted). This Court has further determined that, "[t]he judicial proceedings privilege is 'tantamount to immunity,' and, where there is an absolute privilege, no

civil action in damages for oral or written communications will lie, 'even though the language is false and uttered or published with express malice.'" *Id.* (citing *Hurlbut*, 749 S.W.2d at 768; *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942)). Defendants' reliance upon privileged statements do not support a defamation or business disparagement claim.

Plaintiff has accurately and truthfully voiced its concerns about Zaatari's conflict of interest for years. Zaatari has never denied her economic conflict of interest and has failed to deny or refute that she has an economic interest in GPS's competitor enVerid. To the extent Defendants complain about Plaintiff's statements regarding Zaatari's conflict of interest or that she, D Zine, and enVerid are seeking an unfair economic advantage over GPS, those statements are either expressed as opinion or in fact true, and therefore not a basis for any actionable claim.

### iv.    Injunctive Relief Is Not Warranted under Defendants' Theories

Even if Defendants' factual allegations as to GPS were not time-barred and had merit (which they do not), courts generally deny injunctive relief in the context of defamation actions. *Brammer v. KB Home Lone Star, L.P.*, 114 S.W.3d 101, 107 (Tex. App.—Austin 2003, no pet.) ("…courts will not grant injunctive relief in defamation or business disparagement actions if the language enjoined evokes no threat of danger to anyone, even though the injury suffered often cannot easily be reduced to specific damages."); *Hajek v. Bill Mowbray Motors, Inc.*, 647 S.W.2d 253, 255 (Tex. 1983) (dissolving temporary injunction as violative of article one, section eight of Texas Constitution). As long as the alleged speech does not threaten others, even defamatory statements are constitutionally protected in most cases under Texas law. *See Heritage Pac. Fin., LLC v. Shelton Investigations,* LLC, 2009 U.S. Dist. LEXIS 115887 at *8-10, 2009 WL 4983810 (E.D. Tex. 2009).

The Application amounts to nothing more than a thinly veiled demand for a gag order, which carries with it a high standard that has not been met here.[5]  Defendants' request for injunctive relief under the guise of defamation and business disparagement exceeds the scope of constitutional permissibility. *Markel v. World Flight, Inc*., 938 S.W.2d 74, 79-81 (Tex. App.—San Antonio 1996, no writ) (holding temporary injunction unconstitutional prior restraint on free expression); *Pirmantgen v. Feminelli*, 745 S.W.2d 576, 578-79 (Tex. App.—Corpus Christi 1988, no writ) (holding temporary injunction violated Texas Constitution). Despite Defendants' argument that a "[p]reliminary injunction is warranted where public interest lies with protection of First Amendment rights," (Dkt. No. 22, ¶ 28), here, entry of the Application will not advance such interests, and in fact seeks to limit GPS's First Amendment rights. *See Thryv, Inc. v. Listing Cent., LLC*, 2020 U.S. Dist. LEXIS 206799 at *6, 2020 WL 6504668 (N.D. Tex. 2020) (denial of request for injunctive relief as "…limiting a company's speech prior to an adjudication still amounts to a restraint on free speech."). Courts have routinely acknowledged "the public interest is better served by a cautious approach to injunctive relief in defamation cases because 'prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.'" *See Oliver v. Skinner*, 2013 U.S. Dist. LEXIS 24518 at *20, 2013 WL 667664 (S.D. Miss. 2013) (citing *Tory v. Cochran,* 544 U.S. 734, 738, (2005)).  Prior restraints

---

[5]      "A 'gag' order restricting parties and witnesses from making extra-judicial statements about a case may only be entered where: (1) there is a ***clear and present danger*** to the fairness of the trial; (2) less restrictive alternatives are not adequate to mitigate the harm; and (3) the order would effectively prevent the threatened danger. *Thurmond v. Compaq Computer Corp.*, 2000 U.S. Dist. LEXIS 22720 at *4-5 (E.D. Tex. 2000) (emphasis in original) (citing *Nebraska Press Ass'n. v. Stuart*, 427 U.S. 539, 563 (1978)). None of these have been established here. Courts within the Fifth Circuit have acknowledged that the imposition of a gag order necessitates an "incredibly high standard." *See Thurmond*, 2000 U.S. Dist. LEXIS 22720 at * 4-5.

on speech—precisely what Defendants seek here—are generally inconsistent with the First Amendment to the Constitution.

