**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., | |
| *Plaintiff*, | |
| v. | CIVIL ACTION NO. 3:21-CV-884-M |
| D ZINE PARTNERS, LLC and MARWA ZAATARI, | JURY TRIAL DEMANDED |
| *Defendants*. | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     LEGAL STANDARD .................................................................................................. 1

III.    ARGUMENT ............................................................................................................... 2

        A.      GPS Sufficiently Alleges a Claim for False Advertising Under the Lanham
                Act .................................................................................................................... 2

                1.      Rule 9(b)'s heightened pleading standard does not apply to GPS's
                        Lanham Act claim. ............................................................................... 2

                2.      GPS sufficiently alleges that Defendants' false statements were
                        made in commercial advertising. ......................................................... 3

        B.      GPS Sufficiently Alleges a Defamation Claim .............................................. 7

                1.      Defendants' statements are actionable statements of fact. ................... 7

                2.      Defendants' statements are reasonably understood as referring to
                        GPS. ....................................................................................................... 9

                3.      GPS alleges special damages even though Defendants' statements
                        are defamatory per se such that special damages are presumed. ......... 12

        C.      GPS Sufficiently Alleges a Business Disparagement Claim ......................... 14

                1.      The FAC identifies numerous false statements by Defendants. .......... 15

                2.      The FAC sets forth factual allegations stating Defendants acted
                        with malice. .......................................................................................... 15

                3.      Special damages are adequately alleged. .............................................. 16

        D.      GPS Sufficiently Alleges a Claim for Tortious Interference with
                Prospective Business ..................................................................................... 17

        E.      GPS Sufficiently Alleges a Claim for Unfair Competition ........................... 21

        F.      Defendants' Arguments as to the Sufficiency of the Evidence Regarding
                Damages Are Inappropriate on a Motion to Dismiss ..................................... 22

IV.     CONCLUSION .......................................................................................................... 23

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re A.H.*,
    414 S.W.3d 802 (Tex. App.—San Antonio 2013, no pet.)....................................................22

*Allied Mktg. Grp. v. Paramount Pictures Corp.*,
    111 S.W.3d 168 (Tex. App.—Eastland 2003, pet. denied) ...................................................9

*Batra v. Covenant Health Sys.*,
    562 S.W.3d 696 (Tex. App.—Amarillo 2018, pet. denied)....................................................7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................................................1

*Bentley v. Bunton*,
    94 S.W.3d 561 (Tex. 2002).........................................................................................8, 9, 16

*Berry v. Indianapolis Life Ins. Co.*,
    608 F. Supp. 2d 785 (N.D. Tex. 2009) ................................................................................1

*Butowsky v. Folkenflik*,
    2019 U.S. Dist. LEXIS 104297 (E.D. Tex. Apr. 17, 2019)...................................................9

*Campbell v. Clark*,
    471 S.W.3d 615 (Tex. App.—Dallas 2015, no pet.)...........................................................8

*Cooper v. Harvey*,
    2016 U.S. Dist. LEXIS 111162 (N.D. Tex. Aug. 21, 2016)............................................18, 19

*Corrosion Prevention Techs. LLC v. Hatle*,
    2020 U.S. Dist. LEXIS 196742 (S.D. Tex. Oct. 22, 2020)...................................................16

*Cullum v. White*,
    399 S.W.3d 173 (Tex. App.—San Antonio 2011, pet. denied) .............................................14

*Dallas Morning News, Inc. v. Tatum*,
    554 S.W.3d 614 (Tex. 2018)...............................................................................................13

*Decorative Ctr. of Houston v. Direct Response Publications, Inc.*,
    264 F. Supp. 2d 535 (S.D. Tex. 2003) .................................................................................21

*Dixie Elec. v. James Jarwin & MMR Constructors*,
    2018 U.S. Dist. LEXIS 237658 (W.D. Tex. Jan. 29, 2018)..................................................18

*DP Wagner Mfg. v. Pro Patch Sys.*,
    434 F. Supp. 2d 445 (S.D. Tex. 2006) ...................................................................22

*Dupart v. Roussell*,
    497 F. Supp. 3d 102 (E.D. La. 2020) ...................................................................5, 6

*Eastman Chem. Co. v. Plastipure, Inc. & Certichem, Inc.*,
    969 F. Supp. 2d 756 (W.D. Tex. 2013) ...................................................................4

*Encompass Office Sols., Inc. v. Ingenix, Inc.*,
    775 F. Supp. 2d 938 (E.D. Tex. 2011) ..................................................................16

*Energytec, Inc. v. Proctor*,
    516 F. Supp. 2d 660 (N.D. Tex. 2007) ...................................................................2

*Fringe Ins. Benefits, Inc. v. Beneco, Inc.*,
    2015 U.S. Dist. LEXIS 16989 (W.D. Tex. Feb. 11, 2015) ....................................22

*Gateway Logistics Grp., Inc. v. Dangerous Goods Mgmt. Austl. Pty, Ltd*,
    2008 U.S. Dist. LEXIS 34246 (S.D. Tex. Apr. 25, 2008) ................................13, 14

*Greater Houston Transp. Co. v. Uber Techs., Inc.*,
    155 F. Supp. 3d 670 (S.D. Tex. 2015) ...................................................2, 8, 21, 22

*Grubbs v. Sheakley Grp., Inc.*,
    807 F.3d 785 (6th Cir. 2015) ...................................................................................5

*Hancock v. Variyam*,
    400 S.W.3d 59 (Tex. 2013) ....................................................................................13

*Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*,
    193 F. Supp. 3d 556 (E.D. Va. 2016), *aff'd*, 700 F. App'x 251 (4th Cir. 2017)..................5, 6

*Harvest House Publishers v. Local Church*,
    190 S.W.3d 204 (Tex. App.—Houston 2006, pet. denied)....................................10

*Hellmuth, Obata & Kassabaum, L.P. v. Efficiency Energy, L.L.C.*,
    2016 U.S. Dist. LEXIS 19904 (S.D. Tex. Feb. 18, 2016) .......................................8

*Horizon Health Corp. v. Acadia Healthcare Co.*,
    520 S.W.3d 848 (Tex. 2017)...................................................................................23

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
    892 F.3d 719 (5th Cir. 2018) ...................................................................................1

*Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*,
    603 S.W.3d 409 (Tex. 2020).......................................................................12, 13, 16

*Klentzman v. Brady*,
456 S.W.3d 239 (Tex. App.—Houston 2014), *aff'd*, 515 S.W.3d 878 (2017) .........................9

*Kovac v. Wray*,
363 F. Supp. 3d 721 (N.D. Tex. 2019) .................................................................................2

*In re L.C.L.*,
599 S.W.3d 79 (Tex. App.—Houston [14th Dist.] 2020, pet. filed).......................................22

*Laughlin Prods. v. ETS, Inc.*,
257 F. Supp. 2d 863 (N.D. Tex. 2002) .................................................................................3

