**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> D ZINE PARTNERS, LLC, <br> MARWA ZAATARI, and ENVERID <br> SYSTEMS, INC., <br><br> *Defendants*. | CIVIL ACTION NO. 3:21-CV-00884-D <br><br><br> JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

Plaintiff Global Plasma Solutions, Inc. ("GPS"), by and through its undersigned attorneys, brings this Second Amended Complaint[1] against Defendants D Zine Partners, LLC ("D Zine"), Marwa Zaatari ("Zaatari"), and enVerid Systems, Inc. ("enVerid") (collectively, "Defendants"), and alleges as follows:

## INTRODUCTION

1.      This case involves a reckless campaign by industry competitors of GPS to spread false and misleading statements in an effort to advance the false narrative that GPS's technology is not safe. Defendants have relentlessly pursued this campaign for one purpose—to make money. While portraying herself as a neutral academic and activist, Defendant Zaatari has raised her profile in the media by advancing false and inflammatory safety claims about GPS, and trying to create panic among consumers. However, Zaatari's true purpose is to secure an unfair economic

---

[1] GPS files this Second Amended Complaint in accordance with and pursuant to paragraphs 2 and 3 of the Court's Scheduling Order, which provide that motions for leave to file an amended complaint, including an amended complaint that joins an additional party, need not be filed as long as the amendment is filed by December 1, 2021.  Doc. 31.

advantage for her companies, Defendants enVerid and D Zine—a motive and conflict of interest that Defendants concealed from the media and the public. Indeed, Zaatari is best known not for contributions to the industry, but rather for her relentless, unfounded criticisms of GPS and its products.

2.      enVerid strategically and secretly used its agent Zaatari and her status within The American Society of Heating, Refrigerating, and Air-Conditioning Engineers (ASHRAE) to falsely attack GPS and its products and to execute a smear campaign to take out GPS as a competitor. Even after Zaatari purportedly became a mere advisor to enVerid in June 2020, she maintained her enVerid email account and continued to closely strategize with enVerid and its executives on how best to attack GPS and misrepresent safety concerns surrounding GPS's technology.

3.      enVerid and Zaatari concealed their close collaboration in this respect and instead pushed Zaatari's misleading image as a detached and objective scientist. enVerid and Zaatari maintained a "competitive file" on GPS and obsessively pursued a scorched earth agenda to take down GPS through unfair and deceptive tactics, including using the ASHRAE platform to advance their agenda.

4.      Zaatari became so engrained with ASHRAE that ASHRAE referred a significant media inquiry regarding GPS's technology directly to Zaatari despite her hidden conflict of interest with enVerid. At no point did ASHRAE or Zaatari invite GPS itself to provide any input with regard to the media inquiry. Although it is not uncommon for ASHRAE members to be involved in the private industry, Zaatari's hidden agenda with enVerid combined with her singular and zealous focus to misrepresent safety and efficacy concerns surrounding GPS's technology compromised her status within ASHRAE as an authority on the subject.

5.     enVerid and Zaatari used D Zine to engage customers of GPS and steer them toward enVerid and its products. enVerid and Zaatari targeted (and continue to target) GPS's school district customers and perpetuate the false narrative that GPS's products are somehow unsafe. In fact, enVerid and Zaatari knew there were no legitimate safety concerns with GPS's technology and intentionally conflated GPS's products with other unproven ionization technology.

6.     In an internal March 2021 email with Zaatari (using her enVerid email address), enVerid executives outlined their desire to "cultivate" a "bipolar backlash." enVerid used Zaatari as its primary agent to misrepresent GPS's technology in trying to achieve this "bipolar backlash."

7.     Contrary to Defendants' misrepresentations, GPS is an innovative company focused on providing consumers with safe and effective air purification products, as it has done since it was founded in 2008.

8.     As the inventor and owner of the revolutionary Needlepoint Bipolar Ionization (NPBI$^{TM}$) air purification technology, GPS has worked assiduously since 2008 to build its well-earned reputation for excellence and develop trust among consumers in the United States and abroad.

9.     Recognizing GPS's contributions to the field, the United States Patent and Trademark Office has issued numerous patents to GPS for its advances in air purification systems and devices, including the technology underlying GPS's NPBI$^{TM}$.

10.     As a testament to its safety, GPS's NPBI$^{TM}$ product has also earned the seal of approval of the UL, CE, RTCA, OSHPD, CARB, and other standard-setting bodies.

11.     Nevertheless, for over a year, Defendants have engaged in a systematic campaign designed to smear GPS and its technology through multiple channels, including through Zaatari's Twitter account, local and national news outlets, and online articles and other literature, as well as

via ASHRAE and other industry organizations (including their webinars and online events), by making false and outrageously misleading statements about GPS and its products.

12.     While Defendants have attempted to disguise Zaatari's false and misleading statements as the unbiased criticism of an independent academic who is simply trying to promote public well-being, in reality, Defendants' motive has been to gain an unfair economic advantage for enVerid and D Zine—competitors of GPS. Zaatari has gone to great lengths to hide her true relationship with enVerid, including using a Gmail address when not communicating with people within the enVerid circle. However, Zaatari has used her enVerid email address when privately communicating with the enVerid executives to discuss strategies on how to take down GPS and misrepresent its technology. While enVerid lists Zaatari as a scientific "advisor" on its website, Zaatari and enVerid have concealed her true conflict of interest and role within enVerid.

13.     Zaatari is a partner of and, on information and belief, an owner of D Zine, a firm that offers indoor air filtration consulting and design services and a competitor to GPS. Zaatari uses D Zine to engage GPS's customers and steer them to enVerid.

14.     From at least January 2015 through May 2020, Zaatari was the Vice President of Building Solutions for enVerid, a company that offers air purification systems in direct competition with GPS. Although Zaatari's formal title at enVerid changed in May 2020 to a member of its board of advisors, Zaatari continued in her central role as part of enVerid's leadership team in developing strategy and tactics to unfairly compete with GPS and falsely smear GPS's name and products.

15.     While GPS encourages independent scientific research into the safety and efficacy of air purification systems—including its own technology—GPS cannot sit idly while its

competitors spread false, misleading, disparaging, and defamatory information about GPS and its products.

16.     GPS therefore brings this lawsuit to protect itself from Defendants' unlawful actions and to obtain relief for the irreparable harm Defendants have caused GPS and its business.

## THE PARTIES

17.     GPS is a corporation organized under the laws of the State of Delaware with a principal place of business at 3101 Yorkmont Road, Suite 400, Charlotte, North Carolina 28208.

18.     Upon information and belief, Defendant D Zine is an entity formed under the laws of the State of Texas with a principal place of business at 3811 Turtle Creek Boulevard, Suite 560, Dallas, Texas 75219. D Zine has been served and filed a responsive pleading.

