IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| GLOBAL PLASMA SOLUTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:21-cv-00884-M |
| | § | |
| D ZINE PARTNERS, LLC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Dismiss Defendants D Zine Partners, LLC and Marwa

Zaatari's Counterclaims (ECF No. 138) and the Motion for Summary Judgment as to Defendants

D Zine Partners, LLC and Marwa Zaatari's Counterclaims (ECF No. 236), filed by Plaintiff

Global Plasma Solutions, Inc.  For the reasons stated below, the Motion to Dismiss is

**GRANTED** and the Motion for Summary Judgment is **DENIED AS MOOT**.  Defendants'

counterclaims against Plaintiff are **DISMISSED**.

### I.       Background

Plaintiff Global Plasma Solutions, Inc. ("GPS") is a company in the air purification

industry, whose products are based on its Needlepoint Bipolar Ionization technology.  Defendant

D Zine Partners, LLC ("D Zine") is a firm that offers indoor air filtration consulting and design

services.  Defendant enVerid Systems, Inc. ("enVerid") offers air purification systems.  D Zine

and enVerid are allegedly GPS' competitors.  Defendant Marwa Zaatari ("Zaatari") is a scientist

in the Indoor Air Quality ("IAQ") field.  She was a partner in, and later an advisor to, enVerid,

and now co-owns D Zine, where she is the Chief Science Officer.  Zaatari was appointed to a

committee formed by the American Society of Heating, Refrigerating and Air Conditioning Engineers ("ASHRAE"), which proposes ways to strengthen the standards for acceptable IAQ ventilation technologies.  ECF No. 121 ("Answer") ¶¶ 80–81.

### A.  Plaintiff's Pleadings

GPS alleges that during the COVID-19 pandemic, it experienced an uptick in sales, and due to its growing stature in the air purification market, Zaatari, on behalf of enVerid and D Zine, engaged in a "smear campaign" to encourage potential customers not to use GPS' technology.  ECF No. 58 ¶¶ 60–62, 74.  Between January 2015 and May 2020, Zaatari, allegedly on behalf of enVerid and D Zine, "pursued a scorched earth agenda to take down GPS through unfair and deceptive tactics."  *Id.* ¶¶ 3–4, 14, 70.  GPS further claims that Zaatari, at the direction of, or with encouragement from enVerid, made false statements about GPS, and advised consumers to "'stay away' from . . . 'ionic purifier + composite catalyst' and 'bi-polar' air purification systems—such as GPS's NPBTI™ air purification system."  *Id.* ¶¶ 11, 75.

GPS also alleges that D Zine promoted Zaatari's personal Twitter page and implied that it was "the official account of D Zine," thus adopting Zaatari's statements made on Twitter.  *Id.* ¶ 90.  GPS further alleges Zaatari recruited other scientists to sign an open letter that raised questions about GPS and its technology, without revealing her strategic relationship with enVerid, and that Zaatari persisted in criticizing the GPS technology, although she was informed by a "prominent scientist" that there were no valid safety concerns about GPS' technology.  *Id.* ¶ 52.  GPS alleges she did so in order to target GPS' school customers to discourage them from buying GPS' products.  *Id.* ¶¶ 70, 82, 100–02.  GPS alleges federal claims of false advertising, product disparagement, and unfair competition in violation of the Lanham Act, 15 U.S.C. §

1125(a), and state law claims for defamation, business disparagement, tortious interference, and common law unfair competition.

### B.  D Zine and Zaatari's Counterclaims

On April 18, 2022, D Zine and Zaatari answered, asserting counterclaims for defamation, business disparagement, tortious interference with existing and prospective business relations, and intentional infliction of emotional distress ("IIED").  Zaaatari broadly alleges that GPS made statements to customers and more than 150 members of the ASHRAE community, accusing her of unethical and anti-competitive behavior because she questioned the efficacy of GPS' products.  Answer ¶¶ 72–107.  Zaatari also alleges that GPS filed an unfounded ethical complaint to ASHRAE about Zaatari.  *Id.*  Zaatari further claims that GPS attempted to hire her as a consultant to "buy her off."  *Id.* ¶ 90.  Finally, GPS allegedly contacted those sponsoring Zaatari's speaking engagements to cancel them.  *Id.* ¶¶ 94, 96.  GPS allegedly acted to damage Zaatari's professional reputation and incentivize her to stop raising concerns about GPS' technologies.  *Id.* ¶¶ 72–107.  As a result, Zaatari claims she suffered reputational and business harm.  *Id.*  Zaatari and D Zine's Answer incorporates by reference all of the above allegations under each counterclaim.  *Id.* ¶¶ 108 (Defamation), 114 (Business Disparagement), 121 (Tortious Interference), 129 (IIED).

