```
                  UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF TEXAS
                        DALLAS DIVISION

GLOBAL PLASMA SOLUTIONS, INC.,      )
                                    )
              Plaintiff,            )
                                    )
   VS.                              ) No. 3:21-CV-00884-M
                                    )
D ZINE PARTNERS, LLC;               )
MARWA ZAATARI; and ENVERID          )
SYSTEMS, INC.,                      )
                                    )
              Defendants.           )
_____)


D ZINE PARTNERS, LLC; and           )
MARWA ZAATARI;                      )
                                    )
              Counter-Plaintiffs,   )
                                    )
   VS.                              ) No. 3:21-CV-00884-M
                                    )
GLOBAL PLASMA SOLUTIONS, INC.,      )
                                    )
              Counter-Defendant.    )
_____)


        STATUS CONFERENCE -- VIA ZOOM TELECONFERENCE
          BEFORE THE HONORABLE BARBARA M.G. LYNN
             UNITED STATES DISTRICT COURT JUDGE
                      DECEMBER 9, 2022
                       DALLAS, TEXAS

FOR THE PLAINTIFF/COUNTER-DEFENDANT:

   JUSTIN R. OPITZ
   ADDISON FONTEIN
   McGUIREWOODS, LLP
   2000 McKinney Avenue, Suite 1400
   Dallas, TX  75201
   (214) 932-6471

   LUCY JEWETT WHEATLEY
   McGUIREWOODS, LLP
   800 East Canal Street
   Richmond, VA  23219
```

```
     (804) 775-4320


FOR THE DEFENDANTS/COUNTER-PLAINTIFFS:


(Marwa Zaatari and D Zine Partners, LLC)

    JAMES D. SHIELDS
    DAVID A. SHIELDS
    BART F. HIGGINS
    SHIELDS LEGAL GROUP
    16400 Dallas Parkway, Suite 300
    Dallas, TX 75248
    (972) 788-2040


(enVerid Systems, Inc.)

    KENDAL B. REED
    CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC
    8080 Park Lane, Suite 700
    Dallas, TX  75231
    (214) 691-6300



    Proceedings reported by mechanical stenography; transcript
produced by computer-aided transcription.
_____

              DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
                  Federal Official Court Reporter
                 1100 Commerce Street, 15th Floor
                        Dallas, TX  75242
                         (214) 753-2325
```

```
 1                (PROCEEDINGS BEGAN AT 8:30 AM.)
 2                THE COURT:  Good morning.  Let me get appearances,
 3    please, for the Plaintiff.
 4                MS. WHEATLEY:  Lucy Wheatley for Global Plasma
 5    Solutions, and I'm here with Justin Opitz and Addison Fontein.
 6                THE COURT:  And for Defense?
 7                MR. JIM SHIELDS:  Jim Shields and Bart Higgins,
 8    Your Honor, for D Zine and Dr. Zaatari.  Oh, David's here as well
 9    on the call, Judge; David Shields.
10                MR. REED:  Kendal Reed, Your Honor, for enVerid
11    Systems, Inc.
12                THE COURT:  Okay.  What prompted the call is the letter
13    I received from Jim Shields yesterday, so that's going to be the
14    template for our discussions.
15                I have a pretrial at 9:00.  So if we're not finished,
16    we'll resume at a time to be determined.
17                I want to begin with Footnote 1.  Mr. Shields, I don't
18    understand your point.  Are you saying that some party other than
19    the Plaintiff has produced a privilege log?
20                MR. JIM SHIELDS:  No, ma'am.  The ---
21                THE COURT:  Okay.  What does the statement -- Just
22    answer my questions.  What does the statement "This statement to
23    the Court was not true" mean?
24                MR. JIM SHIELDS:  During the hearing on November the
25    8th, I believe a statement of representation was made that
```