Defendants' main complaint appears to pertain to statements that Zaatari has acted in an improper manner in her position with ASHRAE by criticizing GPS and its technology, while at the same time having an economic interest in GPS's competitor. *See* Ex. 1 (Brinckman Decl.), ¶¶ 5-9, 13-14; *see also* Dkt. No. 21, ¶¶ 8-9. GPS has expressed this concern truthfully and accurately based on ASHRAE's own ethical standards. Importantly, whether construed as a truthful statement, or GPS's own opinion, neither are actionable under a defamation theory. *Fowler v. Capital Cities/ABC, Inc.*, 2002 U.S. Dist. LEXIS 18484 at *10-11, 2020 WL 31230802 (N.D. Tex. 2002) ("A defendant can defeat a defamation claim by establishing the 'substantial truth' of the statement."); *Super Future Equities, Inc. v. Wells Fargo Bank, N.A.*, 553 F. Supp. 2d 680, 687 (N.D. Tex. 2008) (citing *Shaw v. Palmer*, 197 S.W.3d 854, 857 (Tex. App.–Dallas 2006, pet. denied)) ("An essential element of defamation is that the alleged defamatory statement be a statement of fact rather than opinion. Expressions of opinion may be derogatory and disparaging; nevertheless they are protected by the First Amendment of the United States Constitution…"). Moreover, Zaatari has consistently failed to disclose this conflict of interest in many of her social media posts and other writings and has falsely claimed (though notably not under oath) that she does not have any economic conflict. *See* Dkt. No. 21, ¶¶ 58-59; *see also* Ex. 1 (Brinckman Decl.), ¶ 14. Indeed, in her sworn affidavit filed with this Court, she makes no effort to set forth any facts refuting that she has a conflict of interest. *See* Dkt. No. 23, App'x A at 1-3.

> **v.   Defendants' Purported Tortious Interference Claim Suffers the Same Fatal Defects**

Defendants cannot prevail on their tortious interference claim for multiple reasons: (1) the information allegedly provided by GPS was both justified and truthful; (2) Defendants lack any

evidence to support lost business as a result of GPS's alleged conduct; and, (3) Defendants' claim is barred by the two-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code § 16.003(a). For the reasons set forth above, Defendants' Application fails to demonstrate any cognizable entitlement to relief—let alone the required showing of a likelihood of success on the merits—and Defendants' request for injunctive relief must be denied. *See Morrison v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 28468 at *7-8 (S.D. Tex. 2019) (mem. and rec. adopted, 2019 U.S. Dist. LEXIS 28550, 2019 WL 859781) (recommending dismissal of request for injunctive relief where applicant failed to state a claim on her independent causes of action).

### D.    <u>Defendants Fail to Articulate Any Cognizable Threat of Irreparable Harm</u>

Despite their claim that injunctive relief is necessary to "restrain[] Plaintiff" to prevent "immediate and irreparable injury," *see* Dkt. 22, ¶ 29, Defendants do not specify any actual or threatened harm. A showing of the mere *possibility* of irreparable harm is not enough; the threat of irreparable harm must be *likely. See e.g.*, *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008). "An injury is 'irreparable' only if it cannot be undone through monetary remedies." *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981) (citations omitted). To be sure, Defendants contend they "already lost three speaking presentations." *See* Dkt. 22 ¶ 29. But these claims are wholly unsubstantiated and, even if true, would not provide the basis for injunctive relief. *See* Ex. 1 (Brinckman Decl.), ¶¶ 20-23. The speaking engagements referenced by Defendants are at best marketing efforts by Zaatari and D Zine and not business opportunities.

Even if taken at face value, courts have previously found that lost speaking engagements do not constitute irreparable harm. *See, e.g.*, *Cy Wakeman, Inc. v. Nicole Price Consulting, LLC*, 284 F. Supp. 3d 985, 994 (D. Neb. 2018) ( "even if such evidence [of lost speaking engagements] had been presented, there is no reason that the injury of lost customers or lost sales could not be

remediated with money damages.") (citations omitted). Nor could the imposition of a temporary restraining order cure Defendants' purported injuries that *already* occurred. *See Villas at Parkside Ptnrs v. City of Farmers Branch,* 2007 U.S. Dist. LEXIS 36918 at *10 (N.D. Tex. 2007) (citing *Granny Goose Foods, Inc. v. Bhd. Of Teamsters & Auto Truck Drivers,* 415 U.S. 423, 439 (1974)) ("The purpose of a temporary restraining order is to 'preserv[e] the status quo and prevent [] irreparable harm just so long as is necessary to hold a hearing, and no longer.'").

Mere speculation that "there will be more speaking presentations canceled and loss of credibility in Dr. Zaatari's profession and future consulting relationships" does not warrant injunctive relief. *See* Dkt. 22, ¶ 29. Not only are these "speaking presentations" unidentified, they have in fact continued following the filing of the Application. *See infra* at p. 16. The speculative nature of Defendants' alleged harm is acknowledged even in the Application itself, and is insufficient to justify the extraordinary relief sought by Defendants.

**E.**     **Defendants Have Not Established an Imminent Need for Injunctive Relief**

Defendants' counsel provided GPS a draft of Defendants' Application on May 18, 2021. While Defendants' Application stresses the necessity of "immediately restrain[ing] the Plaintiff," Defendants waited eight (8) days to file the Application. Dkt. No. 22, ¶ 29; *see Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975) (noting that irreparable harm requires a showing that the "harm to [the Applicant] is imminent"). This demonstrable delay undercuts any purported immediacy alleged by Defendants. Moreover, Defendants' own Application makes clear that they were on notice of alleged conduct or statements made by GPS (and others) as early as 2016. Dkt. No. 22, ¶ 11 *et seq*. And, a detailed review of Defendants' Appendix reveals that the *only* statements cited by Defendants from GPS since 2019 is a letter from GPS's counsel to ASHRAE that enclosed a copy of the Original Complaint and GPS's written response to the Open Letter. *See* Dkt. No. 23, App'x M at 155-258.