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*.
572 U.S. 118 (2014)...................................................................................................4, 5

*Loco Brands, LLC v. Butler Am., LLC*,
2019 U.S. Dist. LEXIS 90674 (E.D. Tex. Jan. 28, 2019).....................................................18

*Lormand v. US Unwired, Inc.*,
565 F.3d 228 (5th Cir. 2009) ............................................................................................1

*McGowan & Co. v. Bogan*,
93 F. Supp. 3d 624 (S.D. Tex. 2015) ................................................................................17

*MetroPCS v. Mohammed*,
2017 U.S. Dist. LEXIS 91447 (N.D. Tex. Apr. 24, 2017)....................................................23

*Milkovich v. Lorain Journal Co.*,
497 U.S. 1 (1990)...........................................................................................................8

*Nat'l Travel Sys., L.P. v. Shorts Travel Mgmt.*,
2010 U.S. Dist. LEXIS 154668 (W.D. Tex. Oct. 7, 2010) ...................................................19

*Natural Gas Pipeline Co. of Am. v. Justiss*,
397 S.W.3d 150 (Tex. 2012)...........................................................................................22

*Petty v. Portofino Council of Coowners, Inc.*,
702 F. Supp. 2d 721 (S.D. Tex. 2010) ........................................................................13, 17

*Retractable Techs., Inc. v. Becton, Dickinson & Co.*,
2014 U.S. Dist. LEXIS 177363 (E.D. Tex. Nov. 10, 2014) .................................................23

*Rimkus Consulting Grp., Inc. v. Cammarata*,
688 F. Supp. 2d 598 (S.D. Tex. 2010) ..............................................................................21

*Seven-Up Co. v. Coca-Cola Co.*,
86 F.3d 1379 (5th Cir. 1996) ............................................................................................5

*Shipp v. Malouf,*
    439 S.W.3d 432 (Tex. App.—Dallas 2014, pet. denied) ........................................................14

*Solar v. Panasonic Corp.,*
    2020 U.S. Dist. LEXIS 2022389 (W.D. Tex. Oct. 30, 2020) ......................................13, 16, 17

*Stubbs Collections, Inc. v. Davis,*
    2000 U.S. Dist. LEXIS 4719 (N.D. Tex. Apr. 14, 2000)..........................................................2, 3

*Taylor Publ'g Co. v. Jostens Inc.,*
    216 F.3d 465 (5th Cir. 2000) ...................................................................................................21

*Tempur-Pedic Int'l, Inc. v. Angel Beds LLC,*
    902 F. Supp. 2d 958 (S.D. Tex. 2012) .......................................................................................2

*U.S. Enercorp, Ltd. v. SDC Mont. Bakken Exploration, LLC,*
    966 F. Supp. 2d 690 (W.D. Tex. 2013)....................................................................................19

*Vendever LLC v. Intermatic Mfg.,*
    2011 U.S. Dist. LEXIS 105257 (N.D. Tex. Sept. 16, 2011)...........................................2, 19, 21

*Vice v. Kasprzak,*
    318 S.W.3d 1 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)......................................9, 10

*Wal-Mart Stores, Inc. v. Sturges,*
    52 S.W.3d 711 (Tex. 2001).......................................................................................................19

*Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.,*
    434 S.W.3d 142 (Tex. 2014).............................................................................................14, 15

**Statutes**

Lanham Act...................................................................................................................... *passim*

Texas Citizens Participation Act....................................................................................1, 15

15 U.S.C. § 1117(a) ...............................................................................................................23

Tex. Civ. Prac. & Rem. Code § 41.003(a) ...........................................................................23

**Other Authorities**

Rule 8(a)(2) .............................................................................................................................3

Rule 9(b) ..............................................................................................................................2, 3

Rule 12(b)(6)...........................................................................................................................1

Plaintiff Global Plasma Solutions, Inc. ("GPS") respectfully submits its Response in Opposition to Defendants D Zine Partners, LLC ("D Zine") and Marwa Zaatari's ("Zaatari") (collectively, "Defendants") second motion to dismiss (Dkt. No. 26).

## I.    INTRODUCTION

Defendants' motion amounts to a premature attack on the evidentiary support for GPS's claims in flagrant disregard of the notice pleading standard applicable at this early stage of the litigation.  Indeed, despite conceding that the Texas Citizens Participation Act ("TCPA") does not apply here, (Dkt. No. 26, at 1–2), Defendants filed a thirty-four page brief—well over the twenty-five page limit under the Local Rules—that is replete with arguments asserting GPS "failed to present clear and specific evidence" to support its claims.  As set forth more fully below, the First Amended Complaint ("FAC") contains detailed factual allegations that easily satisfy the liberal pleading standard set forth in *Twombly* and *Iqbal*.  Defendants' motion is without merit and should be denied.

## II.    LEGAL STANDARD

"Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quotation marks omitted).  "A 12(b)(6) motion to dismiss should be granted only if the complaint does not include 'enough facts to state a claim to relief that is plausible on its face.'"  *Berry v. Indianapolis Life Ins. Co.*, 608 F. Supp. 2d 785, 790 (N.D. Tex. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018).  "In reviewing a Rule 12(b)(6) motion, the court must accept all well-pleaded facts in

the complaint as true and view them in the light most favorable to the plaintiff." *Kovac v. Wray*, 363 F. Supp. 3d 721, 739 (N.D. Tex. 2019). "[T]he court cannot look beyond the pleadings," *Energytec, Inc. v. Proctor*, 516 F. Supp. 2d 660, 670 (N.D. Tex. 2007), or "resolve any disputed fact issues," *Greater Houston Transp. Co. v. Uber Techs., Inc.*, 155 F. Supp. 3d 670, 679 (S.D. Tex. 2015).

## III.   ARGUMENT

### A.   GPS Sufficiently Alleges a Claim for False Advertising Under the Lanham Act

#### 1.   Rule 9(b)'s heightened pleading standard does not apply to GPS's Lanham Act claim.

Defendants argue that the heightened pleading standard under Rule 9(b) applies to GPS's Lanham Act claim. (Dkt. No. 26, at 32.) Defendants' argument is without merit.

Rule 9(b) states that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts in the Fifth Circuit have consistently held that Rule 9(b) does not apply to claims under the Lanham Act. *Tempur-Pedic Int'l, Inc. v. Angel Beds LLC*, 902 F. Supp. 2d 958, 965 (S.D. Tex. 2012) (holding that Rule 9(b) did not apply to plaintiffs' Lanham Act claim for unfair competition); *Vendever LLC v. Intermatic Mfg.*, 2011 U.S. Dist. LEXIS 105257, at *12 (N.D. Tex. Sept. 16, 2011) (holding that Rule 9(b) did not apply to plaintiff's Lanham Act claim for false advertising); *Stubbs Collections, Inc. v. Davis*, 2000 U.S. Dist. LEXIS 4719, at *15 (N.D. Tex. Apr. 14, 2000) (holding that Rule 9(b) did not apply to plaintiff's Lanham Act claim for trademark infringement). Defendants do not cite a single case from within the Fifth Circuit in which a court applied Rule 9(b) to Lanham Act claims—in fact, Defendants expressly acknowledge that "District Courts in the 5th Circuit have in the past refused to apply Rule 9 to Lanham Act cases." (Dkt. No. 26, at 29 n.12.)