19.     Defendant Marwa Zaatari is an individual and is a partner of D Zine and member of the board of advisors for enVerid who, upon information and belief, is a resident of Austin, Texas and may be served with process at 3000 South 5th Street, Austin, Texas 78704. Zaatari has been served and filed a responsive pleading.

20.     Upon information and belief, Defendant enVerid is a corporation organized under the laws of the State of Delaware with a principal place of business at 21 Southwest Park, Westwood, Massachusetts.

## JURISDICTION AND VENUE

21.     This is a civil action for false advertising, product disparagement, and unfair competition under the Lanham Act; defamation, business disparagement, and tortious interference with existing and prospective business relationships under Texas law; and common law unfair competition.

22.     This Court has original subject matter jurisdiction over this action under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over GPS's

state and common law claims under 28 U.S.C. § 1367(a) because they are so related to the claims in this action over which this Court has original jurisdiction that they form part of the same case or controversy.

23.     This Court also has diversity jurisdiction over this lawsuit under 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of costs and interests, and is between citizens of different states.

24.     This Court has personal jurisdiction over D Zine because it is organized in the State of Texas and maintains a principal place of business in Dallas, Texas.

25.     This Court has personal jurisdiction over Zaatari because she is an individual who resides in the State of Texas.

26.     This Court has personal jurisdiction over enVerid because enVerid does business in Texas and directly competes with GPS for customers in Texas. Moreover, enVerid's agent Zaatari resides in Texas and many of the acts described in this Second Amended Complaint supporting GPS's claims occurred in Texas. Zaatari has worked as enVerid's agent for purposes of competing with GPS in Texas and spreading false information about GPS from her primary location in Texas.

27.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the events giving rise to the claims asserted in this Second Amended Complaint against all Defendants occurred within this judicial district and Defendants are subject to personal jurisdiction in this judicial district.

**FACTUAL BACKGROUND**

A.    **GPS and GPS's Products**

28.    GPS is well-known in the air purification and quality industry for providing customers with accurate recommendations and products that meet each individual customer's air quality and purification needs.

29.    GPS was founded in 2008 and has a proven history of providing safe and effective products to its customers.

30.    GPS's products are based on its revolutionary NPBI™ technology.

31.    NPBI™ is a patented technology that cleans the air by introducing ions in the space via the airflow in the ventilation system.

32.    GPS seeks to develop products that meet and exceed industry standards, as evidenced by the approvals of GPS's products, including the NPBI^TM product, by independent certifying agencies such as UL, CE, RTCA, OSHPD, CARB, and other standard-setting bodies. GPS's products also comply with all applicable Environmental Protection Agency regulatory requirements.

33.    GPS's NPBI^TM product has achieved the UL 2998 zero ozone emissions certification. This stringent certification requires that products demonstrate that they emit less than 0.005 parts per million (ppm), which is below the quantifiable level for ozone testing. Notably, certification under UL 2998 requires demonstration of ozone emissions at least ten times lower than what is permitted under the standard UL 867 test and by the United States Food and Drug Administration (FDA) for medical devices.

34.    Consistent with GPS's commitment to transparency with its customers and potential customers, GPS prominently displays the results of tests by independent labs of its NPBI^TM technology on its website, including sensitivity testing, simulation testing, specialty

testing, and field testing. A true and correct copy of the independent testing section of GPS's website is attached as **Exhibit A**.

35.     GPS also works directly with customers—prior to any purchase—to conduct site-specific studies that assess the performance and appropriateness of GPS's products for their unique needs.

36.     As a result of these efforts, along with the time and resources GPS invests in its products and GPS's consistent dedication to excellence, GPS has earned a reputation as a leader in the air quality/purification industry.

37.     In fact, approximately 250,000 GPS NPBI™ air purification systems have been installed worldwide, including in federal government buildings, hospitals, corporate facilities, universities, and in hundreds of primary and secondary schools.

38.     GPS's technology is also trusted by some of the world's leading companies involved in aviation manufacturing, aerospace technology, and performance equipment.

39.     GPS has employees who are prominent members in good standing of ASHRAE, and GPS's employees regularly lead lectures and speak at ASHRAE meetings.

40.     GPS also has an active membership with the American Society for Health Care Engineering (ASHE), and its aviation products have passed the stringent RTCA DO-160 tests.

41.     GPS's products are routinely evaluated by leading experts, including those within the Environment, Health, and Safety (EHS) departments representing major institutions, such as the types of institutions identified in Paragraphs 32 and 33 above.

42.     GPS's reputation for excellence and dedication to offering safe, high-quality products is embodied within its GLOBAL PLASMA SOLUTIONS logo, the GPS name, and its

NPBI™ brand, all of which are readily associated with GPS and its products when encountered by the public and entities or individuals within the industry.

**B.     Zaatari's History with enVerid and ASHRAE**

43.     Zaatari began working with enVerid at least as early as 2015 as its Vice President of Building Solutions.

44.     In 2018, Zaatari and enVerid's top executives began focusing on GPS and strategizing how to attack GPS and its products. Zaatari was central in this planning.

45.     In 2020, as GPS's business took off, enVerid and Zaatari became increasingly concerned that enVerid's business was floundering and would not be able to compete with GPS's expanding business.

46.     At the same time, Zaatari was raising her profile within ASHRAE, ultimately becoming a member of the ASHRAE Epidemic Task Force and a voting member of the Standard 62.1 Committee in ASHRAE.

47.     Standard 62.1 outlines the measures intended to provide Indoor Air Quality ("IAQ") that is acceptable to human occupants and that minimizes adverse health effects. Zaatari's position within ASHRAE and as a voting member of Standard 62.1 provided enVerid with a powerful weapon to attack GPS.

48.     Zaatari used her rising prominence within ASHRAE to speak at ASHRAE sponsored meetings and attack GPS by spreading false and misleading information described in more detail below.

49.     In June 2020, Zaatari purported to leave her employment with enVerid to work for Blue Box Air, LLC. Zaatari remained ostensibly as a "scientific advisor" for enVerid but in reality continued in her role as enVerid's main strategic partner in attacking GPS, using her rising image within ASHRAE as an independent and detached scientist to advance enVerid's competitive

interests against GPS as revealed in numerous emails obtained by GPS in this litigation. Zaatari intentionally concealed her true relationship with enVerid in advancing this agenda.

50.     The height of Zaatari's deception and concealment culminated in the so-called "Open Letter," authored by Zaatari and published in April 2021. The Open Letter was directed toward GPS's school district customers in an effort to disrupt GPS's business. Zaatari zealously recruited other scientists to sign on to the Open Letter which raised questions about GPS and its technology. Zaatari again intentionally concealed from those scientists her true strategic relationship with enVerid, and in the published Open Letter, Zaatari said nothing about her conflicting relationship with GPS's competitor enVerid. In fact, the Open Letter states the exact opposite—"[n]o reported conflicts of interest."