On May 23, 2022, GPS moved to dismiss the counterclaims for failure to state viable claims, in part arguing that the IIED claim is precluded under Texas law.  ECF No. 138.  On August 8, 2022, GPS moved for summary judgment as to the counterclaims, again arguing that the IIED claim is not cognizable.  ECF No. 236.  On August 29, 2022, D Zine moved to dismiss all of its counterclaims asserted against GPS, and Zaatari moved to dismiss all of her counterclaims except for the IIED claim.  ECF No. 266.  GPS agreed to the dismissal.  *Id.*  The

Court granted the dismissal on October 20, 2022.  ECF No. 362.  Accordingly, the Court reviews GPS' Motion to Dismiss and Motion for Summary Judgment as to Zaatari's sole remaining counterclaim, for IIED.

## II.   Applicable Law

Under Texas law, to prevail on an IIED claim, Zaatari must show that: (1) GPS acted intentionally or recklessly; (2) its conduct was extreme and outrageous; and (3) its actions caused Zaatari to suffer severe emotional distress.  *Webster v. Bass Enters. Prod. Co.*, 192 F. Supp. 2d 684, 697 (N.D. Tex. 2002) (Lynn, J.) (citing *Skidmore v. Precision Printing and Packaging*, 188 F.3d 606, 613 (5th Cir.1999)).

As a threshold matter, the Court must determine whether GPS' conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery." *Reynolds v. Dallas Area Rapid Transit,* 2000 WL 1586444, at *2 (N.D. Tex. Oct. 20, 2000) (Lynn, J.) (quoting *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216–17 (Tex. 2000)) (internal quotations omitted).  The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting *City of Midland*, 18 S.W.3d at 217) (internal quotations omitted). Conduct that is merely insensitive or rude is not extreme and outrageous.  *Id.*

Zaatari must also show that GPS' conduct was intentional, which "requires a showing that [GPS] intended the consequences of [its] act." *Behringer v. Behringer*, 884 S.W.2d 839, 842 (Tex. App.—Fort Worth 1994, writ denied).  Intent "may be inferred from the circumstances of the case and includes conduct undertaken with knowledge of, and indifference to, the risk of harm to another." *Elliot v. Methodist Hosp.*, 54 S.W.3d 789, 796 (Tex. App.—Houston [1st Dist.] 2001, pet. denied).  Moreover, behavior that is reckless, where a defendant knows or has

4

reason to know of facts that create a high degree of risk, but proceeds anyway, satisfies intent. *Behringer*, 884 S.W.2d at 842.

Finally, to prove an IIED claim, the distress inflicted on Zaatari must be "so severe that no reasonable [person] could be expected to endure it." *Reagan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ) (alteration in original). "[W]orry, anxiety, vexation, embarrassment or anger" is not sufficient. *Id.; see also Benavides v. Moore*, 848 S.W.2d 190, 195–96 (Tex. App.—Corpus Christi 1992, writ denied) (finding that because the plaintiff did not seek professional help, the evidence did not support severe distress).

### III.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  Applying the "plausibility" standard from *Iqbal* and *Twombly*, the Fifth Circuit has held that:

> In construing the allegations in the complaint, the Court is obliged to disregard "legal conclusions; mere 'labels'; '[t]hreadbare recitals of the elements of a cause of action'; 'conclusory statements'; and 'naked assertions devoid of further factual enhancement.'"

*Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc) (footnotes omitted).

Indeed, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  "A sheer possibility that a defendant has acted unlawfully" is not sufficient to satisfy a plaintiff's pleading obligations. *Iqbal*, 556 U.S. at 678; *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011).

Summary judgment is warranted when the movant shows that, after consideration of the pleadings and summary judgment evidence, there is no genuine issue of material fact. Fed. R. Civ. P. 56; *McGee v. Arkel Int'l, LLC*, 671 F.3d 539, 542 (5th Cir. 2012).  First, the moving party

has the burden to demonstrate the absence of evidence supporting the nonmovant's claims. *Babcock v. Hartmarx Corp.*, 182 F.3d 336, 338 (5th Cir. 1999). Once the movant's burden is satisfied, the burden shifts to the nonmovant to prove summary judgment is not appropriate. *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 411 (N.D. Tex. 2009) (Lynn, J.) (citing *Fields v. City of S. Houston*, 922 F.2d 1183, 1187 (5th Cir. 1991)). A court properly grants summary judgment if, looking at all facts in the light most favorable to the nonmovant, it determines that there are no genuine issues of material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

**IV.    Analysis**

GPS' alleged conduct includes making wrongful statements about Zaatari's ethical and professional competence in public and written communications, interfering with Zaatari's speaking engagements, and offering Zaatari a consulting job under false pretenses. GPS moves to dismiss for failure to state a cognizable IIED claim, and alternatively for failure to sufficiently plead the IIED elements. GPS also moves for summary judgment as to the IIED claim.