1     privilege logs were produced with regard to redacted and with no
2     documents, and that was not a true statement.
3              THE COURT:  Okay.  You quoted what was said.  I asked
4     if a complete privilege log had been produced to Defendants prior
5     to the hearing.  I believe it was Ms. Wheatley, but I have to go
6     back and look at the record.  I think it was Ms. Wheatley who
7     said, "We are -- Yes, we are the only party that produced a
8     privilege log."  So your statement, "This statement to the Court
9     was not true," refers to the answer "Yes"?  Is that what you're
10    saying?
11             MR. JIM SHIELDS:  Yes, ma'am.
12             THE COURT:  Okay.  Now I'm going to cover a number of
13    things, but I want to begin with the paragraph of Mr. Shields'
14    letter up at the top of Page 2, about the third sentence, reading
15    as follows, quote:  "Prior privilege logs served by Plaintiff
16    following the June 15th hearing before Magistrate Judge Ramirez
17    was four pages long and had approximately 70 entries."
18             The privilege log that I have been reviewing is 77
19    pages -- 70 -- Sorry.  I think it's 76 pages in length.
20             Have you produced a privilege log of that length to the
21    Defense, Ms. Wheatley?
22             MS. WHEATLEY:  Yes, I believe we produced it the same
23    day we produced it to you.
24             THE COURT:  Okay.  But what I thought I have been
25    reviewing, subject to communications more recent that resulted in

1    modifications to the privilege log, I thought what you were

2    producing to me with the documents was the same privilege log

3    that you had previously produced to the Defendants.  Is that

4    wrong?

5             MS. WHEATLEY:  I believe in the cover letter we

6    explained, Your Honor, it's not wrong.  I do want to explain

7    this.  We -- We had not logged post-litigation privileged

8    communications.

9             THE COURT:  Yes.  You said that.

10            MS. WHEATLEY:  Yes.  And that's what the additional

11   entries are.  There are a lot of, obviously, privileged

12   post-litigation communications because of the nature of

13   litigation.  So that's what the difference is.  We had always

14   been under the understanding that our obligation was only to log

15   pre-litigation privileged communications, and that's what we did.

16            When we got your Order, we went ahead and logged

17   post-litigation privileged communications, but Defendants -- and

18   we had discussed this with Defendants before.  We said -- We sent

19   them cases.  We said, "We don't believe we have an obligation to

20   do -- to log post-litigation privileged communications.  And,

21   obviously, you know, no one else has logged any privileged

22   communications other than us."

23            THE COURT:  Okay.  Well, the representation is made in

24   the letter that no documents have been withheld.  I don't know if

25   that is accurate with respect to post-litigation documents or

1    not.

2        But are you representing to me that you drew a line in
3    terms of the original privilege log, beginning with the date of
4    the litigation, and documents that you now claim to be privileged
5    that postdated the date of the litigation were not produced,
6    except to the extent I'm ordering them now to be produced, and
7    were not logged because of your position that you did not have to
8    do that?

9        MS. WHEATLEY:  Well, it is not correct that
10   post-litigation documents have not been produced because when we
11   got Judge Ramirez's Order to expand our timeframe to
12   post-litigation, we did produce those documents.

13       THE COURT:  Okay.  All right.  I'm going to see if I
14   can shorten the dispute between you.

15       Let me say, first of all:  The Special Master is not
16   working on the privilege log.  I am.  I thought I made that clear
17   that I was taking that on, and I've spent a lot of time doing
18   that.  And to the extent that depositions are waiting the outcome
19   of that, I've got about 200 documents to go and when I'm done,
20   I'm done.  I'm spending a lot of time on them, but not -- I can't
21   work on them full-time.

22       So, Mr. Shields, my reading of your letter -- I'm going
23   to come back because there's some substance and there's some form
24   issues here.  My reading of your letter is that you think
25   something untoward is going on between the Court and Plaintiff's

1  counsel, and so I will tell you what is going on.

2      When the Court began reviewing the documents, the very
3  first document on the privilege log described the law firm of an
4  attorney involved in the communication and had the wrong law
5  firm.  That was the very first document on the log, and there
6  were other minor discrepancies between the description and the
7  document.  Occasionally, I couldn't tell what I was looking at.

8      In addition, there were references in the description
9  to tracked changes, and I was reviewing these on an iPad and was
10 concerned that the technology was not allowing me to see the
11 tracking.  So I contacted Ms. Wheatley and told her that.  I also
12 advised her, as a time saving mechanism, what the Court had
13 determined about the documents that I had already reviewed and
14 asked her to use that as guidance to go forward and perhaps
15 modify the log.

16     That is the conversation that I had with Ms. Wheatley,
17 and the Court has not received evidence when -- I'll use the
18 tracking as an example -- my suspicion about what was happening
19 was accurate.  So a copy that would allow me to see the tracked
20 changes, but which I couldn't see on my iPad, was provided to me.
21 I do not regard that as the Court having additional evidence.

22     The Court does not regard these communications as
23 improper.  If I couldn't understand what I had or there was a
24 discrepancy that made me think I had the wrong document, I think
25 that is consistent with my reviewing the documents *ex parte*.  I

1   didn't receive evidence.  I didn't credit or receive argument.  I
2   had a single communication orally with Ms. Wheatley, and I have
3   described what that was about.  There's been no evidence
4   received, no affidavits, no declarations.
5           Do you have any additional questions, Mr. Shields,
6   about what the Court has been doing?
7           MR. JIM SHIELDS:  No, ma'am, --
8           THE COURT:  Okay.
9           MR. JIM SHIELDS:  -- not on that issue.
10          THE COURT:  Well, if you have -- if you have some
11  objection about what the Court has been doing on any issue, go
12  ahead and make it.
13          MR. JIM SHIELDS:  No, ma'am.
14          THE COURT:  Okay.  Now the discrepancy between what has
15  been furnished to you in terms of a privilege log and what has
16  been furnished to me, the explanation being given by Ms. Wheatley
17  is that the -- and I think I said this.  I think Ms. Wheatley is
18  refreshing my memory that she, I believe, said in her last
19  communication on the record, but I don't remember this with
20  certainty, that there was this difference between post-litigation
21  privilege contentions and pre-litigation privilege contentions,
22  and I said I wanted all of it.
23          I -- As I said, I have about -- And as I have gone, the
24  Court has now in a more formal way suggested that counsel
25  consider the Court's rulings as I go and perhaps make

1    modifications, and that's what you've seen in my Orders.  And so
2    as I have gone, the claims of privilege have been substantially
3    reduced because the Court has been ordering a very high
4    percentage of these documents, which do include some documents
5    after the litigation, I have ordered those be produced.  So the
6    privilege log furnished to me has been reduced.
7              So, Ms. Wheatley, did I accurately describe my single
8    oral communication with you?
9              MS. WHEATLEY:  Yes, Your Honor.  Well, I ---
10             THE COURT:  Go ahead.
11             MS. WHEATLEY:  I'll say:  There were two calls but they
12   were right after each other.
13             THE COURT:  Oh, that's -- that's true.  I just
14   collapsed that as I continued in my review.  Yes, there were two
15   calls back to back, a second continuation of the first, but I've
16   described what those were about.
17             MS. WHEATLEY:  Yes.  Yes.
18             THE COURT:  All right.  Mr. Shields, what's your beef?
19             MR. JIM SHIELDS:  Two things, Your Honor.
20             Number one, part of the concern in this case has been:
21   We don't know what we don't know.  And the representations of the
22   November 8th hearing was that privilege logs have been produced.
23   When the Court said, "Produce privilege logs after that," I
24   anticipated we would get copies of the privilege logs because I
25   had a suspicion that GPS, the Plaintiff, would overdesignate

1  documents and use that as cover for non-production.
2  THE COURT: Okay. When I am finished with my review,
3  the log of allegedly claimed -- Let me say this differently.
4  The log that remains after the Court determines that a
5  great deal of the documents should be produced will be furnished
6  to you. At this juncture, the Court is limiting the log. I have
7  ordered that the logs be produced to you, but I'm not sure I'm
8  following the concern that you have because if an argument
9  remains, the argument is as to documents that I am not ordering
10 produced. And this is an oversimplification of what remains but,
11 generally speaking, what remains are communications with inside
12 and outside counsel for the purpose of rendering legal advice.
13 If you see that log, what's left, and I will require that that
14 log be provided, you can complain, if you wish, about what I did
15 not order to be produced based on the descriptions. You are very
16 likely to lose that because I've already reviewed them and
17 considered them for privilege, and the small percentage of
18 documents as to which I am, in effect, sustaining an objection as
19 to privilege are the few documents that remain, and I've already
20 considered the privilege issue. But you're free to ask me to
21 consider it again when you know what's left.
22 What are you gaining by these interim steps until I'm
23 done? And I'm roughly 200 documents from being done.
24 MR. JIM SHIELDS: Your Honor, we wanted to review the
25 privilege log, identify -- try to identify the documents that are

1  being withheld in the context of discovery because we've got some
2  depositions coming up.  We were not given a copy of the privilege
3  log or an opportunity to evaluate what documents were being
4  withheld.  There were communications with the Court, the
5  privilege log, that we should have been copied on and weren't.
6  You ordered that yesterday.  We got them last night.  We'll start
7  looking at them this morning.  My concern was the what we -- we
8  don't know what we don't know.
9          THE COURT:  Well, I'm -- I'm -- I'm repeating what I
10 just said to you.  What you do know is what I just told you.
11         MR. JIM SHIELDS:  Yes, ma'am.
12         THE COURT:  And I'm crediting Ms. Wheatley's statement
13 to me that the difference between what you got and what I got in
14 terms of the log was post-litigation documentation that was
15 included with what I got and not in what you got.
16         Ms. Wheatley is correct that the cover letter, which I
17 paid -- don't take this personally Ms. Wheatley -- virtually no
18 attention to, says that this log includes materials that were
19 post-judgment and is more inclusive than what had been furnished,
20 but I did not focus on that.
21         Now you have it.  I still don't understand what it is
22 that you are complaining about, what you now know.  It isn't you
23 don't know what you don't know.  I told you what I got --
24         MR. JIM SHIELDS:  Right.
25         THE COURT:  -- except for 200 documents.  I've

1  described what I've got.  You will have the history of the logs
2  which get narrower and narrower as we go, and eventually,
3  although you could put this together yourself, Plaintiff's
4  counsel will be required to furnish a log of what I sustained
5  objections to.
6            I will be finished with this by Tuesday at the very
7  latest.  I've just got hearings that will be in the way of my
8  finishing.  As to the documents that the Court has ordered
9  produced, they are due to you -- Ms. Wheatley, correct me if I'm
10 wrong, but I believe the date I said was the 13th of December.
11 If you have them before that, you should produce them before that
12 because you run the risk of a deposition being scheduled and then
13 Mr. Shields comes back to me and says, "We didn't get this
14 document until after the deposition.  It relates to Witness A.
15 We need to depose him again in light of it," and I'm going to
16 say, "Okay."  So you should produce the documents as soon as
17 you're able.
18            MS. WHEATLEY:  Yes.  And I've asked our vendor to pull
19 everything that's been ordered to be produced and urgently pull
20 anything that we put in red that we think will be ordered to be
21 produced.  So they've told me that they're going to have that
22 ready ASAP.  We'll try for today.  If not, it will be Monday.
23            THE COURT:  Okay.  I'm -- I'm confused about -- I may
24 have misunderstood what my law clerk told me.  I thought the
25 documents that are in red beyond the point where I am are

1  documents that you were producing subject to my holding that by
2  doing so, you're not waiving the privilege.
3          MS. WHEATLEY:  Yes.  That was our -- We -- I think the
4  way we did it before is you just didn't have to look at those and
5  you just put it in your Order.
6          THE COURT:  Right.  Well, I'm assuming that's true
7  still.
8          MS. WHEATLEY:  Yes.
9          THE COURT:  So I'm not -- I'm not looking at those.
10 When I say I have 200 left, I'm counting those that you have not
11 put in red on the list.
12         MS. WHEATLEY:  Yes, Your Honor.
13         THE COURT:  Okay.
14         MS. WHEATLEY:  Our understanding is that it will be in
15 the Order.  And I can tell you now, if you prefer, we can just
16 produce them and you don't even have to put them in the Order,
17 but we just wanted the waiver point.
18         THE COURT:  Yeah.  I'll put them in the Order, but you
19 should consider those in the field of documents to be produced.
20         MS. WHEATLEY:  Yes.
21         THE COURT:  So, Mr. Shields, let me cut to the chase
22 here.  I hope I have alleviated your concern that Ms. Wheatley
23 and I met for coffee and had a substantive discussion about the
24 case and exchanged documents on the sly and all the parade of
25 horribles that your letter might imply.  None of that happened.

1         I have told you what did happen.  I don't regret a
2    single thing that happened.  If I'm reviewing documents *in camera*
3    and the description says, "These are tracked changes," and my
4    copy appears to have none but I recognize my technology may be
5    causing that, in the Court's view, there is absolutely nothing
6    improper about me calling counsel and saying, "I don't see any
7    tracked changes," which is what I did.  So if you want to make an
8    issue about that, feel free.
9         MR. JIM SHIELDS:  No, ma'am.
10        THE COURT:  Okay.  Your concern about how you might be
11   disadvantaged by this process, I think, is premature.  You
12   reserve your right to contend that you have been disadvantaged by
13   the process.  The process will be completed either by Tuesday of
14   next week or before Tuesday of next week.  And when the dust
15   settles and you see what you get, if you have some complaint
16   about when or how you got the documents, make your complaint
17   then.  At this juncture, I don't know what more you are
18   requesting.
19        MR. JIM SHIELDS:  Your Honor, we had -- So I was not --
20   My letter was not intended to be critical or suspicious or call
21   into question any of the Court's actions.  That was absolutely
22   not my intent.  And if there's an inference in there, I will say
23   on the record that was not my intent, and I regret that it was
24   worded in a way that may have created that, Judge.  That was not
25   my intent.

1         I did ---

2         THE COURT:  Yes.  I -- I -- Excuse me one -- I'm going

3    to say one thing and then I'm going to let you continue exactly

4    where you were.

5         I did note that you were concerned, and I understand

6    your apprehension, that maybe I was receiving evidence and, if I

7    was, that you would have an opportunity to challenge that.  And

8    that's not offensive to me that you expressed your question about

9    whether that happened, and that did not happen.  But there's

10   nothing wrong with you're saying, "Hey, Judge, don't be taking

11   evidence on the side when we can't respond to it."

12        There is one slight clarification I want to make to

13   that, and then pick up where you were.

14        There were a handful of documents, less than ten, where

15   I didn't understand what they were.  So I asked a question and

16   allowed counsel to refine the description because I couldn't

17   understand what I was looking at.  I don't regard that as

18   evidence but that happened.  And the descriptions were not

19   different but they were clearer.

20        Okay.  Now pick up where you were.

21        MR. JIM SHIELDS:  That makes sense.  So the second

22   issue that I had -- And Bart is here with me, Judge.  Are you

23   okay if he explains what the second purpose of that letter was,

24   please?

25        THE COURT:  Yes.  Yes, sure.

1                    MR. JIM SHIELDS: Okay.

2                    MR. HIGGINS: Good morning, Your Honor.

3            Our main concern was we asked for a log, a complete

4    log, more than three or four times in June, July and August, and

5    we didn't get it. We got e-mails from Ms. Fontein, GPS counsel,

6    saying, "We're going to produce a log on the GPS 15 through 21,"

7    and they never did it. Mr. Reed asked for a complete log several

8    times in July, August, September; didn't get it. So when we got

9    the log on November 21st, it was vastly different than the log

10   that Judge Ramirez got. So that was our concern.

11           We asked over the last couple of days, "Please produce

12   the revised logs," and they wouldn't respond to our request.

13                   THE COURT: Okay. Did you not get these yesterday?

14                   MR. HIGGINS: We did last night at 9:00.

15                   THE COURT: Okay. And have we not for 25 minutes been

16   discussing the fact that the explanation for the distinction

17   between what you originally got and what is -- what was produced

18   to me for my review includes post-litigation documents?

19           What I suggested to Mr. Shields, and I don't think

20   we're moving the ball at all, Mr. Higgins, is that when the dust

21   settles by Tuesday, if you feel this -- what you're contending is

22   a discrepancy between the logs you have been getting and the log

23   I got, now radically reduced, then make your point then.

24           I don't need to hear again that you're unhappy that I

25   got a log that was bigger than yours. I hear you and I've

1  already addressed that.  What more do you need today?
2          MR. HIGGINS:  The only thing I was going to say is the
3  descriptions on the log of John Storey and Farahi Faramarz as
4  consultants is -- they're testifying experts, so ---
5          THE COURT:  Okay.  Did you get -- Just a minute.  I
6  will repeat again.  Until you know what you're getting, how do
7  you know you have a complaint, Mr. Higgins?
8          MR. HIGGINS:  I looked at the logs I received last
9  night, Judge, --
10          THE COURT:  Okay.
11          MR. HIGGINS:  -- and there are ---
12          MR. JIM SHIELDS:  Judge -- Judge, we're going to wait.
13  Obviously, we are frustrated but you've been clear, and I
14  appreciate the clarity.  Obviously, if we have an issue, Judge,
15  after your rulings, we'll bring them to your attention.
16          THE COURT:  Yes.  Because if you say to me, "These are
17  consulting experts allegedly and they're not, and we should get
18  the document," why don't you see first if you get the document.
19          MR. JIM SHIELDS:  Okay.  Agreed, Judge, yes.
20          THE COURT:  Okay.
21          MR. HIGGINS:  My only -- We're traveling to Indiana
22  next week, Judge, for a depo.
23          THE COURT:  Okay.  Mr. Higgins, here's the best advice
24  I can give you in dealing with me:  Listen to what I say, period.
25  Okay?  I've addressed your depositions.  I don't think the

```
 1   deposition that I believe you're taking next week has anything
 2   whatsoever to do with these documents.  But if you don't get
 3   them, that deposition occurs, you make a showing to me or more
 4   probably the Special Master that you needed these documents to
 5   conduct that deposition and you didn't get them and you need to
 6   do it again, we'll take that up at the time that happens.
 7            MR. JIM SHIELDS:  Perfect.
 8            THE COURT:  Okay?
 9            MR. HIGGINS:  Yes, ma'am.
10            THE COURT:  Okay.  Anything else for today?
11            MR. JIM SHIELDS:  No, ma'am.  We're good.
12            THE COURT:  Okay.  Thank you.  All right.
13            (Hearing adjourned at 9:00 AM.)
```

CERTIFICATE OF OFFICIAL REPORTER

      I, Deborah A. Kriegshauser, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of Texas, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically-reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

      Dated this 9th day of December, 2022.


/s/ Deborah A. Kriegshauser
_____
DEBORAH A. KRIEGSHAUSER, FAPR, RMR, CRR
FEDERAL OFFICIAL COURT REPORTER