Further, notwithstanding the statements by GPS and other third-parties, Zaatari has maintained a prominent and ever-increasing presence through continued public engagements and industry conferences, including a presentation at a May 27, 2021 ASHRAE session—the day after the filing of the Application. *See* Ex. 1 (Brinckman Decl.), ¶¶ 20-22. In addition, Zaatari continues to promote additional upcoming speaking engagements, including a presentation on COVID-19 and Indoor Spaces for the Indian Society of Heating, Refrigerating and Air Conditioning Engineers (ISHRAE)[6]. *Id.* ¶ 23. Defendants' vague suggestion, without any evidence, that "there will be more speaking engagements canceled" does not amount to the imminent irreparable harm contemplated by Fed. R. Civ. P. 65. Dkt. No. 22, ¶ 29.

The evidence makes clear that Defendants failed to establish a substantial threat of any immediate, imminent and irreparable harm as required to secure injunctive relief. *See GoNannies, Inc. v. GoAuPair.com, Inc.*, 464 F. Supp. 2d 603, 609 (N.D. Tex. 2009) (denial of temporary relief for a motion filed six months after discovering the alleged conduct); *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming district court's denial of temporary injunctive relief where applicant delayed three months in making the request). Defendants' Application should therefore be denied in its entirety. *GTE Card Services, Inc. v. AT&T Corp.*, 1997 WL 74712 at *2, 1997 U.S. Dist. LEXIS 24768 (N.D. Tex. 1997) (Fitzwater, J.) ("In the Fifth Circuit, 'preliminary injunctions will be denied based on a failure to prove separately each of the four elements of the four prong test for obtaining the injunction.'") aff'd, 124 F.3d 191

---

[6]     Notably, and contrary to Zaatari's prior actions, Zaatari disclosed her position with enVerid as part of the recent ISHRAE engagement. In doing so, Zaatari implicitly acknowledged the truth of GPS's prior comments (and those of third parties) regarding Zaatari's conflict of interest in connection with ASHRAE.

17

(Table Decision)) (5th Cir. 1997) (quoting *Plains Cotton Coop. Ass'n of Lubbock, Tex. v. Goodpasture Computer Serv., Inc.*, 807 F.2d 1256, 1261 (5th Cir. 1987)).

### F.      Defendants' Application Lacks the Required Specificity

Defendants' Application further fails because it does not comply with the strict requirements promulgated by Federal Rule of Civil Procedure 65. *Monroe v. Hous. Indep. Sch. Dist.*, 794 F. App'x. 381, (5th Cir. Nov. 25, 2019) (noting that "the rules governing preliminary injunctions are strict," including the specificity requirements of Federal Rule of Civil Procedure 65). Defendants' vague and indefinite requests to bar GPS from "making defamatory or disparaging remarks" or "causing financial hardship," *see* Dkt. No. 22, ¶ 58, are so broad that granting this blanket relief would not allow GPS to determine the precise conduct enjoined, and would be difficult, if not impossible, for the Court to enforce. *See Texas v. E.E.O.C.*, 933 F.3d 433, 451 (5th Cir. 2019) ("[a]n injunction must simply be framed so that those enjoined will know what conduct the court has prohibited."); *see also, Scott v. Schedler*, 826 F.3d 207, 213–14 (5th Cir. 2016) (vacating permanent injunction as too vague because it referred generally to policies without identifying which policies were governed by injunction). Because Defendants' request for injunctive relief is impermissibly vague, the Application should be denied.

### IV.    CONCLUSION AND PRAYER

Defendants' Application fails to demonstrate an entitlement to the "extraordinary remedy" of injunctive relief. For the reasons set forth above, GPS respectfully requests that Defendants' Application be denied in its entirety.

Dated: June 4, 2021

Respectfully submitted,

**MCGUIREWOODS LLP**

*/s/ Justin Opitz*
Justin Opitz
Texas State Bar No. 24051140
Matthew W. Cornelia
Texas State Bar No. 24097534
Addison Fontein
Texas State Bar No. 24109876
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel:  (214) 932-6400
Fax:  (214) 932-6499
jopitz@mcguirewoods.com
mcornelia@mcguirewoods.com
afontein@mcguirewoods.com

Robert A. Muckenfuss (*pro hac vice*)
North Carolina State Bar No. 28218
Kelly A. Warlich (*pro hac vice*)
North Carolina State Bar No. 51053
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel: (704) 343-2000
Fax: (704) 343-2300
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com

Lucy Jewett Wheatley (*pro hac vice*)
Virginia State Bar No. 77459
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4320
Fax: (804) 698-2017
lwheatley@mcguirewoods.com

**ATTORNEYS FOR PLAINTIFF
GLOBAL PLASMA SOLUTIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was electronically filed on June 4, 2021, using the Court's CM/ECF system, which will send notice of such filing to all counsel of record who are deemed to have consented to electronic service.

<u>  /s/ Justin Opitz      </u>
Justin Opitz