Accordingly, the heightened pleading standard under Rule 9(b) does not apply to GPS's Lanham

Act claim, and the FAC need only contain a "short and plain statement" of the claim.  *See Stubbs*

*Collections*, 2000 U.S. Dist. LEXIS 4719, at *15 ("Plaintiff's federal [Lanham Act] claims are

subject only to the notice requirements of Rule 8(a)(2), which means what it says—a 'short and

plain statement' is all that Plaintiff must provide.").

### 2.    GPS sufficiently alleges that Defendants' false statements were made in commercial advertising.

Defendants argue that GPS's false advertising claim should be dismissed because GPS

"failed to present a prima facie case on the element of 'commercial advertisement.'"  (Dkt. No.

26, at 11.)  Defendants ignore the allegations of the FAC, which set forth sufficient facts to support

that Defendants' false statements were made in commercial advertising.

To state a claim for false advertising under the Lanham Act, a plaintiff must allege: (1)

defendant made a false or misleading statement of fact about a product in commercial advertising

or promotion; (2) the statement actually deceived or had a tendency to deceive a substantial

segment of potential customers; (3) the deception was likely to influence a customer's purchasing

decision; (4) the defendant caused the false statement to enter interstate commerce; and (5) the

plaintiff has been or is likely to be injured as a result.  *Laughlin Prods. v. ETS, Inc.*, 257 F. Supp.

2d 863, 867 (N.D. Tex. 2002).  Defendants' arguments for dismissal of GPS's false advertising

claim is limited to only the first element—that Defendants made the false statements in commercial

advertising or promotion.  (Dkt. No. 26, at 9–12.)  Specifically, Defendants contend that to

constitute commercial advertising or promotion, the defendant must be in commercial competition

with the plaintiff and the statements must have been made for the purpose of influencing

consumers to buy defendant's goods or services.  (Dkt. No. 26, at 9.)  Defendants assert that the

FAC does not allege that Defendants are competitors of GPS and "there is no evidence" that

Defendants made the statements to influence consumers to buy their products.  (Dkt. No. 26, at 9–11.)

Even the most cursory review of the FAC demonstrates that Defendants' argument is not accurate.  The FAC is replete with allegations that Defendants are competitors of GPS and that Defendants made the false statements for the purpose of driving GPS's customers and potential customers away from GPS to instead hire Defendants and their corporate partners.  For example, the FAC alleges that D Zine "offers indoor air filtration consulting and design services" and is "a competitor to GPS," and Zaatari is a partner in and owner of D Zine.  (Dkt. No. 21, ¶ 8.)  The FAC also alleges that Zaatari is a competitor of GPS through her role as a paid consultant and member of the board of advisors for enVerid Systems, Inc. ("enVerid"), a company that offers air purification systems in direct competition with GPS.  (Dkt. No. 21, ¶¶ 7–9.)  That Defendants are in competition with GPS is further demonstrated by Zaatari's tweets in which she compares test results for a GPS product to HEPA air filters—the very products offered by D Zine and enVerid—proclaiming that "[i]n contrast" to GPS's product, "many in-room HEPA air cleaners available on the market are effective and cheap."  (Dkt. No. 21, ¶¶ 69–70; Dkt. No. 21-20); *see Eastman Chem. Co. v. Plastipure, Inc. & Certichem, Inc.*, 969 F. Supp. 2d 756, 760 (W.D. Tex. 2013) (stating that defendants' publication comparing test results for plaintiff's product to defendants' product supported direct competition between the parties).

Further, while the FAC sufficiently alleges that GPS and Defendants are in commercial competition, dismissal would not be appropriate based on a purported failure to allege that the parties compete with one another because the Supreme Court eliminated the commercial competition requirement in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*.  572 U.S. 118 (2014).

4

In *Lexmark*, the Court rejected a categorical rule that only allowed false advertising suits by direct competitors. *Id.* at 136.  Before *Lexmark*, the Fifth Circuit held that to constitute advertising or promotion, the statements must be (1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) disseminated sufficiently to the relevant purchasing public to constitute advertising or promotion within that industry.  *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1384 (5th Cir. 1996).  Most courts that have addressed the commercial competition requirement of commercial advertising or promotion in light of *Lexmark* have concluded that *Lexmark* eliminated that requirement.  *Dupart v. Roussell*, 497 F. Supp. 3d 102, 115 (E.D. La. 2020) ("Like the majority of courts to consider this question after *Lexmark*, the Court finds that *Lexmark* eliminated the 'commercial competition' requirement in the 'commercial advertising or promotion' analysis."); *Handsome Brook Farm, LLC v. Humane Farm Animal Care, Inc.*, 193 F. Supp. 3d 556, 570 (E.D. Va. 2016) (declining to adopt the commercial competition requirement of commercial advertising or promotion), *aff'd*, 700 F. App'x 251, 257 (4th Cir. 2017) ("[W]e also do not require a competitive relationship when determining whether a communication is advertising or promotion."); *see also Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 801 (6th Cir. 2015) (declining to adopt the commercial competition requirement of commercial advertising or promotion).  In so concluding, courts have reasoned that, as the Court in *Lexmark* noted, the statute's text does not require a competitive relationship.  *Dupart*, 497 F. Supp. 3d at 115 ("[T]he *Lexmark* court observed that nothing in the statute's text required a competitive relationship between plaintiffs and defendants."); *Handsome Brook Farm*, 700 F. App'x at 257 (noting "the lack of a competition requirement in the statute's false advertising prohibition"); *Grubbs*, 807 F.3d at 801 (declining to adopt the commercial competition requirement "because the statute nowhere

requires such a showing").  In addition, "it would be inconsistent with *Lexmark*'s holding to say that a class of plaintiffs—those who are not in competition with defendants—may bring suit for false advertising, yet those same plaintiffs could never prevail on their claims."  *Dupart*, 497 F. Supp. 3d at 116; *Handsome Brook Farm*, 193 F. Supp. 3d at 570 ("[I]t would be a perplexing decision by the Supreme Court to conclude that indirect competitors had standing to bring a Lanham Act claim, but those plaintiffs' claims would necessarily fail on the merits due to lack of direct competition.").

Accordingly, while GPS maintains that the FAC sufficiently alleges that GPS and Defendants are in commercial competition, such allegations are not required to allege commercial advertising or promotion and, thus, any deficiency regarding the same is not a proper basis for dismissal.

Turning to Defendants' final argument for dismissal of the false advertising claim, Defendants' contention that there is "no evidence" that Defendants made the false statements to influence customers to purchase Defendants' goods and services not only imposes on GPS an evidentiary burden that is not applicable at the motion to dismiss stage, but also ignores the factual allegations of and exhibits to the FAC.  The FAC contains several allegations that Defendants made the false statements to steer customers away from purchasing GPS's products to instead purchase goods and services from Defendants and their corporate partners.  (Dkt. No. 21, ¶ 36 (alleging that Defendants made false statements about GPS and its products "to encourage the public, the industry, and GPS's current and prospective customers to not use technology utilized by GPS products, and instead hire D Zine to perform consulting services that, among other things, assess, design, and implement indoor air quality solutions that compete with GPS and GPS's products and services" and "to purchase products from enVerid"); *see also* ¶¶ 38, 43, 51, 74, 85.)

In addition, Zaatari's tweets comparing test results for a GPS product to HEPA air filters—products sold by D Zine and enVerid—and asserting that HEPA air filters are effective and cheap "[i]n contrast to" GPS's product further support that Defendants made the false statements to influence customers to buy Defendants' and their corporate partners' goods and services. (Dkt. No. 21, ¶¶ 69–70; Dkt. No. 21-20.)

Accordingly, the FAC alleges sufficient facts to plead that Defendants made false statements in commercial advertising or promotion, and Defendants' motion to dismiss as to that claim must be denied.[1]

### B.   GPS Sufficiently Alleges a Defamation Claim

A defamation claim requires that the defendant "(1) published a false statement of fact to a third party, (2) that defamed the plaintiff, (3) with the requisite degree of fault, and (4) the statement caused damages, unless the statements were defamatory per se." *Batra v. Covenant Health Sys.*, 562 S.W.3d 696, 710 (Tex. App.—Amarillo 2018, pet. denied). Defendants' arguments for dismissal of GPS's defamation claim concern the first, second, and fourth elements. The FAC alleges sufficient facts to state a defamation claim, and Defendants' motion must be denied.

### 1.   Defendants' statements are actionable statements of fact.

Defendants first argue that GPS does not allege that Defendants made a false statement of fact, asserting that Defendants' statements are opinion. (Dkt. No. 26, at 14–15.) Defendants' argument is baseless.

---

[1] In the conclusion section of their brief, Defendants make a conclusory argument that the FAC does not allege harm flowing from Defendants' false advertising. (Dkt. No. 26, at 29–30.) Defendants' argument is not accurate. The FAC alleges economic injury in the form of cancelled contracts and lost sales as a result of Defendants' false advertising. (Dkt. No. 21, ¶¶ 79–80, 82; Dkt. No. 21-7.)

"A statement must assert an objectively verifiable fact, rather than an opinion, to be actionable." *Campbell v. Clark*, 471 S.W.3d 615, 625 (Tex. App.—Dallas 2015, no pet.). "However, the law does not impose an 'artificial dichotomy' between 'fact' and 'opinion.'" *Hellmuth, Obata & Kassabaum, L.P. v. Efficiency Energy, L.L.C.*, 2016 U.S. Dist. LEXIS 19904, at *5 (S.D. Tex. Feb. 18, 2016) (quoting *Bentley v. Bunton*, 94 S.W.3d 561, 579–81 (Tex. 2002)). Instead, courts "classify a statement as fact or opinion based on the verifiability of the statement and the entire context in which the statement is made." *Campbell*, 471 S.W.3d at 625. Thus, "an opinion, like any other statement, can be actionable in defamation if it expressly or impliedly asserts facts that can be objectively verified." *Id.* As the Supreme Court illuminated, "[i]f a speaker says, 'In my opinion John Jones is a liar,' he implies a knowledge of facts which lead to the conclusion that Jones told an untruth. . . . Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.'" *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990). Courts are to determine whether a publication asserts an actionable statement of fact based on "a reasonable person's perception of the entirety of a publication and not merely on individual statements." *Bentley*, 94 S.W.3d at 579.

Here, Defendants' statements assert facts that can be objectively verified and, therefore, are actionable statements of fact. Defendants' statements assert that GPS's products are unsafe, as dangerous as cigarettes, "do nothing," and in fact "exacerbate asthma and harm developing lungs." (Dkt. No. 21, ¶¶ 41–42, 48, 50, 65–66, 68, 72–73; Dkt. Nos. 21-3, 21-7, 21-8, 21-13, 21-14, 21-15, 21-16, 21-17, 21-21, 21-22.) "[S]tatements as to the comparative safety of a product are specific and measurable, and thus frequently considered actionable." *Greater Houston Transp.*, 155 F. Supp. 3d at 694. Defendants' statements further assert that GPS knowingly

misrepresents the safety and effectiveness of its products, which can be proven false.  (Dkt. No. 21, ¶¶ 41, 48, 50, 65–66, 68, 72–73; Dkt. Nos. 21-7, 21-13, 21-14, 21-15, 21-16, 21-17, 21-21, 21-22.)  The context of the statements likewise supports the allegation that Defendants intended to assert objective facts as Defendants referred to data and articles in connection with their false statements regarding the safety and effectiveness of GPS's products.  *Bentley*, 94 S.W.3d at 583–85 (holding that defendant's statement that plaintiff was "corrupt" was asserted as a matter of verifiable fact where defendant insisted it was supported by evidence and objective facts); *Butowsky v. Folkenflik*, 2019 U.S. Dist. LEXIS 104297, at *109 (E.D. Tex. Apr. 17, 2019) (holding that plaintiff sufficiently alleged that defendant's statements were actionable statements of fact where defendant "provided purported 'verifiable facts' to support the statements"), *adopted by* 2019 U.S. Dist. LEXIS 132268 (E.D. Tex. Aug. 7, 2019).

Accordingly, GPS's allegations are sufficient to plead that Defendants made actionable statements of fact and, therefore, GPS sufficiently alleges the first element of its defamation claim.

### 2.    Defendants' statements are reasonably understood as referring to GPS.

Defendants also argue that Defendants' statements do not specifically refer to GPS.  (Dkt. No. 26, at 14–15.)  Defendants' argument ignores Defendants' explicit statements about GPS, and otherwise fails to recognize that a statement need not specifically name GPS in order to support a defamation claim.

"To maintain a defamation action, a plaintiff must be referenced in the complained-of statement."  *Vice v. Kasprzak*, 318 S.W.3d 1, 13 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  However, "[i]t is not necessary that the plaintiff be specifically named in the communication to be defamatory."  *Klentzman v. Brady*, 456 S.W.3d 239, 254 (Tex. App.—Houston 2014), *aff'd*, 515 S.W.3d 878 (2017).  In addition, the plaintiff "is not required to prove that the defendant intended to refer to it."  *Allied Mktg. Grp. v. Paramount Pictures Corp.*, 111

S.W.3d 168, 175 (Tex. App.—Eastland 2003, pet. denied). "A publication is 'of and concerning the plaintiff' if persons who knew and were acquainted with him understood from viewing the publication that the defamatory matter referred to him." *Vice*, 318 S.W.3d at 13.

Here, even Defendants' statements that do not specifically reference GPS are reasonably understood as referring to GPS. While Defendants do not specifically name GPS in all of their statements, Defendants specifically name GPS or GPS's product in several statements and do not specifically name any other manufacturer of ionizers, thus leading those in the industry to reasonably understand Defendants' statements as referring to GPS even when GPS is not specifically named in a particular statement. *See Harvest House Publishers v. Local Church*, 190 S.W.3d 204, 213 (Tex. App.—Houston 2006, pet. denied) ("The publication need not make direct reference to the plaintiff individually; reference may be indirect, and it is not necessary that every listener understand it, so long as there are some who reasonably do so."). For example, Zaatari published a twitter thread on March 9, 2021 specifically referring to "Needle Point Bi-polar Ionization"—that is, GPS's revolutionary and patented NPBI™ technology. (Dkt. No. 21, ¶¶ 21–23, 48; Dkt. No. 21-7.) In one of the tweets in the thread, Zaatari specifically referred to GPS and included a link to a study from Science Direct that tested a GPS bipolar ionization device. (Dkt. No. 21, ¶ 50; Dkt. Nos. 21-7, 21-8.) The study did not test any other ionization devices. (*See* Dkt. No. 21-8.) On April 30, 2021, Zaatari published a tweet stating "Stop the ionization" and "oxidation" and included a link to an article published on KCUR.org in which Zaatari made false statements about bipolar ionizers and manufacturers of ionization devices. (Dkt. No. 21, ¶ 65; Dkt. Nos. 21-13, 21-14.) Zaatari's false statements in the article were plainly directed at GPS— the article includes a link to the Science Direct study that only tested a GPS bipolar ionization device, stating that Zaatari was the one who raised the funds to have "the devices" tested, leading

those in the industry to reasonably understand Zaatari's statements in her tweet and the article as referring to GPS and GPS's bipolar ionization devices.  (Dkt. No. 21-14 ("Zaatari also raised funds to have the Illinois Institute of Technology start testing the devices, which make dramatic and unproven claims about eliminating nearly 100% of COVID-19 virus from the air through chemical reactions with no health risks.").)

In addition, a mere four days later, Zaatari published a tweet claiming an "investigative article" originally published by Kaiser Health News and republished by CNN "shows how the claims by manufacturers are overblown and who is making the $$$$$ by riding on the back of our children."  (Dkt. No. 21, ¶ 66; Dkt. Nos. 21-15, 21-16.)  Zaatari's tweet included a link to the article, which specifically refers to GPS and its products and quotes Zaatari's false statements about GPS and its products—thus supporting that Zaatari's assertions in her tweet were directed at GPS.  (Dkt. No. 21-16 ("Last summer, Global Plasma Solutions wanted to test whether the company's air-purifying devices could kill Covid-19 virus particles, but could find only a lab using a chamber the size of a shoebox for its trials. . . .  But the company's shoebox study and inflated ion blast numbers that helped sell the product last year leave a potential customer with little sense of how the device would perform in a classroom, Zaatari said.  'It's a high cost for nothing,' Zaatari said.").)

Zaatari published another tweet that same day that included a link to the same article republished by CNN and stated "[t]aking the word from manufacturers and ignoring the science 'is like only listening to advice from Philip Morris as to whether smoking is safe or not.'"  (Dkt. No. 21, ¶ 68; Dkt. No. 21-17.)  Zaatari's tweet was quoting a statement by Melanie Robbins, a parent whose children attend school in a district that installed GPS's products, that was quoted in the article: "'As far as I understand, the district has relied only on information from GPS, the

11

manufacturer,' Robbins said during a Montclair Board of Education Meeting via Zoom on April 19. 'This is like only listening to advice from Philip Morris as to whether smoking is safe or not.'" (Dkt. No. 21-16.) Zaatari's tweet repeating the same is thus plainly directed at GPS. That fact is further demonstrated by Zaatari's tweet nine days later claiming that "installing ionizers, ozone generators, and oxidizers" to solve "[p]oor ventilation in aging schools" will "exacerbate the problem." (Dkt. No. 21, ¶ 72; Dkt. Nos. 21-21, 21-22.) Zaatari's tweet included a link to an NBC News article in which GPS is the only manufacturer of ionizers specifically named and extensively quotes Zaatari regarding ionizers and ionizer manufacturers. (Dkt. No. 21, ¶¶ 72–73; Dkt. Nos. 21-21, 21-22.) Thus, Zaatari's statements in the article and her tweet are reasonably understood as referring to GPS.

Therefore, GPS sufficiently alleges that Defendants' statements are reasonably understood as referring to GPS.

### 3. GPS alleges special damages even though Defendants' statements are defamatory per se such that special damages are presumed.

Defendants also argue that GPS fails to allege special damages. (Dkt. No. 26, at 16–17.) Defendants' argument must be rejected.

As an initial matter, GPS adequately alleges special damages. Special damages "are for economic injuries and consist of the actual pecuniary losses that flow directly from the defamation." *Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 425 (Tex. 2020). GPS alleges that as a result of Defendants' false statements, the Newark Unified School District ceased using hundreds of GPS's NPBI™ devices valued at over $350,000. (Dkt. No. 21, ¶ 80; Dkt. No. 21-23.) GPS further alleges that other existing and prospective customers have ceased doing business with GPS as a direct result of Defendants' false and misleading statements. (Dkt. No. 21, ¶¶ 79, 82.) Such allegations are sufficient to plead special damages.

*See Petty v. Portofino Council of Coowners, Inc.*, 702 F. Supp. 2d 721, 733–34 (S.D. Tex. 2010) (concluding plaintiffs' allegation that defendant's false statements resulted in a "potential buyer" repudiating the sale contract was sufficient to plead special damages); *Solar v. Panasonic Corp.*, 2020 U.S. Dist. LEXIS 2022389, at *15 (W.D. Tex. Oct. 30, 2020) (concluding plaintiff sufficiently pled special damages where plaintiff alleged that "prospective purchasers" declined to purchase plaintiff's products because they were informed that the products were not covered by a warranty).

Notwithstanding that the FAC pleads special damages, Defendants' statements are defamatory per se and, thus, GPS need not plead special damages. "Texas recognizes the common-law rule that defamation is either per se or per quod." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018). "A statement is defamatory per se when it falls within one of the categories that the common law considers so obviously harmful to reputation that the jury may presume the existence of general damages." *Innovative Block*, 603 S.W.3d at 418. "Defamation per quod is defamation that is not actionable per se." *Hancock v. Variyam*, 400 S.W.3d 59, 64 (Tex. 2013). "Defamation per quod is actionable on allegations and proof of special damages." *Innovative Block*, 603 S.W.3d at 418. Conversely, "[w]hen defamation is per se, the communication is actionable in and of itself without proof of actual damages." *Id.* "Thus, if the alleged statements have been classified as defamatory per se, general damages are presumed without requiring specific evidence of harm to the plaintiff's reputation thereby entitling the plaintiff to recover, at a minimum, nominal damages." *Gateway Logistics Grp., Inc. v. Dangerous Goods Mgmt. Austl. Pty, Ltd*, 2008 U.S. Dist. LEXIS 34246, at *23 (S.D. Tex. Apr. 25, 2008). "A statement that injures a person in her office, profession, or occupation is typically classified as defamatory per se." *Hancock*, 400 S.W.3d at 64.

Here, Defendants' defamatory statements injured GPS in its profession and business and, accordingly, the statements are defamatory per se. Defendants made false statements that GPS's products are unsafe and ineffective and GPS knowingly misrepresents the safety and efficacy of its products. Defendants statements thus charge GPS with dishonesty in its business and selling a product that it knows to be unsafe and, thus, constitute defamation per se. *Gateway*, 2008 U.S. Dist. LEXIS 34246, at \*25 (holding defendant's statements that plaintiff "acted with reckless disregard for the welfare of its client" and "intentionally lied to its client" are "defamatory per se because such statements would tend to injure [plaintiff] in its business"); *Shipp v. Malouf*, 439 S.W.3d 432, 440 (Tex. App.—Dallas 2014, pet. denied) (stating that a statement questioning the "honesty of a merchant in business is actionable per se"); *Cullum v. White*, 399 S.W.3d 173, 182–83 (Tex. App.—San Antonio 2011, pet. denied) (stating that statements accusing plaintiff of engaging in unethical business practices impeached plaintiff's honesty, integrity, and ethics in her business and constituted defamation per se).

As Defendants' statements are defamatory per se, GPS need not plead or prove special damages. Therefore, the FAC states a defamation claim, and the Court must deny Defendants' motion as to that claim.

C.    **GPS Sufficiently Alleges a Business Disparagement Claim**

A business disparagement claim requires that "(1) the defendant published false and disparaging information about [plaintiff], (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014). Defendants argue that GPS "has not established" that Defendants' statements are false, GPS has not come forward with "clear and specific evidence" that Defendants acted with malice, and GPS failed to plead special damages. (Dkt. No. 26, at 21–22.)

14

      1.      **The FAC identifies numerous false statements by Defendants.**

GPS sufficiently alleges that Defendants' disparaging statements are false, which is all that is required at the motion to dismiss stage.  For example, GPS alleges that Zaatari's statements that "there is no safe [ioniser]" and products like GPS's NPBI™ air purification systems "may cause serious diseases" are false and, thus, that Zaatari's statements that GPS misrepresents the same are likewise false.  (Dkt. No. 21, ¶ 41.)  In addition, GPS alleges that Zaatari's statements that GPS's products "do nothing" and are "gimmicks" are false.  (Dkt. No. 21, ¶¶ 65–66, 72–73; Dkt. No. 21-14; Dkt. No. 21-16; Dkt. No. 21-22.)   As another example, GPS alleges that Zaatari falsely stated that "schools are buying devices that could emit ozone at levels above the limit recommended by [ASHRAE]."  (Dkt. No. 21, ¶ 73; Dkt. No. 21-22.)  GPS alleges that its NPBI™ product achieved the UL 2998 zero ozone emissions certification and, therefore, Zaatari's statement regarding ozone emission is demonstrably false.  (Dkt. No. 21, ¶ 74.)  Accordingly, GPS sufficiently alleges that Defendants' disparaging statements are false.

      2.      **The FAC sets forth factual allegations stating Defendants acted with malice.**

Defendants' argument that GPS has not come forward with "clear and specific evidence" that Defendants acted with malice is inapposite as Defendants expressly concede that the TCPA does not apply to this action.  (Dkt. No. 26, at 1–2.)  As the TCPA does not apply, neither does the clear and specific evidence standard.  Nevertheless, even construing Defendants' argument as contending that GPS's allegations are insufficient to plead malice, Defendants' argument fails.

"A statement is published with actual malice if it is made with 'knowledge of, or reckless disregard for, the falsity' of the statement."  *Waste Mgmt.*, 434 S.W.3d at 157.  Here, GPS expressly alleges that Zaatari  knows GPS's products are safe, (Dkt. No. 21, ¶ 45), but nonetheless has published false statements that GPS's products are not safe.  In addition, GPS alleges that

15

Defendants purposefully avoid the truth by refusing to consult sources that can objectively verify the truth of their statements.  (Dkt. No. 21, ¶ 96.)  These allegations are sufficient to allege that Defendants' statements were made with actual malice.  *Solar*, 2020 U.S. Dist. LEXIS 2022389, at *13 (holding plaintiff sufficiently alleged the malice element of its business disparagement claim where plaintiff alleged that defendant had actual knowledge that plaintiff's products were covered by a warranty "but nonetheless made statements creating a false impression that [plaintiff] was selling them without a warranty"); *Corrosion Prevention Techs. LLC v. Hatle*, 2020 U.S. Dist. LEXIS 196742, at *14 (S.D. Tex. Oct. 22, 2020) (stating that "[i]n a business disparagement case, a plaintiff can plead malice by alleging facts that the defendant knew its statements were false or acted with reckless disregard for their falsity" (quotations omitted)); *Bentley*, 94 S.W.3d at 596 (stating that "a purposeful avoidance of the truth" is evidence of actual malice).

### 3.    Special damages are adequately alleged.

Last, as discussed above, GPS sufficiently alleges special damages.  Special damages are synonymous with economic damages and consist of actual pecuniary losses attributable to the defendant's disparaging communications.  *Innovative*, 603 S.W.3d at 425; *see also Encompass Office Sols., Inc. v. Ingenix, Inc.*, 775 F. Supp. 2d 938, 959 (E.D. Tex. 2011) (stating that special damages require "that the disparaging communication played a substantial part in inducing third parties not to deal with the plaintiff, resulting in a direct pecuniary loss that has been realized or liquidated, such as specific lost sales, loss of trade, or loss of other dealings").  GPS alleges that as a result of Defendants' false statements, the Newark Unified School District ceased using hundreds of GPS's NPBI™ devices valued at over $350,000.  (Dkt. No. 21, ¶ 80; Dkt. No. 21-23.)  GPS further alleges that other existing and prospective customers have ceased doing business with GPS as a direct result of Defendants' false and misleading statements.  (Dkt. No. 21, ¶¶ 79, 82.)  In addition, in reply to Zaatari's March 9, 2021 Twitter thread devoted to GPS's NPBI™

16

technology,  Erin Downes VMD stated: "Thanks again for helping me be comfortable with my decision not to install NPBI technology in my veterinary hospital!!"  (Dkt. No. 21-7.)  Construed in the light most favorable to GPS, as it must be, Downes' statement further supports that GPS incurred special damages as a result of Defendants' disparaging statements.  GPS's allegations are sufficient to plead special damages.  *See Petty*, 702 F. Supp. 2d at 733 (concluding plaintiffs' allegation that defendant's false statements resulted in a "potential buyer" repudiating the sale contract was sufficient to plead special damages); *Solar*, 2020 U.S. Dist. LEXIS 2022389, at *15 (concluding plaintiff's allegation that "prospective purchasers" declined to purchase plaintiff's products because they were informed that the products were not covered by a warranty was sufficient to plead special damages).

Therefore, GPS sufficiently alleges a business disparagement claim, and Defendants' motion as to that claim must be denied.

**D.      GPS Sufficiently Alleges a Claim for Tortious Interference with Prospective Business**

To state a claim for tortious interference with prospective business, a plaintiff must allege:

(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result."

*McGowan & Co. v. Bogan*, 93 F. Supp. 3d 624, 655 (S.D. Tex. 2015).

Defendants argue that the "evidence presented" in the FAC "does not clearly and specifically establish which referrals or customers [GPS] has lost due to" Defendants' false statements.  (Dkt. No. 26, at 23.)  Again, Defendants' argument is irrelevant as GPS need not come

forward with any evidence to survive a motion to dismiss.  GPS's allegations are sufficient to allege a reasonable probability of prospective business.

As set forth above, one individual expressly stated that Zaatari's statements caused her not to purchase devices using GPS's NPBI™ technology, indicating that there was a reasonable probability of her doing so before Zaatari's interference.  (Dkt. No. 21-7.)  In addition, "[a] tortious interference with prospective business relations claim can include interference with continuing business relationships."  *Dixie Elec. v. James Jarwin & MMR Constructors*, 2018 U.S. Dist. LEXIS 237658, at *15 (W.D. Tex. Jan. 29, 2018) (quotation marks omitted).  Moreover, "a pre-existing business relationship can suffice to show a reasonable probability of prospective contractual relations."  *Cooper v. Harvey*, 2016 U.S. Dist. LEXIS 111162, at *34 (N.D. Tex. Aug. 21, 2016).  Here, GPS alleges that as a result of Defendants' defamatory and disparaging statements, the Newark Unified School District ceased using hundreds of GPS's NPBI™ devices valued at over $350,000.  (Dkt. No. 21, ¶ 80; Dkt. No. 21-23.)  GPS further alleges that other existing and prospective customers have ceased doing business with GPS as a direct result of Defendants' false and misleading statements.  (Dkt. No. 21, ¶¶ 79, 82.)  Those allegations are sufficient to plead there was a reasonable probability that GPS would have entered into a business relationship with a third party.  *Dixie Elec.*, 2018 U.S. Dist. LEXIS 237658, at *15 (holding plaintiff's allegations that defendants interfered with plaintiff's relationships with "customers" and "employees" indicate "a pre-existing relationship with a business" and "by using such terms throughout its complaint, [plaintiff] has sufficiently established the reasonable probability of a continuing business relationship with its employees and then-existing customers" to state a claim for tortious interference with prospective business); *Loco Brands, LLC v. Butler Am., LLC*, 2019 U.S. Dist. LEXIS 90674, at *28–29 (E.D. Tex. Jan. 28, 2019) (holding plaintiff's allegation that it

had an existing business relationship with its technicians was sufficient to plead a reasonable probability of a prospective business relationship to state a claim for tortious interference with prospective business).

Defendants next argue that GPS "did not plead that Defendants committed an independently tortious act." (Dkt. No. 26, at 23.) Defendants are simply incorrect. A claim for tortious interference with prospective business requires "that the defendant's conduct was independently tortious or wrongful." *U.S. Enercorp, Ltd. v. SDC Mont. Bakken Exploration, LLC*, 966 F. Supp. 2d 690, 704 (W.D. Tex. 2013). "By independently tortious we do not mean that the plaintiff must be able to prove an independent tort. Rather, we mean only that the plaintiff must prove that the defendant's conduct would be actionable under a recognized tort." *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001).

False advertising, business disparagement, and defamation are independently tortious acts, any one of which is sufficient to support a claim for tortious interference with prospective business. *Vendever LLC v. Intermatic Mfg.*, 2011 U.S. Dist. LEXIS 105257, at *18–19 (N.D. Tex. Sept. 16, 2011) (holding that plaintiff sufficiently alleged that defendant committed an independently tortious act where plaintiff sufficiently pled claims for false advertising and business disparagement); *Cooper*, 2016 U.S. Dist. LEXIS 111162, at *47 ("[Plaintiff] has stated an actionable defamation claim, and, in turn, pointed to the sort of independently tortious conduct necessary to establish tortious interference with business relations."); *Nat'l Travel Sys., L.P. v. Shorts Travel Mgmt.*, 2010 U.S. Dist. LEXIS 154668, at *20 (W.D. Tex. Oct. 7, 2010) (recognizing that "a Lanham Act claim satisfied the 'independently tortious or unlawful conduct' requirement of a tortious interference claim"). As set forth above, GPS sufficiently alleges claims for false

advertising, business disparagement, and defamation and, therefore, sufficiently alleges Defendants engaged in independently tortious acts.

Last, Defendants argue that GPS "failed to produce clear and specific evidence of the required element that Defendants acted with a conscious desire to prevent a business relationship from occurring or that Defendants knew that any interference with a business relationship was certain to occur." (Dkt. No. 26, at 24.) Even construing Defendants' argument as asserting that GPS's allegations are insufficient, Defendants' argument lacks merit.

GPS alleges that "Defendants had actual knowledge of GPS's existing and prospective contracts, agreements and business relations with potential customers, and knew and/or intended that their misstatements would interfere with these relationships." (Dkt. No. 21, ¶ 81.) Further, as set forth above with respect to GPS's false advertising claim, the FAC contains several allegations that Defendants made false statements to steer customers away from purchasing GPS's products to instead purchase goods and services from Defendants and their corporate partners. (Dkt. No. 21, ¶ 36 (alleging that Defendants made false statements about GPS and its products "to encourage the public, the industry, and GPS's current and prospective customers to not use technology utilized by GPS products, and instead hire D Zine to perform consulting services that, among other things, assess, design, and implement indoor air quality solutions that compete with GPS and GPS's products and services" and "to purchase products from enVerid"); *see also* ¶¶ 38, 43, 51, 74, 85.) In addition, Zaatari's Open Letter "appeal[ing] to school district facility managers and administration leadership . . . to recognize the unproven nature of many electronic air cleaning devices," and specifically those using GPS's NPBI™ technology, further supports that Defendants acted with a conscious desire to prevent relationships between GPS and school districts—such as the Newark Unified School District—from occurring. (Dkt. No. 21-11.)

20

Therefore, the allegations of the FAC are sufficient to plead that Defendants acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result Defendants' conduct.  Defendants' motion to dismiss GPS's claim for tortious interference with prospective business must be denied.

### E.   GPS Sufficiently Alleges a Claim for Unfair Competition

Defendants seem to contend that an unfair competition claim under Texas law is limited to claims predicated on passing off, misappropriation of trade secrets, and common law misappropriation.  (Dkt. No. 26, at 24–25.)  Defendants' argument is contrary to well-established Texas law.

"Unfair competition under Texas law is the umbrella for all statutory and nonstatutory causes of action arising out of business conduct which is contrary to honest practice in industrial or commercial matters."  *Taylor Publ'g Co. v. Jostens Inc.*, 216 F.3d 465, 486 (5th Cir. 2000) (quotation marks omitted).  A claim for unfair competition merely requires "that the defendants engaged in an illegal act that interfered with the plaintiff's ability to conduct its business."  *Rimkus Consulting Grp., Inc. v. Cammarata*, 688 F. Supp. 2d 598, 676 (S.D. Tex. 2010).  Independent torts constitute illegal acts for purposes of an unfair competition claim.  *Decorative Ctr. of Houston v. Direct Response Publications, Inc.*, 264 F. Supp. 2d 535, 557 (S.D. Tex. 2003) ("Although the illegal act need not necessarily violate criminal law, it must at least be an independent tort."); *Greater Houston Transp.*, 155 F. Supp. 3d at 679 ("Liability for unfair competition must be premised on some independent substantive tort or other illegal conduct." (quotation marks omitted)).

As set forth above, GPS sufficiently alleges claims for false advertising, business disparagement, defamation, and tortious interference, any one of which constitutes an independent tort on which a claim for unfair competition may be premised.  *Vendever*, 2011 U.S. Dist. LEXIS

105257, at *20 (holding that plaintiff sufficiently alleged an independent tort to state an unfair competition claim where plaintiff stated claims for false advertising, business disparagement, and tortious interference with prospective business); *Greater Houston Transp.*, 155 F. Supp. 3d at 697 (holding that plaintiff sufficiently allegedly an independent tort to state an unfair competition claim where plaintiff stated a claim for false advertising); *DP Wagner Mfg. v. Pro Patch Sys.*, 434 F. Supp. 2d 445, 462 (S.D. Tex. 2006) (same); *Fringe Ins. Benefits, Inc. v. Beneco, Inc.*, 2015 U.S. Dist. LEXIS 16989, at *18–19 (W.D. Tex. Feb. 11, 2015) (holding that defendant's false advertising in violation of the Lanham Act constitutes an independent tort for purposes of an unfair competition claim under Texas law and finding defendant liable therefor).

Accordingly, GPS sufficiently alleges a claim for unfair competition, and Defendants' motion as to that claim must be denied.

### F.    Defendants' Arguments as to the Sufficiency of the Evidence Regarding Damages Are Inappropriate on a Motion to Dismiss

With regard to no claim in particular, Defendants argue that "[c]onclusory testimony is not evidence" and "reasonably certain evidence of lost profits based on objective facts, figures, or data" is required to support an award of lost profits. (Dkt. No. 26, at 26.)  Defendants assert that those objective facts, figures, and data are "missing" from the FAC, which according to Defendants renders the FAC deficient. (Dkt. No. 26, at 26.)  Defendants' argument is devoid of legal support. The cases on which Defendants rely addressed the sufficiency of the evidence presented at trial and are inapplicable at this early stage of the litigation.  *In re L.C.L.*, 599 S.W.3d 79 (Tex. App.—Houston [14th Dist.] 2020, pet. filed) (addressing the sufficiency of the evidence to support the trial court's judgment terminating parental rights); *In re A.H.*, 414 S.W.3d 802 (Tex. App.—San Antonio 2013, no pet.) (same); *Natural Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150 (Tex. 2012) (addressing the sufficiency of the evidence to support the jury's damages award).

Defendants also take issue with GPS's request for attorney's fees and exemplary damages. (Dkt. No. 26, at 26–27.)  "Under the Lanham Act, attorneys' fees and costs may be awarded to the prevailing party in 'exceptional cases.'"  *MetroPCS v. Mohammed*, 2017 U.S. Dist. LEXIS 91447, at \*23 (N.D. Tex. Apr. 24, 2017) (quoting 15 U.S.C. § 1117(a)), *adopted by* 2017 U.S. Dist. LEXIS 91036 (N.D. Tex. June 14, 2017).  "An exceptional case is one where the violative acts can be characterized as malicious, fraudulent, deliberate or willful."  *Retractable Techs., Inc. v. Becton, Dickinson & Co.*, 2014 U.S. Dist. LEXIS 177363, at \*28 (E.D. Tex. Nov. 10, 2014) (quotation marks omitted).  GPS alleges that Defendants' false statements were made with malice and, therefore, GPS alleges facts to support an award of attorney's fees.

In addition, exemplary damages may be awarded if a plaintiff proves "that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence."  *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 866 (Tex. 2017) (quoting Tex. Civ. Prac. & Rem. Code § 41.003(a)).  As GPS alleges that Defendants' false statements were made with malice, GPS alleges facts to support an award of exemplary damages.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, GPS respectfully requests that the Court deny Defendants' motion to dismiss.

Dated:  June 25, 2021                              Respectfully submitted,

                                                   **MCGUIREWOODS LLP**

                                                   */s/ Justin Opitz*
                                                   Justin Opitz
                                                   Texas State Bar No. 24051140
                                                   Matthew W. Cornelia
                                                   Texas State Bar No. 24097534
                                                   Addison Fontein
                                                   Texas State Bar No. 24109876
                                                   2000 McKinney Avenue, Suite 1400
                                                   Dallas, TX 75201
                                                   Tel:  (214) 932-6400
                                                   Fax:  (214) 932-6499
                                                   jopitz@mcguirewoods.com
                                                   mcornelia@mcguirewoods.com
                                                   afontein@mcguirewoods.com

                                                   Robert A. Muckenfuss (*pro hac vice*)
                                                   North Carolina State Bar No. 28218
                                                   Kelly A. Warlich (*pro hac vice*)
                                                   North Carolina State Bar No. 51053
                                                   201 North Tryon Street, Suite 3000
                                                   Charlotte, NC 28202
                                                   Tel: (704) 343-2000
                                                   Fax: (704) 343-2300
                                                   rmuckenfuss@mcguirewoods.com
                                                   kwarlich@mcguirewoods.com

                                                   Lucy Jewett Wheatley (*pro hac vice*)
                                                   Virginia State Bar No. 77459
                                                   800 East Canal Street
                                                   Richmond, VA 23219
                                                   Tel: (804) 775-4320
                                                   Fax: (804) 698-2017
                                                   lwheatley@mcguirewoods.com

                                                   **ATTORNEYS FOR PLAINTIFF**
                                                   **GLOBAL PLASMA SOLUTIONS, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was electronically filed on June 25, 2021, using the Court's CM/ECF system, which will send notice of such filing to all counsel of record who are deemed to have consented to electronic service.

*/s/ Justin Opitz*
Justin Opitz