51.     The Open Letter's affirmative representation that Zaatari had no conflict of interest is especially egregious as one individual whom Zaatari solicited expressly declined to sign the Open Letter due to a similar conflict of interest. Zaatari nonetheless chose to conceal her conflict from the public knowing its disclosure would undermine the perceived legitimacy of the publication.

52.     Moreover, in the course of recruiting other scientists to sign the Open Letter, it was made clear to Zaatari by a prominent scientist that there were no real safety concerns with GPS's technology. Another scientist, and former president of ASHRAE, agreed with that assessment. Zaatari ignored the science and nevertheless proceeded to smear GPS to advance enVerid's increasingly desperate agenda.

53.     Zaatari's focus on disrupting GPS's relationship with its school district customers was a direct result of enVerid's competitive goal of taking these customers for itself. In emails with Zaatari, enVerid's executives became increasingly upset that GPS had been so successful

selling its technology to school districts and desperately solicited Zaatari's input to find a way to disrupt that business. On its website and in marketing materials, enVerid focused its business on schools and touted its technology as "a better solution for cleaning air in schools."

54.     Zaatari's Open Letter in 2021 was a direct result of enVerid's directive to Zaatari to target schools and misrepresent GPS's technology.

55.     After this lawsuit was filed, Zaatari scrambled to hide her relationship with enVerid and advised one colleague to stop using her enVerid email address. A true and correct copy of this email is attached hereto as **Exhibit B**.

56.     Zaatari was so effective in hiding her conflict of interest and raising her profile within ASHRAE that ASHRAE's media relations firm, Duffey Communications, Inc., referred an Atlanta TV station inquiry about GPS's technology in Georgia schools directly to Zaatari. On June 21, 2021, Duffey Communications sent the reporter's inquiry directly to Zaatari at her Gmail address and stated: "They are working on an investigative story about bipolar ionization systems in Georgia schools….Let me know if you are interested and I can connect you with the producer." Duffey Communications copied several ASHRAE employees on its email and highlighted that the TV station "is the highest ranking network here in Atlanta." Zaatari responded, "I am interested and happy to talk to the producer." A true and correct copy of this email chain is attached hereto as **Exhibit C**.

57.     Even though GPS has representatives who are ASHRAE members, neither Zaatari nor anyone in ASHRAE alerted GPS to the media inquiry. Instead, Zaatari—using her newfound power within ASHRAE—executed her enVerid agenda so effectively that even ASHRAE itself promoted her as the primary voice on GPS's technology, even selling the opportunity to Zaatari as a chance to be on Atlanta's "highest ranking network." This communication reveals that the

true objective was about a publicity opportunity rather than a balanced scientific discussion.

58.     Upon information and belief, Zaatari communicated with the Atlanta TV station using her Gmail address while concealing her true competitive involvement with enVerid.

**C.     Zaatari's False, Misleading, Disparaging, and Defamatory Publications**

59.     Despite the substantial resources and effort invested by GPS to build its reputation and to ensure that its products are safe and effective, Defendants have embarked on a meritless campaign to damage GPS's reputation and goodwill by spreading false, misleading, disparaging, and defamatory information about GPS and its products.

60.     Defendants have engaged, and continue to engage, in this conduct in order to raise Zaatari's profile in the industry, and by inciting panic, to encourage the public, the industry, and GPS's current and prospective customers to not use technology utilized in GPS products and instead purchase enVerid's competing air purification products and hire D Zine to perform consulting services that, among other things, assess, design, and implement IAQ solutions that compete with GPS and GPS's products and services. This effort is aimed to drive GPS's current and prospective customers away from GPS to purchase products from enVerid and utilize the services of D Zine and other competing companies with which Zaatari is involved or has pecuniary interests.

61.     One medium through which Zaatari publishes inaccurate, misleading, disparaging, and defamatory information about GPS and GPS's products is Twitter.

62.     Beginning at least as early as January 2021, Zaatari has engaged in a public smear campaign via Twitter designed to damage GPS's reputation and drive GPS's customers and potential customers away from GPS to enVerid, D Zine, and their respective corporate partners.

63.     The orchestration of this public smear campaign, however, began at least as early as June 2018 when Zaatari and enVerid became concerned about the competition from GPS and its products.

64.     On June 23, 2018, James Noe, a manufacturer representative of enVerid products, discovered a YouTube video posted by GPS that explains how to use GPS's IAQ spreadsheet, which includes all the mass balance equations based on ASHRAE standard 62.1 and that calculates the ventilation rate procedure outside air requirements and the IAQ Procedure (IAQP) outside air requirements by applying GPS's patented air purification technology at a known effectiveness for the contaminant of concern. Upon discovering the video, Noe sent it to Zaatari and other enVerid executives and stated: "I just found this from [GPS]. It's very well done. I suspect you all have already seen it. If you haven't, you need to watch it." Noe concluded his email by stating "[i]n any case, we need to surpass their spreadsheet." A true and correct copy of this email is attached hereto as **Exhibit D**.

65.     A mere two days later, on June 25, 2018, Zaatari sent an email to two enVerid founders and executives stating that Trane Technologies was writing a white paper about IAQP. Zaatari sent the enVerid executives a snapshot of the article and stated that she "did not find it good for enVerid." Udi Meirav, enVerid's President, responded by stating "We need him less supportive of the GPS storyline," to which Israel Biran, enVerid's Senior Vice President of International Business Development, replied "we will review and approve this before they release it." A true and correct copy of this email chain is attached hereto as **Exhibit E**.

66.     Zaatari and enVerid's concern over competition with GPS escalated in October 2018 when enVerid was invited to speak at the ASHRAE Boston event and learned that GPS would also be presenting.

67.     In an effort to promote enVerid within the industry and ASHRAE in advance of its public smear campaign against GPS, in October 2019, Zaatari coordinated a platinum sponsorship of ASHRAE by enVerid.

68.     Zaatari and enVerid's fear of competition from GPS continued to grow with the onset of the COVID-19 pandemic. On February 10, 2020, Zaatari sent an email from her enVerid email address to a third party stating, "[w]e have an urgent need to understand what is the cleaning mechanism of the following companies," one of which was GPS, and noting "[t]hey are all heavily involved in ASHRAE." A true and correct copy of this email is attached hereto as **Exhibit F**.

69.     GPS's business continued to grow as the COVID-19 pandemic progressed, and Zaatari and enVerid were well aware of this. On May 1, 2020, enVerid's Regional Sales Manager sent an email to Zaatari regarding the training of new sales representatives in Arizona and identified as "the biggest issue" the fact that "GPS has a pretty good footprint in the market there already." A true and correct copy of this email is attached hereto as **Exhibit G**.

70.     In addition, on June 17, 2020, enVerid's Vice President of Business Development sent an email to several enVerid executives—including Zaatari at her enVerid email address—stating: "In case you have not seen, here are the GPS documents and lab tests associated with COVID. Since they are our largest IAQP competitor (due to receiving UL2998 certification), we really need to create and post something like the below table to hit these issues head on in our presentations." A true and correct copy of this email is attached hereto as **Exhibit H**.

71.     A week before the June 17 email, on or about June 8, 2020, Zaatari announced she was joining Blue Box Air, LLC as its Chief Science Officer. However, privately, Zaatari continued to work with enVerid in developing its strategy to unfairly compete with GPS by publishing false and disparaging statements about GPS and its products.

72.     At least as early as November 2020, Zaatari and enVerid had decided to focus their marketing on schools in light of the introduction of the Keeping Schools Safe Act, a bill to authorize the Secretary of Education to award grants to improve IAQ in elementary and secondary schools. On November 20, 2020, Christian Weeks, enVerid's CEO, sent an email to Zaatari at her enVerid email address regarding the bill. At this time, Zaatari had purportedly ceased her employment with enVerid. Weeks explained that he had been working with a lobbyist to set up a meeting with the legislative assistant to the senator who introduced the bill and that he "would like to try to convince her to write or amend the bill in such a way that it prioritizes permanent, fixed local air cleaners." Weeks stated that he hoped the bill would get incorporated into the next stimulus package, but that they "need to make sure the language is favorable for the Air Purifier." A true and correct copy of this email is attached hereto as **Exhibit I**.

73.     Impatient with the laggard and unpredictable results of expensive and time consuming lobbying efforts, Zaatari, on behalf of both enVerid and D Zine, whom she joined as a partner in December 2020, began her barrage of false, misleading, disparaging, and defamatory statements about GPS and its products.

74.     On January 18, 2021, Zaatari published a tweet warning readers to "stay away" from, among other things, "ionic purifier + composite catalyst" and "bi-polar" air purification systems—such as GPS's NPBI™ air purification system. A true and correct copy of the tweet is attached as **Exhibit J** and reproduced below.



75.     On February 7, 2021, Zaatari published a tweet falsely accusing companies that offer ionizing air purification systems—such as GPS—of "cheating...when reporting test results." A true and correct copy of the tweet is attached as **Exhibit K** and reproduced below.



76.     On March 2, 2021, an enVerid employee sent an email to enVerid executives stating that she and an enVerid marketing employee were "putting [their] heads together" to discuss "a school campaign" with the goal of "helping to cultivate/amplify a bit of bipolar backlash." The enVerid CEO then forwarded this email to Zaatari. A true and correct copy of the email is attached hereto as **Exhibit L**.

77.     Thereafter, Defendants' public smear campaign against GPS and its NPBI™ became increasingly inflammatory and misleading, including a March 9, 2021 Twitter thread

dedicated specifically to spreading inaccurate, misleading, disparaging, and defamatory information about GPS, followed by two tweets in April 2021 falsely and recklessly analogizing ionizers—like GPS's NPBI<sup>TM</sup> air purification system—to cigarettes and hand grenades.

78.     In the first tweet of the March 9, 2021 thread, Zaatari called for the "defeat of ions" and made clear that the thread is specifically directed to "Needle Point Bi-polar Ionization"— GPS's NPBI™ air purification system. A true and correct copy of the entire Twitter thread is attached as **Exhibit M**, and the initial tweet is reproduced below.



**Marwa Zaatari**
@marwa_zaatari

The defeat of ions.

Thread about Needle Point Bi-polar Ionization.

What the manufacturer claims versus what independent studies report.
@ShellyMBoulder @jljcolorado @JimRosenthal4

5:19 PM · Mar 9, 2021 · Twitter Web App

79.     Zaatari then proceeded to publish links to and commentary on several "independent studies," in each instance representing that the "device tested is produced by [Plaintiff] GPS."

80.     One of the tweets, citing a study from Science Direct, falsely stated: "Claim of reduction of particulate matter concentration: False." But in truth, the cited study makes clear that this test was not about "reduction of particulate matter"; rather, the study states that "[w]e also observed similar ozone concentrations upstream and downstream of the ionizer, implying the system <u>is not generating ozone</u>." (emphasis added). True and correct copies of the tweet and the cited article are attached as **Exhibits M** and **N**. Zaatari's tweet is reproduced below.



81.    enVerid retweeted Zaatari's Twitter thread that same day, stating "Findings from an important new study." A true and correct copy of enVerid's retweet is attached hereto as **Exhibit O**.

82.    Defendants' March 9, 2021 Twitter thread was followed by egregious and false statements equating the safety of ionizers to the safety of cigarettes. Specifically, in an April 7, 2021 tweet, Zaatari analogized "ionisers" with cigarettes, falsely stating that "there is no safe

[ioniser]" and products like GPS's NPBI™ air purification systems "may cause serious diseases." A true and correct copy of the tweet is attached as **Exhibit P** and reproduced below.



83.     On April 15, 2021, Zaatari published a tweet analogizing "ionizers" to "using a hand grenade to remove cars" from a full parking lot, falsely suggesting that products like GPS's NPBI™ air purification systems are deadly and destructive. In the same tweet, Zaatari advertised and included a link to the "Healthy Indoors Live Show," with the caption "How to Prevent 'Snake Oil' Sales from the IAQ Industry," thereby falsely suggesting that ionizers—including GPS's NPBI™ air purification systems—are dangerous, and that companies offering such products, including GPS, engage in deceptive marking. A true and correct copy of the tweet is attached as **Exhibit Q** and reproduced below.



84.    Zaatari's tweets are the equivalent of falsely yelling "fire" in a crowded theatre. They are designed and intended to scare the public and cause GPS's customers and potential customers to hire Zaatari and D Zine, thereby enabling Zaatari to steer those customers to products offered by enVerid and other companies competing with GPS, including those in which she has an interest.

85.    It is well engrained in the public's consciousness that cigarettes are in fact dangerous and can be deadly, and that tobacco companies lied about this fact. Zaatari's April 7, 2021 tweet equates ionizers with cigarettes and suggests that ionizers have all of the harmful effects of cigarettes. Zaatari doubles down on this outrageously false statement by attaching a

picture of tobacco executives testifying before Congress, thereby equating GPS's owners and executives with tobacco executives and their criminal and deceptive conduct.

86.     GPS's products are safe, and Defendants know this fact. GPS's employees have worked hard to provide a safe and reliable technology. GPS has been around since 2008, and Zaatari only ramped up her attacks when GPS started to have more success with its business in the 2019 to 2020 timeframe. Defendants should not be allowed to promote and spread false and reckless statements about GPS, its hard-working employees, and its products for financial gain.

87.     More recently, in addition to publishing false, misleading, disparaging, and defamatory statements about GPS, GPS's products, and ionizing air purifiers generally, Zaatari has begun falsely stating that ionizers, including the GPS NPBI$^{TM}$ product, are harmful to school children in furtherance of enVerid's "school campaign" to create "bipolar backlash." Zaatari's alarmist propaganda is a thinly veiled attempt to disguise her financial and business motives by pandering to anxious parents and leveraging the heightened sensitivity to air quality among the general public. Zaatari's publication of false and misleading information is not based in virtuosity; rather, Zaatari is attempting to boost her status in the IAQ community by spreading baseless criticisms of competitors in order to damage GPS and divert customers to D Zine and enVerid.

88.     For example, on April 18, 2021, Zaatari published a poem via Twitter falsely suggesting that bipolar ionizers—like GPS's NPBI$^{TM}$ air purification system—lead to "cancer, asthma, and [a]sphyxiation" in children and are marketed by "snake-oil" salespeople. She also sent copies of the disparaging poem directly to an industry group whose members were considering purchasing GPS technology. A true and correct copy of the tweet is attached as **Exhibit R** and reproduced below.



**Marwa Zaatari**
@marwa_zaatari

Replying to @marwa_zaatari

Here is the entire poem. Thanks to my hubby, the wordsmith:

**Ion Justification**
By M & A Zaatari
4/18/2021

A preposterous proposition,
Presented in opposition,
To expert recommendation
An inherent contradiction,
To Chemical composition
Subtraction equals addition?

The claim is the rationalization,
Of snake-oil presentation,
Shoe-box experimentation,
To "damper-off" ventilation,
Shun mechanical filtration,
Just to sell ionization…

What is your current position?
On childhood appropriation,
Cancer, asthma 'sphyxiation…
What majesty I petition?
To get some sort of remission…
Time to break down inhibition.

No to Ozone generation
No to Bipolar ionization
No to PC oxidation
No to Radicals formation
No to Magic disinfection
Chemical vaporization…

My advice?
Don't fall for the cheap temptation
The incessant provocation,
Stick with the prime presentation
Of science origination
Richard Corsi education
Jose Jimenez inspiration
Eric Feigl-Ding position
Linsey Marr explanation
Shelly Miller persuasion
Kim Prather action
Brent Stephens publication
Jeffrey Siegel direction
William Bahnfleth vision
Joseph Allen mission

5:21 PM · Apr 18, 2021 · Twitter Web App

89.     In an effort to broaden the audience for these false, misleading, disparaging, and defamatory statements, the D Zine website homepage prominently displays at least two links to Zaatari's Twitter account. Further, the link contained in the D Zine website header, reproduced below (annotated), suggests that the Twitter account is the official account of D Zine. A true and correct copy of the D Zine website homepage is attached as **Exhibit S**.



90.     This smear campaign is not limited to Zaatari's Twitter page. Zaatari also publishes articles promoting false, misleading, disparaging, and defamatory information about GPS.

91.     For example, Zaatari published an *Open Letter to Address the Use of Electronic Air Cleaning Equipment in Buildings* (the "Open Letter") on or about April 12, 2021 in which Zaatari specifically "appeal[s] to school district facility managers and administration leadership" in furtherance of enVerid's school campaign to disparage GPS and its NPBI™ technology. A true and correct copy of the Open Letter is attached as **Exhibit T**.

92.     In the Open Letter, Zaatari falsely claims that "one recent independent test (ref:2) of [Plaintiff GPS's] needlepoint bipolar ionization (NPBI) technology found that the strength of the ions produced appears insufficient to effectively clean the air." In fact, the cited "independent test" states the opposite: that "NPBI demonstrated efficacy for in-air pathogens like MS2 (virus) and Staphylococcus Aureus (bacteria)." A true and correct copy of the "independent test" is attached as **Exhibit U**.

93.     To advance her false and misleading claims, Zaatari referenced an ASHRAE article that was removed from circulation in May 2019—nearly two years before Zaatari published the Open Letter. Zaatari makes no mention of the fact that the article was removed from circulation by ASHRAE. This is another example of Zaatari's attempt to disguise her biased and misleading statements as credible, academic analysis.

94.     Notably absent from Zaatari's Twitter page and from the Open Letter is any disclosure of Zaatari's obvious conflict of interest. In fact, while the Open Letter indicates Zaatari is affiliated with D Zine, it also states that there were "[n]o reported conflicts of interest" from the authors and wholly ignores Zaatari's engagement with enVerid. *See* **Exhibit T**.

95.     Upon information and belief, Zaatari has also failed to disclose to publishers, such as CNN, Kaiser Health News, Mother Jones, NBC, WIRED, and Yahoo News, her conflicts of interest and has made further efforts to disguise the false and misleading nature of her statements.

96.     Upon information and belief, Zaatari also spreads inaccurate, misleading, disparaging, and defamatory statements about GPS and GPS's products through her involvement in and presentations to members of the ASHRAE, the U.S. Green Building Council, the academic community, and other industry organizations.

97.     Upon information and belief, Zaatari also has directly contacted GPS's existing and potential customers in an effort to interfere with those relationships and to gain an unfair economic advantage for herself, D Zine, and enVerid.

98.     For example, on April 5, 2021, a third party sent Zaatari an email in response to "an unroll thread of comments on Twitter about concerns regarding bipolar ionization units in schools" that Zaatari had sent to the third party. The third party's school district had purchased GPS's NPBI™ products. A true and correct copy of the email is attached hereto as **Exhibit V**.

99.     Zaatari's conduct is an integral part of enVerid's strategy to take down GPS at all costs. Zaatari used her status within ASHRAE to advance enVerid's interests in attacking GPS without revealing the full extent of her strategic and economic involvement with enVerid.

100.    In February 2021, Weeks (enVerid's CEO) looped Zaatari—at her enVerid email address—into a discussion about GPS. In the email exchange, enVerid executives are discussing a paper about GPS's technology and using it to attack GPS. Meirav (enVerid's President) acknowledges that GPS's technology probably works through electrostatic agglomeration but nevertheless explores ways to twist the report to undermine GPS. Meirav goes on to state, "can this help stop the EAC nonsense from being the reason we don't do better?"

101.    The CEO forwarded the discussion to Zaatari at her enVerid email address (even though she is supposedly not employed by enVerid at this point) asking to discuss with her. Zaatari emails back on February 16, 2021 and says, "Yes. I agree with all points. Already distribute [sic] it to ASHRAE folks last week."

102.    Zaatari was and is using her position within ASHRAE to advance enVerid's agenda and working closely with enVerid's top executives to strategize on how to attack GPS regardless of the real scientific evidence. Zaatari has developed a persona of a detached scientific researcher

within ASHRAE when in reality she has adopted the sole objective of advancing enVerid's almost obsessive goal of destroying GPS.

103.     In other emails with Zaatari, enVerid executives have acknowledged their desire to take GPS's business and use Zaatari's position within ASHRAE to assist with this goal. In furtherance of enVerid's business goals, Zaatari has connected enVerid executives with prominent ASHRAE members, underscoring how she and enVerid have used connections to ASHRAE to advance their business interests and undermine enVerid's competitors. Zaatari, as a direct agent of enVerid, has willingly accepted the challenge to try and destroy GPS at all costs, even to the point of lying about the safety of GPS's technology. Notably, it was not until April 22, 2021—three days after GPS filed this lawsuit—that Zaatari told others to stop using her enVerid email address in a transparent attempt to disassociate herself from enVerid for the purpose of defending this lawsuit. *See* **Exhibit B**.

104.     Though Zaatari freely criticizes claims made by enVerid's competitors, there is no evidence she has moderated or investigated enVerid's own statements. enVerid on its website claims that its HLR module "removes all contaminants of concern" and that "enVerid Air Purifier captures 99.99% of viruses." Upon information and belief, both claims are literally false.

**D.     Zaatari's Publication of False, Misleading, Disparaging, and Defamatory Information Increases After GPS's Original Complaint**

105.     Since GPS filed its Original Complaint (Dkt. No. 1), Zaatari's publication of false, misleading, disparaging, and defamatory information about GPS and its products has only increased.

106.     First, as detailed above, Zaatari continues to publish false, misleading, disparaging, and defamatory information about GPS and GPS's product via Twitter, Facebook, and LinkedIn.

107.    In addition, as a direct result of Zaatari's relentless, unfounded criticisms of GPS and GPS's products—including Zaatari's recent attempts to frame her activity as advocacy for children in schools rather than a clear ploy to create "bipolar backlash" and drive business to D Zine and enVerid by smearing the reputation and goodwill of their competitors—local and national news organizations have begun publishing stories based upon the false and misleading information originally published by Zaatari.

108.    On or around November 9, 2020, a reporter with Kaiser Health News, reached out to ASHRAE's Epidemic Task Force with questions regarding an air purification device manufactured by UVDI and its UV-PCO technology, which had recently been purchased by the Sacramento Unified School District. The reporter's questions were sent to members of ASHRAE's Epidemic Task Force and eventually to Zaatari.

109.    Upon information and belief, Zaatari contacted the reporter and, without disclosing her relationship with enVerid or her resulting financial conflict of interest, persuaded the reporter to redirect her story to GPS and its NPBI$^{TM}$ technology. On April 15, 2021, the reporter sent Zaatari an email stating that Kaiser Health News "got funding for a third reporter ([she] is great and working on this) to flesh out a list of schools getting this stuff" and that they were "working on focusing this story on GPS." A true and correct copy of the email is attached hereto as **Exhibit W**.

110.    Kaiser Health News published the article on May 3, 2021, which was re-published by numerous prominent, national news organizations, including CNN. That same day, Zaatari published a tweet claiming an "investigative article by CNN/KHN" allegedly "shows how the claims by manufacturers are overblown," that companies are "making the $$$$$ by riding on the back of our children," and that the products could cause "serious public health problem[s] in our schools." The tweet includes a link to the article, which repeats many of the false and misleading

statements made by Zaatari over the past several months, and specifically names GPS in the first sentence. The article relies heavily on Zaatari, quoting Zaatari for numerous false and misleading statements about ionizing air purifiers—including those of GPS—asserting the claim that they can "exacerbate asthma and harm developing lungs," and that the products are "a high cost for nothing." The article even quotes Zaatari on the instant lawsuit, in which she claims it is merely a "David-versus-Goliath situation." Notably absent from the article, however, is any disclosure of Zaatari's obvious conflicts of interest via D Zine and enVerid or her acknowledgment of scientific studies refuting her affirmative statements. A true and correct copy of the Twitter post and the CNN republication of the Kaiser Health News article are attached as **Exhibits X** and **Y**, respectively.

111.    The May 3, 2021 CNN article is entitled *Schools Spending Millions on Air Purifiers Often Sold Using Overblown Claims*. Despite its efforts to ensure its products are safe and effective, GPS is named in the first sentence of the article. Zaatari is repeatedly quoted in the article, making false and misleading statements, including that GPS's products "emit ozone" and "exacerbate asthma and harm developing lungs." *See* **Exhibit Y**.

112.    Also on May 3, 2021, Zaatari reiterated her false and unquestionably inflammatory statement comparing GPS to cigarette manufacturers by publishing a tweet stating that "[t]aking the word from manufacturers and ignoring the science 'is like only listening to advice from Philip Morris as to whether smoking is safe or not.'" Like Zaatari's other May 3 tweet, this too includes a link to the CNN article that contains false and misleading statements by Zaatari. A true and correct copy of the Twitter post is attached as **Exhibit Z**.

113.    In addition, shortly before publication of the Kaiser Health News/CNN article, on April 30, 2021, Zaatari published a tweet encouraging readers to, among other things, "stop the

ionization," inaccurately suggesting that technologies such as GPS's NPBI$^{TM}$ are equivalent to "fogging," "spraying," and "oxidation," and that the technology is not "proven." The tweet also links to a story published by KCUR.org that extensively quotes Zaatari, including the false and misleading blanket statement that electronic air cleaners—such as GPS's NPBI$^{TM}$—"do little more than generate ozone, formaldehyde, ultrafine particles, or other substances that cause cancer or other conditions." Also, in the article, despite independent test results to the contrary, Zaatari falsely claims that products such as GPS's NPBI$^{TM}$ "do nothing." A true and correct copy of the Twitter post and the KCUR.org article are attached as **Exhibits AA** and **BB**, respectively.

114.    However, both enVerid and Zaatari knew that safety was not an issue with GPS's products even though they were trying to convince the public otherwise through their smear campaign. While working to develop her Open Letter attacking GPS, Zaatari was on an email exchange with several scientists in which a prominent scientist stated that there was no real concern regarding byproduct production from the normal and expected use of GPS's products. While the scientist expressed concern about proof of efficacy, he was clear that safety was not the issue. Another scientist and former president of ASHRAE agreed with the assessment. Neither Zaatari nor any of the other scientists ever disagreed or countered this assessment in the email exchange.

115.    On May 5, 2021, Zaatari published a tweet purporting to present timely test data for the GPS NPBI$^{TM}$ product, claiming the test results demonstrate the "CADR of a needle point bipolar ionization [product that] was tested by ETL lab." The tweet claims the test results show that GPS's product achieves a "smoke CADR [of only] 0.11," and that these results show the product "would be fit for 0.18 ft2 ([shoe box])." The tweet does not include a citation to the underlying test results so that readers can assess the results for themselves. More importantly, the tweet fails to disclose that the test was conducted in January 2012, almost 10 years ago, on a

product that GPS has not offered for sale for many years, by a competitor of GPS—AtmosAir Solutions. A true and correct copy of the Twitter post and the AtmosAir Solutions test results are attached as **Exhibits CC** and **DD**, respectively.

116.    In response to the above tweet, Zaatari contrasted the nearly decade-old test results against HEPA air filters, touting HEPA filters—the very products offered by D Zine and enVerid—as the "effective and cheap" option. A true and correct copy of the Twitter thread including this response is attached as **Exhibit EE**.

117.    From May 4 to May 11, 2021, additional news articles, each relying heavily on Zaatari, were published by local and national news organizations. The outlets of these articles include Yahoo News, Mother Jones, Campus Safety, The Defender, Education Week, and Government Technology. Each time, the articles rely upon or reference Zaatari's false and misleading statements about ionizing air purifiers—including the GPS NPBI$^{TM}$ product specifically.

118.    Riding her newfound wave of notoriety, Zaatari published a tweet on May 14, 2021 in which she claimed that "ionizers, ozone generators, and oxidizers" are incapable of solving the "[p]oor ventilation in aging schools" that cause "chronic issue[s]," and—despite knowing the falsity of the statement—even stated these technologies "exacerbate the problem." The tweet also included a link to a tweet and article published by NBC in which Zaatari is extensively quoted. Notably, the NBC article quotes Zaatari stating that products such as GPS's NPBI$^{TM}$ product are merely "gimmicks" that can produce "formaldehyde and ultrafine particles." A true and correct copy of the Twitter post and the NBC article are attached as **Exhibits FF** and **GG**, respectively.

119.    The May 14, 2021 NBC News article is entitled *Federal Officials Seek Better Rules About Schools' Indoor Air Quality*. The NBC News article cites to and relies upon Zaatari heavily,

mentioning Zaatari over 10 times. Quoting Zaatari, the article includes several false, misleading, disparaging, and defamatory statements directed at GPS, including: "using devices that emit any amount of ozone is dangerous because it is 'highly reactive' indoors, forming new pollutants, such as formaldehyde" and "schools are buying devices that could emit ozone at levels above the limit recommended by [ASHRAE]," even referring to products like GPS's NPBI$^{TM}$ as "gimmicks" and their suppliers "almost criminal." The NBC News article also specifically references Zaatari's "Open Letter" and other news articles published in reliance upon the "Open Letter" (such as the Kaiser Health News article). *See* **Exhibit GG**.

120.    As discussed above, GPS's NPBI$^{TM}$ product achieved the UL 2998 zero ozone emissions certification—which Zaatari and enVerid have expressly acknowledged. As such, Zaatari's statements regarding ozone emission in the article published by NBC News are demonstrably false and clearly intended to steer GPS's existing and prospective customers away from GPS and to D Zine and enVerid.

121.    There can be no question that the articles discussed above are the direct result of Zaatari's repeated publication of false, misleading, disparaging, and defamatory information about GPS and GPS's products. Not only do these articles specifically cite Zaatari and her false, misleading, disparaging, and defamatory statements, they prominently feature Zaatari and rely upon her perceived status in the industry, claiming Zaatari to be an "air quality expert." Indeed, Zaatari is at the heart of the NBC article:



122.    Notably absent from these articles is any mention of Zaatari's obvious conflict of interest based on her roles with D Zine and enVerid.

123.    As a result of Defendants' baseless and relentless attacks, GPS is suffering irreparable harm.

124.    Defendants' false, misleading, disparaging, and defamatory statements have caused substantial damage to GPS and irreparable harm to GPS's reputation.

125.    In fact, multiple of GPS's actual and prospective customers have paused or ceased doing business with GPS as a direct result of Defendants' baseless smear campaign conducted through Zaatari's numerous social media postings, speaking engagements, and mainstream media articles.

126.    One such example was reported by The Mercury News on May 20, 2021. As detailed in the article, the Newark, California Unified School District decided to cease using 556 GPS NPBI$^{TM}$ devices—valued at over $350,000—as a direct result of the false and misleading statements published by Zaatari. The article quotes Zaatari and repeats many of the false and

misleading statements described above. A true and correct copy of the article is attached as **Exhibit HH**.

127.    Defendants had actual knowledge of GPS's existing and prospective contracts, agreements, and business relations with potential customers and knew and/or intended that their misstatements would interfere with these relationships.

128.    Other existing and prospective customers of GPS, which Defendants had actual knowledge of, have ceased doing business with GPS as a direct result of the false and misleading information spread by Defendants as detailed in the paragraphs above.

## CAUSES OF ACTION

### Count I: Federal False Advertising, Product Disparagement, and Unfair Competition (15 U.S.C. § 1125(a))

129.    GPS incorporates the preceding paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

130.    As described above, Defendants have made false and misleading statements in commercial advertisements, presentations, and publications in violation of the Lanham Act, 15 U.S.C. § 1125 that have deceived existing and potential customers of GPS.

131.    These false and misleading statements were made in an effort to damage GPS's business and reputation and to sell products and services that directly compete with GPS for customers and air purification solutions.

132.    Defendants' statements are false and misleading descriptions of fact that have or are likely to cause confusion, mistake, or deception and misrepresent the nature, characteristics, and qualities of GPS's products and the efficacy of Defendants' own products.

133.    The statements made by Defendants have or are likely to materially influence purchasing decisions at least in part because the public, those in the air quality industry, and GPS's

customers and prospective customers are misled to incorrectly believe that GPS is disreputable and untrustworthy, and that GPS's products are dangerous, ineffective, and/or of inferior quality and that Defendants' products are of superior quality.

134.    Defendants knew or should have known that their commercial advertisements, presentations, and publications were false and/or misleading, or acted with the intent to deceive or in reckless disregard of the truth of such statements.

135.    Defendants' false and misleading descriptions of fact have caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for Defendants' actions, would begin or continue to do business with GPS.

### Count II: Defamation (Texas Law)

136.    GPS incorporates the preceding paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

137.    Defendants have intentionally published false statements to the public at large through publicly available social media platforms, to actual and prospective customers of GPS, and to members of the industry directly and indirectly by virtue of, among others, the numerous inaccurate, misleading, disparaging, and defamatory statements described and identified in the paragraphs above. Each of these statements are unambiguously defamatory based on the context.

138.    The false statements made by Defendants refer to GPS and, in many instances, specifically purport to convey untrue facts about GPS and/or GPS's NPBI$^{TM}$ air purification system.

139.    These false statements expressly or impliedly asserted facts that are objectively verifiable, such as Defendants' inaccurate, misleading, disparaging, and defamatory statements about the characteristics, efficacy, safety, and quality of GPS's products.

140.    Defendants' written statements are also libel per se as defined by Section 73.001 of the Texas Civil Practice and Remedies Code. In particular, Defendants' numerous statements impeach GPS's honesty, integrity, virtue, and reputation by either directly stating or indirectly implying that GPS's products are not only inadequate for the intended purpose, but also pose significant safety risks to the public. These statements are reasonably calculated to produce such results, and imply that GPS knowingly or intentionally disregards the safety and wellbeing of its customers and the public at large in developing, promoting, and selling its products.

141.    Defendants' written statements are defamatory per se under Texas common law because they have injured GPS in its occupation. Among other things, Defendants have made inaccurate, misleading, disparaging, and defamatory statements to the public, including GPS's customers and prospective customers, regarding the characteristics, efficacy, safety, and quality of GPS's products.

142.    Upon information and belief, Defendants published these statements with actual malice. Defendants knew or reasonably should have known that the statements in question were false. Defendants are aware that omitting certain facts from its statements could leave a reader, including but not limited to GPS's current and prospective customers, with a substantially false impression. Upon information and belief, Defendants purposefully avoid the truth by refusing to consult sources that can objectively verify the truth (or falsity) of its statements. At the very least, Defendants are negligent in determining whether its statements are true.

143.    Defendants' false statements are defamatory per se, entitling GPS to a presumption of general damages. Additionally, Defendants' false statements directly and proximately injured GPS, and will continue to do so. As a result, GPS has suffered and will continue to suffer general

damages, including injury to its character, reputation within the industry, and the goodwill it has developed over many years.

144.    Defendants' false statements directly and proximately injured GPS, and will continue to do so, resulting in special damages, including loss of earning capacity and loss of past and future income.

**Count III: Business Disparagement (Texas Law)**

145.    GPS incorporates the preceding paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

146.    As described above, Defendants have published false and disparaging written statements about GPS's products, including the NPBI$^{TM}$ air purification system. Defendants' statements were directed to, among others, GPS's customers, prospective customers, and individuals and businesses throughout the industry.

147.    D Zine's website is integral to its business, and includes—on the website homepage—a link to Zaatari's Twitter page. Each time a customer or prospective customer accesses Zaatari's Twitter page, they are confronted with Zaatari's inaccurate, misleading, disparaging, and defamatory statements about GPS and GPS's products.

148.    Defendants' statements were and continue to be disparaging because they cast doubt on the characteristics, efficacy, safety, and quality of GPS's products, including the NPBI$^{TM}$ air purification system. Defendants accomplish this by making direct statements about GPS and GPS's products, often false even though they are couched as factual statements.

149.    Defendants' statements create a substantially false and disparaging impression by omitting and misrepresenting material facts.

150.    The context of these statements demonstrates that Defendants intend to cast doubt on the characteristics, efficacy, safety, and quality of GPS's products. These statements

demonstrate an intent to paint GPS as a producer of dangerous and unhealthy products and a company with whom its existing and prospective retailers and customers should sever ties.

151.    The statements concern GPS's economic interests because the statements go to the heart of GPS's character as a business, its trustworthiness, and the quality of its products. These statements not only directly bear on the core purpose of GPS's products, but also falsely indicate to customers the nature of GPS's products, including without limitation that they "may cause serious diseases," generate "potentially dangerous byproducts," and "add pollutants to the space."

152.    Upon information and belief, Defendants published their statements with malice. Defendants knew the statements in question were false, acted with reckless disregard for whether the statements were true, acted with ill will, and intended to interfere with GPS's economic interests.

153.    Defendants' false and misleading statements have caused, and will continue to cause, the loss of goodwill and the loss of current and prospective customers who, but for Defendants' actions, would continue to do business with GPS. These direct pecuniary losses are attributable to Defendants' false communications because, on information and belief, those false statements have played a substantial part in causing irreparable harm to GPS's reputation in the industry.

**Count IV: Tortious Interference with Prospective Business (Texas Law)**

154.    GPS incorporates the preceding paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

155.    As described above, Defendants have made inaccurate, misleading, disparaging, and defamatory statements regarding GPS and GPS's products.

156.    Defendants had actual knowledge of GPS's prospective contracts, agreements, and business relations with potential customers.

157.    Upon information and belief, these statements were made willfully and intentionally in order to interfere with GPS's prospective business relationships and have resulted in the loss of prospective contracts and other business with existing and additional prospective customers.

158.    Defendants' intentional interference with GPS's prospective contracts, agreements, and business relations, which was independently tortious and unlawful, proximately caused GPS injury in the form of actual harm, including without limitation, lost revenue, profits and sales, and loss of future income.

## Count V: Common Law Unfair Competition

159.    GPS incorporates the preceding paragraphs of the Second Amended Complaint by reference as if fully set forth herein.

160.    Defendants' false and misleading descriptions of fact in commercial advertisements, presentations, and promotional materials are likely to cause mistake and deception among consumers as to the characteristics, efficacy, safety, and quality of GPS's products.

161.    Defendants' false and misleading descriptions of fact were made intentionally and willfully, in actual or reckless disregard for GPS.

162.    GPS has been and will continue to be irreparably harmed unless Defendants are enjoined from further false and misleading descriptions of fact about GPS's products and required to retract prior false and misleading statements.

## JURY DEMAND

GPS hereby demands a trial by jury on all claims and issues so triable.

## PRAYER FOR RELIEF

GPS respectfully requests that the Court enter judgment in its favor and against Defendants as follows:

A.     a preliminary and permanent injunction restraining Defendants, along with their officers, agents, servants, employees, and attorneys from making, publishing, or otherwise distributing false, misleading, or disparaging statements about GPS or any of GPS's products;

B.     an award of Defendants' profits and GPS's damages;

C.     an award in an amount that will enable GPS to engage in corrective advertising at a level that will effectively counter Defendants' unlawful activity;

D.     an award of GPS's reasonable attorneys' fees and the costs of this action;

E.     exemplary damages in a sum to be determined by the trier of fact;

F.     pre- and post-judgment interest as allowed by law;

G.     an order requiring Defendants to retract their false statements and engage in corrective advertising; and

H.     such other and further relief to which GPS may be entitled.

Dated: <u>August 5, 2021</u>                    Respectfully submitted,

                                            **McGuireWoods LLP**

                                            */s/ Justin Opitz*
                                            Justin Opitz
Texas State Bar No. 24051140
Matthew W. Cornelia
Texas State Bar No. 24097534
Addison Fontein
Texas State Bar No. 24109876
2000 McKinney Avenue, Suite 1400
Dallas, TX 75201
Tel: (214) 932-6400
Fax: (214) 932-6499
jopitz@mcguirewoods.com
mcornelia@mcguirewoods.com
afontein@mcguirewoods.com

Robert A. Muckenfuss (admitted *pro hac vice*)
North Carolina State Bar No. 28218
Kelly A. Warlich (admitted *pro hac vice*)
North Carolina State Bar No. 51053
201 North Tryon Street, Suite 3000
Charlotte, NC 28202
Tel: (704) 343-2000
Fax: (704) 343-2300
rmuckenfuss@mcguirewoods.com
kwarlich@mcguirewoods.com

Lucy Jewett Wheatley
(admitted *pro hac vice*)
Virginia State Bar No. 77459
800 East Canal Street
Richmond, VA 23219
Tel: (804) 775-4320
Fax: (804) 698-2017
lwheatley@mcguirewoods.com

*Counsel for Plaintiff*
*Global Plasma Solutions, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was electronically filed on

August 5, 2021, using the Court's CM/ECF system, which will send notice of such filing to all

counsel of record who are deemed to have consented to electronic service.

*/s/ Justin Opitz*
Justin Opitz