GPS argues that because Zaatari initially brought defamation, business disparagement, and tortious interference counterclaims (the "Alternative Counterclaims"), her IIED claim is precluded, because there are other avenues to remedy the same allegedly wrongful conduct. *See, e.g.*, ECF No.139 ("MTD") at 21; ECF No. 237 ("MSJ") at 26–27. Zaatari asserts that because GPS argued for dismissal of the Alternative Counterclaims, and Zaatari ultimately dismissed them, IIED is not precluded. *See, e.g.*, ECF No. 144 ("MTD Resp.") at 26; ECF No. 267 ("MSJ Resp.") at 14. Zaatari further argues that IIED is available because damages for mental anguish cannot be recoverable under the Alternative Counterclaims. MSJ Resp. at 14.

6

The Court agrees that the IIED counterclaim is unavailable here.  IIED is a "'gap-filler'" tort created for the "limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citing *Standard Fruit and Vegetable Co. v. Johnson*, 985 S.W.2d 62, 68 (Tex. 1998).  Accordingly, IIED was "never intended to supplant or duplicate existing statutory or common-law remedies [] [e]ven if other remedies do not explicitly preempt the tort" and even if other remedies are barred.  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (dismissing plaintiff's IIED claim for sexual advances and employment retaliation, even though alternative harassment remedies were barred by limitations).  IIED is not available when "the gravamen of a plaintiff's complaint is really another tort" even if the other tort is dismissed or not pleaded.  *Zeltwanger*, 144 S.W.3d at 447–48 (quoting *Johnson*, 985 S.W.2d at 67) (dismissing the IIED claim because the primary factual allegations could be remedied by other theories, regardless of whether plaintiff "succeeds on, or even makes" the alternative theories); *see also CBS Stations Grp. Of Tex., LLC v. Burns*, 2021 WL 4398031, at *5 (Tex. App.—Dallas Sept. 27, 2021, no pet.) (dismissing the IIED claim because "[t]he facts that form the basis for [the] IIED claim are the same as those that form the basis of [the] defamation claim" and the claimant did not plead "unrelated facts that support an independent claim for IIED," even though the court also dismissed the defamation claim).

Zaatari's pleadings and responses belie her argument that she could not recover under alternative theories for the allegedly wrongful conduct that her IIED claim attempts to remedy. Zaatari's IIED claim relies on the same facts that support her defamation, tortious interference, and business disparagement claims.  Answer ¶¶ 129.  She does not ascribe specific conduct to

7

each originally asserted counterclaim, and not others. *See, e.g.*, Answer; MTD Resp; MSJ Resp. For example, Zaatari defends her defamation counterclaim by arguing that GPS wrongfully accused Zaatari of engaging in unethical and deceptive conduct by spreading false information about GPS' technologies, and questioned her professional credibility, causing her reputational harm. *See* MTD Resp. at 20, 22. Zaatari defends her IIED counterclaim by arguing the same— that GPS publicly "attacked" Zaatari's ethical and professional competence by calling her "unethical and deceptive." *See* MTD Resp. at 24–25. The cases cited in opposition by Zaatari preempt IIED claims when the gravamen of the harm can be remedied by alternative theories, even if the alternative theories are unavailable or unsuccessful. *See, e.g.*, *Creditwatch*, 157 S.W.3d at 816; *Zeltwanger*, 144 S.W.3d at 447–48.

Finally, Zaatari's argument that her IIED claim is available because the Alternative Counterclaims do not provide a remedy for "emotional distress" is also false. MSJ Resp. at 14. Damages for mental anguish and injury to reputation are recoverable for defamation. *Bentley v. Burton*, 95 S.W.3d 561, 604 (Tex. 2002). However, even if emotional distress damages were unrecoverable under the Alternative Counterclaims, Zaatari's argument still fails. The Texas Supreme Court has stated that IIED "should not be extended to circumvent the limitations placed on the recovery of mental anguish damages under more established tort doctrines." *Zeltwanger*, 144 S.W.3d at 447; *see also Crisalli v. Willis Re Inc.*, 560 F. Supp. 512, 515 (E.D. Tex. 2006) ("[Plaintiff] [] may not bring a claim for [IIED] in an effort to circumvent the unavailability of mental anguish damages under his claim for tortious interference with a contract."). Texas courts have dismissed IIED claims when the only alternative remedy is defamation. *See, e.g.*, *Burns*, 2021 WL 4398031, at *5; *Young v. Krantz*, 434 S.W.3d 335, 344 (Tex. App.—Dallas 2014, no pet.).

8

Accordingly, the Motion to Dismiss is **GRANTED**, and the remaining IIED counterclaim is **DISMISSED**.  The Court does not reach the question of whether GPS has established entitlement to summary judgment as to the IIED counterclaim.

**V.      Conclusion**

Because Zaatari's IIED counterclaim is precluded as a matter of law, GPS' Motion to Dismiss (ECF No. 138) is **GRANTED,** and GPS' Motion for Summary Judgment (ECF No. 236) is **DENIED AS MOOT**.

**SO ORDERED**.

October 28, 2022.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE